GRAHAM**HOLLIS** APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
Nathan Reese (SBN 283150)
nreese@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: 619.692.0800
Facsimile: 619.692.0822

Attorneys for Plaintiff WILLIAM MILBURN

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L MILBURN, individually and on behalf of all other current and former similarly situated and aggrieved employees of DEFENDANTS in the State of California,<br><br>        Plaintiff,<br><br>      v.<br><br>PETSMART, INC., DOES 1 THROUGH 50, inclusive,<br><br>        Defendant. | Case No.:   1:18-CV-00535-DAD-SKO<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:      November 6, 2018<br>Time:     9:30 AM<br>Judge:    Dale A. Drozd<br>Dept.:    5, 7th Floor |

I, Graham S.P. Hollis, declare as follows:

1.     I am an attorney at law licensed to practice before all courts of the State of California. I am a shareholder of the law firm GrahamHollis, APC in San Diego, California. Co-shareholder Vilmarie Cordero and associate Nathan Reese are the primary attorneys from my firm handling this case. I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein. If called as a witness, I could and would competently testify to the information set forth below.

2.     I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, which seeks an order: (1) preliminarily approving the proposed Settlement; (2) approving the form and content of the Class Notice; (3) provisionally certifying the Settlement Class; (4) appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel; (5) approving Rust Consulting as the

1

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1   Settlement Administrator; and (6) scheduling a Final Approval Hearing.

2       3.      A true and correct copy of the fully executed Stipulation of Class Action and PAGA

3   Representative Action Settlement and Release ("Settlement Agreement" or "SA") is attached hereto as

4   **Exhibit 1**. A true and correct copy of the Notice of Class Action Settlement ("Class Notice") is attached

5   as Exhibit A to the Settlement Agreement.

6       4.      A copy of the Settlement Agreement was provided to the State of California, Labor and

7   Workforce Development Agency ("LWDA") at the same time Plaintiff's Motion for Preliminary

8   Approval of Class Action Settlement was filed with the Court.

9       5.      I am not aware of any class, representative or other collective action in any other court in

10  this, or any other, jurisdiction that asserts claims similar to those asserted in this action on behalf of a class

11  or group of individuals who would also be members of the class defined in this action. I made a reasonable

12  inquiry of other members of my law firm and they are not aware of any such similar actions.

13                      **CLASS COUNSEL'S CLASS ACTION EXPERIENCE**

14      6.      I have been a member of the State Bar of California since 1985. I have personally tried

15  many bench and jury trials to verdict in various courts in California and I have represented employees and

16  employers in employment litigation matters since 1995. My involvement in various forms of class action

17  litigation spans more than twenty years.

18      7.      Over the past ten years, my firm has been appointed as Class Counsel and received

19  adequate and fair settlements in over seventy class action lawsuits in the district and state courts of

20  California with claims similar to those presented here. Additionally, my firm currently serves as plaintiff's

21  counsel for approximately thirty wage and hour class and representative employment law cases.  A list of

22  the cases in which my firm has served as class counsel and/or currently serves as counsel for plaintiff in

23  wage and hour employment actions pending throughout California is attached hereto as **Exhibit 2**.

24      8.      I have also served as defense counsel in the following class action cases: *Garza, et al. v.*

25  *SRH Investments LLC, et al.*, Superior Court for the County of Los Angeles; *Avila, et al. v. Gateway Ivey*

26  *Ranch Associates, et al.,* Superior Court for the County of San Diego; *Cabrera, et al. v. Fieldstone*

27  *Communities, Inc., et al.,* Superior Court for the County of San Diego; *Cheatwood, et al. v. Greystone*

28  *Homes, Inc., et al.*, Superior Court for the County of San Bernardino; *Castro, et al. v. Kaufman & Broad*

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

2

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

*of Southern California, Inc. et al.*, Superior Court for the County of San Diego; *Flores, et al. v. Eastlake Trails Co. LLC et al.,* Superior Court for the County of San Diego; *Pacheco, et al. v. WL Coral Gate Associates, et al.*, Superior Court for the County of San Diego; *Garcia, et al. v. Cambridge Homes, et al.,* Superior Court for the County of Riverside; *Harris, et al. v. LNC Properties, LTD, et al.,* Superior Court for the County of San Bernardino; *Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et al.,* Superior Court for the County of Kern; *Rodriguez, et al v. Epic Development Corporation, et al.,* Superior Court for the County of Kern; *Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,* Superior Court for the County of Los Angeles; *Zimmerman, et al. v. West Venture Development, Inc., et al.*, Superior Court for the County of San Bernardino; *Robles, et al. v. Rockfield Development Corporation, et al.,* Superior Court for the County of San Bernardino; *Riley, et al. v. So Cal Housing Partners, LLC, et al.,* Superior Court for the County of San Bernardino; *Castillo, et al. v. LNC Properties LTD, et al.,* Superior Court for the County of San Bernardino; *Reynoso, et al v. DOES 1-50,* inclusive, Superior Court for the County of San Diego; *Frais v. Forecast Group*, Superior Court for the County of Los Angeles; *Haney v. The Presley Group*, Superior Court for the County of Riverside; *Le Doux v. KB Homes*, Superior Court for the County of Los Angeles; *Long v. West Venture,* Superior Court for the County of Los Angeles; *Manning v. Presley Homes,* Superior Court for the County of Los Angeles; *McLellan v. Stratham Group,* Superior Court for the County of Los Angeles; *Winkler v. West Venture,* Superior Court for the County of Los Angeles.

9.     My associates and I have considerable experience handling complex wage and hour class action cases with claims similar to those asserted in this action and have successfully represented tens of thousands of employees in state and federal court cases throughout California.

## CASE BACKGROUND AND PROCEDURAL HISTORY

10.     On October 27, 2016, Plaintiff filed the Complaint in this Action in the Superior Court for the County of Fresno, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 16CECG03484. Plaintiff alleged multiple causes of action under the California Labor Code that primarily derive from his allegation of misclassification as an exempt employee for: (1) failure to pay overtime wages under Labor Code §§ 510, 1194, 1198, and IWC Wage Order 7-2001 § 3; (2) failure to provide regular and minimum wages under Labor Code §§ 1197, 1194, 1198, and IWC Wage Order 7-2001 § 4; (3) failure to provide meal periods

1  under Labor Code §§ 226.7, 512, 1198, and IWC Wage Order 7-2001 § 11; (4) failure to provide rest

2  periods under Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 12; (5) failure to provide and

3  maintain accurate itemized wage statements under Labor Code § 226; (6) failure to pay wages due during

4  employment under Labor Code §§ 204(a), 1198, and IWC Wage Order 7-2001 § 4; (7) failure to pay

5  wages due upon separation of employment under Labor Code §§ 201, 202, 203; (8) failure to maintain

6  accurate records under Labor Code § 1174; (9) violation of Business and Professions Code §§ 17200 *et*

7  *seq.*; (10) civil penalties under the Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*;

8  and (11) failure to provide suitable seats under PAGA, Labor Code §§ 1198, 2698 *et seq.*, and IWC Wage

9  Order 7-2001 § 14.

10      11.    On January 19, 2017, Defendant filed an Answer to Plaintiff's Complaint denying all

11  liability and wrongdoing of any kind associated with the claims alleged in this action, as well as disputing

12  that the action is appropriate for class treatment.  Defendant alleged that the PetsHotel managers were

13  properly classified as exempt, that the Plaintiff had not adequately exhausted administrative remedies with

14  respect to PAGA claims.

15      12.    On March 20, 2018 Plaintiff files a First Amended Complaint alleging the same class action

16  claims and representative action claims but adding a claim for violation of Labor Code Section 2802

17  alleging that Plaintiff and other PetsHotel Managers and Leaders were required to use personal cell phones

18  but were not reimbursed for this expense. In addition, Plaintiff alleged claims under the Fair Labor

19  Standards Act alleging Plaintiff and other PetsHotel Managers and Leaders were not paid all their overtime

20  compensation due under the FLSA in violation of 29 U.S.C. § 207(a) by failing to compensate for all time

21  spent working under the direction and control of Defendant in excess of forty hours per week.

22      13.    On April 18, 2018 Defendant filed an Answer to Plaintiff's First Amended Complaint again

23  denying all liability and wrongdoing of any kind associated with the claims alleged in this action, as well

24  as disputing that the action is appropriate for class treatment.  Defendant alleged that the PetsHotel

25  managers were properly classified as exempt, that the Plaintiff had not adequately exhausted

26  administrative remedies with respect to PAGA claims.

27      14.    On April 18, 2018 Defendant filed a Notice of Removal removing the case to the United

28  States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1441.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

15.     Plaintiff worked as a PetsHotel Manager at a PetsHotel located in Fresno. All PetsHotel Managers were classified by PetSmart as exempt employees. In April 2015 PetSmart changed the job title of Plaintiff and other PetsHotel Managers to PetsHotel Leaders. PetsHotel Leaders were classified by Petsmart as non-exempt employees. Plaintiff alleges that PetsHotel Managers were misclassified as exempt and as a result were not paid overtime and were not provided with compliant meal and rest breaks along with other related wage and hour violations. Plaintiff alleges that PetsHotel Leaders, although properly classified as non-exempt, were nevertheless not always paid for all work performed and were not always provided with compliant meal and rest breaks. Plaintiff, as a former employee, alleges that he along with other former employees who are members of the PetsHotel Manager Class and the PetsHotel Leader Class were not paid all of their wages at the time of separation of employment and thus seeks waiting time penalties pursuant to California Labor Code Section 203 as members of the Waiting Time Penalty Subclass. In addition, and while employed in both job positions Plaintiff alleges that he, and other aggrieved employees who worked in the PetsHotels were not provided with suitable seating. The employees who Plaintiff alleges were not provided suitable seating in the PetsHotels are the PetsHotel Managers, the PetsHotel Leaders along with other employees who worked in the PetsHotels who had job titles of Assistant Manager, Assistant Leader, Store Lead, Senior, Overnight PetCare Specialist and Guest Services.

16.     In January 2018, the Parties attended a mediation with Mark Rudy, a well-respected neutral third-party mediator who specializes in resolving wage and hour class action matters.

17.     In preparation for this mediation, my firm prepared a comprehensive mediation brief that outlined the relevant factual and legal issues, contained a detailed analysis of the time and payroll records, and presented a complete breakdown of the liability exposure for Petsmart if Plaintiff succeeded on each of his claims at trial.

18.     During the mediation session, the Parties engaged in good-faith, non-collusive negotiations, exchanged additional information regarding the realistic damages exposure to Petsmart, discussed the relative strength and weaknesses of Plaintiff's claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiff's claims, and the difficulty Plaintiff may have in obtaining and maintaining class certification of each of his claims. Mark Rudy's role in mediating

this case was extremely helpful in managing the Parties' expectations and provided a useful and neutral analysis of the issues and risks to all Parties. At all times the Parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement is evidence of the Parties substantial efforts to reach a mutually agreeable compromise. The Parties were able to reach a settlement at the mediation, subject to the preparation and execution of a comprehensive Settlement Agreement, the filing of an Amended Complaint to ensure that all the claims which were presented and resolved in the mediation were included in the operative complaint, as well as the entry of Final Approval and Judgment by the Court.

## CLASS COUNSEL'S INVESTIGATION OF THE CLASS AND PAGA CLAIMS

19. Prior to filing the Complaint in this action, my firm conducted a thorough investigation into the merits of Plaintiff's claims and the applicable law related thereto, as well as reviewed numerous documents and records provided by Mr. Milburn in support of his claims. My firm also requested Mr. Milburn's employment file and spent significant time reviewing his employment records.

20. My firm spent significant time conducting in-depth, fact-finding interviews with the Plaintiff and other witnesses regarding their employment at Petsmart in order to assess the relative strength of the potential claims.

21. During the two years that this case has been pending, my propounded discovery, including Form Interrogatories, Requests for Production of Documents, and Special Interrogatories, to Petsmart.

22. The parties decided to attempt mediation. As part of the agreement to mediate the parties agreed to a full exchange of information including providing access to a full list of every PetsHotel Manager and PetsHotel Leader with contact information. Petsmart also agreed to provide comprehensive documentation regarding the job duties of PetsHotel Managers and PetsHotel Leaders, time records and pay records for the class period along with employee handbooks and policies and procedures applicable to the class members. My firm obtained thousands of pages of documents, including time and payroll records, employee handbooks, policies related to meal and rest periods and overtime.

23. Attorneys and paralegals from our firm, conducted detailed phone interviews with a substantial number of the class members, regarding the causes of action alleged in the Complaint and how these claims related to class members' employment during the class period. During the course of this

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

investigation we discovered that use of personal cell phone use was widespread among class members and we indicated that we intended to include such claims at the mediation.

24.     My firm has conducted a thorough investigation and discovery into the merits and legal basis of Plaintiff's meal and rest break claims, overtime claims, reimbursement claims, and wage statement claims and performed significant legal research with respect to the applicable law and potential defenses raised by Petsmart to Plaintiff's claims. My firm's investigation and discovery allowed us to prepare a complete liability analysis and potential exposure to Petsmart if Plaintiff succeeded on all claims at trial, which we measured against the relative strength of the claims in order to better identify an appropriate range of settlement figures. This analysis was based on information represented in Petsmart's and class members' records, as well as facts and information gleaned from class member interviews regarding the claims alleged during the class period, including the number of shifts worked per pay period, the average number of employees employed at any given time, class members' average rates of pay, the estimated violation rate for meal and rest break claims, and the amount of any unpaid overtime wages or unreimbursed expenses, among others. My firm paid particular attention to the claims of the PetsHotel Managers to obtain valuable evidence concerning those class member's duties and responsibilities to determine whether Plaintiff would be able to prevail on his claim that he was misclassified as an exempt PetsHotel Manager and thus denied the benefits afforded to non-exempt employees to be paid for overtime and to be provided with meal and rest breaks.

25.     I believe that the documents and information exchanged and analyzed by the Parties through formal discovery, as well as the Parties' discussions during mediation, are sufficient for the Parties to make an informed decision about a fair resolution of this action at this time.

## CLASS COUNSEL'S EVALUATION OF THE CLASS AND PAGA CLAIMS

## FOR SETTLEMENT PURPOSES

26.     I believe the Settlement provides a real and substantial benefit to the Class Members considering the highly disputed nature of the claims.  Our determination of a fair value of the Settlement was based on a number of factors, including our investigation of the applicable law as it applied to the facts discovered, the suitability of the case for class treatment, Plaintiff's claims and the associated damages, as well as Petsmart's potential defenses thereto.

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

---

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

27.     During the two years that this action has been pending, the Parties have engaged in numerous and extensive discussions regarding the factual and legal issues presented by the litigation and P's potential defenses thereto.  The major point of contention throughout the pendency of the case has been that Petsmart believes that the PetsHotel Managers were properly classified as exempt according to the administrative exemption. Petsmart maintains that those employees were reclassified as non-exempt out of an abundance of caution and that in fact the job duties of PetsHotel Leaders differed from those of PetsHotel Managers. Petsmart has consistently maintained that even if the PetsHotel Managers were misclassified that they nevertheless had the opportunity to take meal and rest breaks and in fact took compliant meal and rest breaks. Petsmart also maintains that the PetsHotel Managers only occasionally worked more than eight hours in a work day or forty hours per week. Petsmart denied that any of the class members were required to use personal cell phones and that those who did use their cell phones did it for personal convenience reasons as phones were present in the PetsHotel locations. Petsmart vehemently challenged the claim that the PetHotel workers were not provided with suitable seating.  Petsmart claimed that many of the PetsHotels had seating and that the nature of the work performed by PetsHotel employees could not be performed while seated. Petsmart pointed out that the PetsHotel employees had care for and clean large numbers of pets and that their cages also needed frequent cleaning. Also, interactions with the pet owners had to be performed while standing as they had pets on a leash. In short Petsmart maintains that it did not engage in and cannot be liable for any Labor Code or Wage Order violations experienced by Plaintiff and Class Members.

28.     Although Plaintiff believes that the class claims against Petsmart are meritorious and that class certification is appropriate as to all of the claims alleged in the litigation against Petsmart, Plaintiff acknowledges that he faces a significant battle in maintaining certification and establishing that Petsmart misclassified the PetsHotel Managers.  Plaintiff also understands that it is difficult to prove cases of off the clock work. Plaintiff and other class members reported that they were required to field calls after hours and on days off from PetsHotel employees and that they were not compensated for this time. There are no time records of this and the damages had to be calculated based on interviews of class members.  Plaintiff recognized that while he contends that he was misclassified as a PetsHotel Manager there were shifts when he took compliant meal and rest breaks. Again, there are no records for these events and the damages had

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

to be calculated based on interviews with class members. The claims of missed, late or interrupted meal and rest breaks for the PetsHotel Leader Class presents problems because Petsmart has a written meal and rest break policy for its non-exempt workers which applied to PetsHotel Leaders. The class members interviewed indicated that they were mostly provided with compliant meal and rest breaks but there were frequently times when the press of business prevented them from taking a full meal and rest break or taking them on time.  Damages had to again be calculated based on the interviews with class members. Petsmart maintains that the PetsHotel Leaders were provided with fully compliant meal and rest breaks and any "off the clock" work performed should have been reported to Petsmart.

29.     The following is the methodology used to calculate the amount of damages for the PetsHotel Manager Class, the PetsHotel Leader Class and the Waiting time Penalties Class:

**PetHotels Manager Class Damages**

    a.  Unpaid Overtime

        7.5     (Average number of unpaid overtime hours per pay period)

      x   33     (Number of Managers at any given time = 33 Store Locations)

      x   127    (Number of pay periods in class period)

      x   40.35  (Average hourly overtime rate of pay = Regular hourly rate x 1.5)

      x   2      (To account for liquidated damages available pursuant to FLSA)

      =   **$2,536,602**

    b.  Meal Period Violations

        50%     (violation rate)

      x   33     (Number of Managers at any given time = 33 Store Locations)

      x   127    (Number of pay periods in class period)

      x   5      (Number of shifts per pay period)

      x   26.90  (Average hourly regular rate of pay)

      =   **$281,844**

    c.  Rest Period Violations

        50%     (violation rate)

      x   33     (Number of Managers at any given time = 33 Store Locations)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

x   127   (Number of pay periods in class period)

x   5   (Number of shifts per pay period)

x   26.90   (Average hourly regular rate of pay)

=  **$281,844**

d.  <u>Unreimbursed Cell Phone Expense</u>

100%   (Violation rate)

x   33   (Number of Managers at any given time = 33 Store Locations)

x   5.00   (estimated cost per pay period)

x   127   (Number of pay periods in class period)

=  **$20,955**

**TOTAL DAMAGES - PETSHOTEL MANAGER CLASS**:

2,536,602
281,844
281,844
<u>  20,955</u>
**$3,121,245**

**<u>PetHotels Leader Class Damages</u>**

a.  <u>Unpaid Overtime</u>

0.83   (Average number of unpaid overtime hours per pay period)

x   33   (Number of Managers at any given time = 33 Store Locations)

x   127   (Number of pay periods in class period)

x   40.35   (Average hourly overtime rate of pay = Regular hourly rate x 1.5)

x   2   (To account for liquidated damages available pursuant to FLSA)

=  **$311,982**

b.  <u>Meal Period Violations</u>

10%   (violation rate)

x   33   (Number of Managers at any given time = 33 Store Locations)

x   127   (Number of pay periods in class period)

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

x   5        (Number of shifts per pay period)

x   26.90    (Average hourly regular rate of pay)

=   **$63,027**

c.   <u>Rest Period Violations</u>

10%    (Violation rate)

x   33        (Number of Managers at any given time = 33 Store Locations)

x   127       (Number of pay periods in class period)

x   5         (Number of shifts per pay period)

x   26.90     (Average hourly regular rate of pay)

=   **$63,027**

d.   Wage Statement Penalty

100%    (Violation rate)

x    33        (Number of Managers at any given time = 33 Store Locations)

x    4,000    (Maximum penalty per Labor Code Section 226)

=   **$132,000**

e.   <u>Unreimbursed Cell Phone Expense</u>

10%    (Violation rate)

x   33        (Number of Managers at any given time = 33 Store Locations)

x   5.00      (estimated cost per pay period)

x   142       (Number of pay periods in class period)

=   **$2,343**

f.        <u>PAGA Penalties</u>

10%    (Violation Rate)

x   4         (Number of violations, Overtime, Meal Break, Rest Break, LC 2802)

x   33        (Number of Managers at any given time = 33 Store Locations)

x   200.00 (Penalty for 2nd violation- [minus $8,900 for 89 1st $100 penalty])

x   120       (Number of pay periods in PAGA period)

x   50%       (Reduction per Labor Code Section 2699(e)(2))

Graham**HOLLIS** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

1        = **$153,950**

2    **TOTAL DAMAGES - PETSHOTEL LEADER CLASS**:

3                                                                          311,982
                                                                          63,027
                                                                          63,027
4                                                                         132,000
                                                                            2,343
5                                                                     ___153,950
6                                                                       **$726,329**

7        30.    **The total Waiting Time Penalties potential damages were calculated at $271,152.**

8    Each former employee in this class eared an average daily pay of $215.20 and that number was multiplied

9    by the maximum 30-day period to arrive at a per class member penalty of $6,456. The total potential

10   damages for this class was arrived at by multiplying that amount by the approximate number of class

11   members which is 42.

12       31.    The violation rates for the PetsHotel Manager Class and the PetsHotel Leader Class was

13   estimated based on interviews with class members. The violation rates were hotly disputed by Petsmart

14   who argued that the violation rates were much lower based on their investigation.  The average hourly rate

15   of pay was calculated using the payroll records obtained from Petsmart.  There was no disagreement

16   regarding the average hourly rate of pay for the class members.  The PAGA period did not extend back

17   into the PetsHotel Manager class period.  The PAGA calculations above assumed a court would award

18   $100 for the first violation and $200 for subsequent violations. Petsmart like many defendants in these

19   cases argued that as there had been no proven violation that any PAGA violations should be calculated at

20   $100 per each violation. If this was found to be the appropriate way to calculate PAGA penalties the

21   PAGA portion of the above numbers would be half the amount listed. The PAGA calculations focus on

22   the four main claims for overtime, meal breaks, rest breaks and unreimbursed cell phone use.

23   Consideration of the potential value of any other listed PAGA penalty would require multiplying the

24   number of employees at any given time (33) by the number of pay periods in the PAGA period (120),

25   multiplying it by the violation rate, and multiplying that by either $100 or $200, and then applying a

26   reasonable discount to account for the courts application of a reduction in the award pursuant to Labor

27   Code Section 2699(e)(2).  So, for example, to calculate damages for a potential award of PAGA damages

28   for a violation of Labor Code Section 1174, failure to maintain accurate records, for not properly

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS ACTION SETTLEMENT**

accounting for each employees time worked, would require multiplying 33 x 120 x 10% x 200 = $79,200 and then this number should be reduced based on the probable discount per Labor Code Section 2699(e)(2).  In this instance it is reasonable to expect that the discount would be substantial as presumably the court would already have considered and awarded PAGA penalties for the underlying violation concerning unpaid overtime and meal breaks.  Plaintiff alleges violation of Business and Professions Code Section 17200 et seq.  This statute is alleged as it has a four year look back period rather than just three years as permissible for violations of the Labor Code. Therefore, the damage calculations for violation of B&P Code Section 17200 are included in the above calculations. The PAGA damages for the PetsHotel Leader Class were discounted for several reasons. First, the violation rate was quite low during this class period. Class members interviewed who transitioned from being PetsHotel Managers to PetsHotel Leaders reported a marked improvement in their ability to take compliant timely meal and rest breaks without interruption. The way PAGA penalties are calculated disregards the frequency of violations. The same penalty is theoretically due to a class member who suffers a 100% violation rate as one who only has a 10% violation rate. A court could easily exercise discretion to reduce the PAGA penalty amount given the low violation rate.  Second, Petsmart pays its employees weekly rather than the more typical two week pay period or bimonthly pay periods.  Because PAGA penalties are calculated on a per pay period basis the pay structure provides the theoretical opportunity for more than doubling the amount of PAGA penalties.  Labor Code Section 2699(e)(2) provides no distinction between the penalties an employer is liable for who pays its employees each week versus one who pays them twice a month. It's easy to imagine a court being swayed by an argument that the employer is being unduly punished simply for paying its employees more frequently than most employers. Also, the fact that the one week pay period consists of fewer work days and the violation rate was approximately 10%, it's likely that there would have been weeks where many class members didn't experience a triggering violation and therefore no penalty would be due to those class members.

32.    Plaintiff alleged failure to provide minimum wages as well as failure to pay overtime wages.  Our investigation led us to conclude that the majority of unpaid off the clock time would qualify for the overtime premium pay.  While there was some unpaid time on shifts shorter than eight hours and where the workweek hours worked was less than forty, which would form the basis for a claim for unpaid

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

minimum wages, the vast majority of unpaid time would have been overtime rather than regular time. For ease of calculation all the unpaid time was calculated at overtime rates which also included liquidated damages available under the FLSA. For settlement purposes the unpaid time off the clock was treated as overtime.

33.     Plaintiff's maximum-possible damages exposure for the PetsHotel Manager Class, the PetsHotel Leader Class and the Waiting Time Penalties Class assumed that class certification for all three classes would be granted, and assumed the class certification would be maintained through trial, and assumed that and assumed that Plaintiff would prevail on all claims at trial and recover the full amount of the estimated damages. Accordingly, the estimated value of Plaintiff's claims was premised on an optimistic, "everything goes right" scenario for each claim, for a maximum class-wide damages exposure, of approximately $4,118,726. However, and for the reasons discussed herein, the likelihood of obtaining complete recovery of the estimated damages was far from certain, particularly in light of the relative strength of Petsmart's defense that it did not misclassify the PetsHotel Class Members and the existence of potential variations of working conditions and responsibilities among those class.

34.     Based on my experience litigating almost exclusively wage and hour claims I believe for settlement purposes it would be appropriate to discount the value of the PetsHotel Manager Class claims by a further 40% to represent the risk of being able to maintain class certification and to discount that amount by a further 40% due to the risk of prevailing at trial. It would also be appropriate to discount the value of the PetsHotel Leader class claims by a further 50% to account for the risks of maintaining class certification and an additional 50% due to the risk of prevailing at trial.

35.     The portion of the settlement allocated to the PetHotel Manager Class, the PetHotel Leader Class and the Waiting Time Penalties Subclass is $1,050,000.00. This amount is a fair and reasonable compromise of the claim held by these classes based on the strengths and weaknesses of the claims and the avoidance of further risk and the time and expense of pursuing the claims.

36.     The claims of the PetHotel Seating Class were negotiated separately with mediator, Mark Rudy. The amount allocated to the Claims of the PetHotel Seating Class is $300,000.00.  Mark Rudy is a well-regarded mediator of wage and hour claims and he has particular expertise in the area of suitable seating claims. The theoretical value of the suitable seating claims is huge based on the number of affected

14

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

employees which is approximately 3,491.  The number of employees who worked in a typical PetsHotel during each pay period is estimated to be approximately 24. The vast majority of these employees work part time, sometimes just working a few hours one or two days per pay period, i.e. each 7 day work week. Petsmart argued that seating was available and if seats were not available they would be provided upon request and also that much of the work performed by employees in the PetsHotels was not work which could be performed while seated.  Therefore, some employees who worked in a given work week would not necessarily have suffered a seating violation. Calculating violation rates is extremely difficult. Plaintiff conceded that some of the work cannot be performed while seated. The typical work consists of some activities which inarguably can be performed while seated such as calling customers or filling out paperwork, but others such as cleaning cages cannot. These were the types of issues that were argued back and forth with between the parties and the mediator.

37.    The maximum possible amount that could be awarded as PAGA penalties for suitable seating claims would be $18,658,900.  That was calculated by multiplying the number of employees during any given pay period (24) by the number of PetsHotels (33) by the penalty $200 (less $100 for each of the class members for a first violation) by the number of PAGA pay periods (120).

38.    The parties agreed to settle seating claims for the sum of $300,000.00. Seventy-five percent will be paid to the Labor and Workforce Development Agency and twenty-five percent will be paid to the aggrieved employees by dividing that amount by each employees' pro rata share of the total number of work weeks worked by all aggrieved employees during the entire PAGA period.  In addition, Petsmart has agreed to a formal Workplace Seating Policy which forms part of and is an exhibit to the Settlement Agreement.  The policy states that "All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties." This policy is posted at each PetsHotel location and includes instructions as to who an employee should contact if they have any questions about the policy.  This represents a marked and significant improvement in the working conditions of the PetsHotel employees who now have suitable seats provided in each location and clarity

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

as to when and how they may utilize the seats.

39.     The PetsHotel Seating Class settlement amount represents a fraction of the total potential settlement damage calculation. However, the provision of suitable seating for current and future PetsHotel employees is a valuable concession.  The purpose of awarding penalties for PAGA violations isn't merely to collect penalty payments for the LWDA, but also to discourage employers from violating the Labor Code and to correct future behavior.  Other considerations to take into account is the difficulty of obtaining and maintaining class certification and also the challenge of ultimately prevailing at trial.  Calculating the actual violation rate is difficult given the differing circumstances at each PetsHotel location and the fact that most employees are part-time and may mostly perform work that can only be performed while standing. The court would be likely to make a considerable discount to any award due to a number of factors. Again, the damage numbers are inflated due to the fact that a pay period is just one week rather than the more typical two week pay period. Also, a court may be inclined to discount penalties where the majority of affected employees may work a few hours and have been impacted by the lack of suitable seating for even fewer hours.  All in all, Plaintiff believes this settlement represents a significant result especially when the impact of the new policy is taken into account.

## THE SETTLEMENT TERMS

40.     The Parties have entered into this non-reversionary Settlement, for which Plaintiff now seeks the Court's approval and the basic terms of which are as follows:

41.     **Settlement Amount:** Defendant will pay a Maximum Settlement Amount in the amount of $1,350,000, which shall include the Settlement Administrator's costs for administering the settlement (not to exceed $25,000); Class Counsel's award of attorneys' fees ($450,000); Class Counsel's reasonably incurred litigation costs (not to exceed $15,000); the individual Enhancement to the Class Representative ($5,000); the amount to be paid to the California Labor and Workforce Development Agency ($255,000). The Maximum Settlement Amount does <u>not</u> include the employer's share of the applicable payroll taxes. (*Id*. at ¶1.1.) Although Defendant will not oppose Class Counsel's request for the stated amount of fees and costs or for the Class Plaintiff's enhancement request, the award of such amounts is subject to Court approval and the settlement is not conditioned upon the Court granting theses requests.

42.     **Scope of the Settlement Class:** The Settlement Class is comprised of all persons who are

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

members of the PetsHotel Manager Class, Waiting Time Penalties Subclass, PetsHotel Leader Class, or PetsHotel Seating Class. (*Id*. at ¶1.5.) The "PetsHotel Manager Class" means any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original Complaint was filed, October 27, 2012, through April 13, 2015 and who does not timely opt-out of the Settlement Class. (*Id*. at ¶1.18.) The "PetsHotel Leader Class" means any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the Preliminary Approval Date and who does not timely opt-out of the Settlement Class. (*Id*. at ¶1.26.) The "PetsHotel Seating Class" means all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the Preliminary Approval Date as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate. (*Id*. at ¶1.36.) The "Waiting Time Penalties Subclass" means all members of the PetsHotel Manager Class and/or the PetsHotel Leader Class whose employment with Defendant ended at any time from and after October 27, 2013 through the Preliminary Approval Date. (*Id*. at ¶1.48.)

43. **Settlement Administration:** Rust Consulting, (the "Settlement Administrator") will provide notice to all Class Members. The Settlement Administrator will initially undertake address verification measures including utilization of an Accurint skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. This will ensure that all reasonable measures have been undertaken to obtain the most up to date address for Class Members <u>before</u> the Settlement Notice is mailed.  The terms of the Settlement do not require Class Members to undertake the burden of completing and returning a claim form.  Should any Class Member wish to opt out the Notice of Settlement will explain how inform the Settlement Administrator that they do not wish to participate in or be bound by the terms of the Settlement. Class Members will have sixty (60) days to provide notice of their desire to opt out of the Settlement to the Settlement Administrator from the date of mailing of the Settlement Notice. Class Members who do not opt out of the Settlement will be entitled to their pro rata share of the Settlement.

44. **Settlement:** The settlement funds are allocated fairly and no Class or Class Member is receiving preferential treatment. The Net Settlement Fund (NSF) amount (i.e. after deductions for

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Settlement Administration fees and costs, Class Counsel fees and costs, and enhancement payment to the Class Representative.) will be divided between the classes as follows:

45.    The PetsHotel Seating Class claims are allocated $300,000.00 from the NSF.  As this claim is brought under the P.A.G.A. 75% of this amount (i.e. $225,000.00) shall be paid to the Labor and Workforce Development Agency (LWDA). The remaining 25% (i.e. $75,000.00) shall be paid pro rata to each member of the PetsHotel Seating Class according to the relative number of work weeks worked by each PetsHotel Seating Class Member during the PetsHotel Seating Class Period from October 27, 2015 through the date of Preliminary Approval.  This 75/25 percent allocation of PAGA penalties is the required allocation pursuant to Labor Code Section 2699(i).

46.    The PetsHotel Manager Class claims will be allocated eighty-five per cent (80%) of the remaining balance of the NSF.  The PetsHotel Manager Class Members will each be paid a pro rata share according to the relative number of work weeks worked by each PetsHotel Manager Class Member during the PetsHotel Manager Period from October 27, 2012 through April 13, 2015.

47.    The PetsHotel Leader Class claims will be allocated eight per cent (15%) of the remaining balance of the NSF.  The PetsHotel Leader Class Members will each be paid a pro rata share according to the relative number of work weeks worked by each PetsHotel Leader Class Member during the PetsHotel Leader Class Period from April 15, 2015 through the date of Preliminary Approval.

48.    The Waiting Time Penalties Subclass claims will be allocated seven per cent (5%) of the remaining balance of the NSF.  The Waiting Time Penalties Subclass Members will each be paid a per capita share of each Waiting Time Penalties Subclass Member.

49.    All Class Members will receive their share of the Settlement proceeds without the need to submit a claim form. **Procedure for Requesting Exclusion.** Class Members who wish to exclude themselves from the Settlement must mail a written request to be excluded from the Class to the Claims Administrator no later than sixty (60) calendar days after the date of mailing of the Notice.  Sixty calendar days is more than enough time for Class Members to review the notice, consult with Class Counsel and/or the Claims Administrator if they have questions, and exercise their right to request exclusion from this Settlement if they so desire.

/ / /

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1.1      **Release By Class Members:**  PetsHotel Manager Class Members, PetsHotel Leader Class Members and Waiting Time Class Members will release State and Federal claims which are defined as follows: "Released State Law Claims" shall collectively mean any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims (including under the Private Attorneys General Act) that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint, and that accrued from October 27, 2012, through the Preliminary Approval Date.  The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the Lawsuit; (b) any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any member of the PetsHotel Manager Class or PetsHotel Leader Class; (c) any and all claims which arose under applicable state laws for failure to timely pay wages, including payment of wages at termination; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods; (e) any and all claims under applicable state laws stemming from or based on the alleged misclassification of employees as exempt employees, *i.e.*, employees who PetSmart classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in applicable state law; (f) any and all claims which arose under applicable state law for reimbursement for all necessary costs, expenditures, losses or expenses incurred by any member of the PetsHotel Manager Class or PetsHotel Leader Class in connection with their employment with PetSmart; (g) any and all claims which arose under applicable state law for wage statement violations; (h) any and all claims which arose under applicable state law for failure to provide suitable seating to employees; and (i) all claims for wages, penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (h) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date.  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations, or common law, including without limitation claims under the California Labor Code (including claims under PAGA on behalf of the State of California), the California Business & Professions Code, and the California Industrial Welfare

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

19

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Commission Wage Orders. "Released Federal Law Claims" shall collectively mean any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint by a member of the PetsHotel Manager Class or PetsHotel Leader Class who is also participating Class Member that accrued on any date up through and including the date on which the Court issues an order granting preliminary approval of the Settlement, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.*

1.2      **Release by PetsHotel Seating Class Members**: PetsHotel Seating Class Members will release claims defined as follows: "Released PAGA Seating Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders for the failure to provide suitable seating members of the PetsHotel Seating Class that have been or could have been asserted as of the Preliminary Approval Date.

1.3      **Released Parties:**   The Released parties are defined as PetSmart, each of its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives.

The Releases are tailored to the claims that were asserted in the First Amended Complaint or which could have been asserted in the First Amended Complaint based on the facts alleged in the First Amended Complaint.

1.4      **General Release by Named Plaintiff/Class Representative:** Plaintiff agrees to provide a full and separate general release of any and all claims against the Released Parties regardless of whether such claims have been alleged against petsmart, including known or unknown claims, which are defined as follows: "Unknown Claims" means any of the Class Representative's Released Claims which

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT**

the Class Representative does not know or suspect to exist in his favor at the time of the release, and which, if known by him might have affected his decision to release his claims as set forth in Section **Error! Reference source not found.**.  With respect to any and all claims being released, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representative shall have expressly, knowingly, and intentionally waived for himself the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representative shall be deemed to have, and by operation of the Judgment shall have, waived all such benefits and rights as to the Class Representative's Released Claims.  The Class Representative may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of the Class Representative's Released Claims and, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all of Class Representative's Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Class Representative acknowledges the significance and consequence of this waiver and assumes full responsibility for any loss that may be incurred by reason of such waiver.  The Class Representative further acknowledges that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

50.     **Objections to the Settlement**: Class Members who wish to object to the Settlement must mail their written Notice of Objection to the Claims Administrator postmarked no later than sixty (60) calendar days after the date of mailing of the Notice.  Sixty calendar days is more than enough time for Class Members to review the notice, consult with Class Counsel and/or the Claims Administrator if they have questions, and exercise their right to object to this Settlement if they so desire.

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## CLASS NOTICE AND NOTICE PLAN

51.     A copy of the proposed Class Notice is attached as Exhibit A to the Settlement Agreement.

52.     The Class Notice is accurate and informative. The Class Notice summarizes the lawsuit, including the contentions and denials of the Parties, the proceedings to date, and the terms and conditions of the Settlement in plain language in an informative and coherent manner. The Class Notice also fully informs Class Members of the terms of the Settlement, of its effect on their rights, of their options as Class Members (*i.e.,* to object, opt out, and/or do nothing), and of the consequences of exercising those options. The Class Notice also outlines the procedure and deadlines for opting out of the Settlement, for submitting objections to the Settlement, and how to receive a Settlement Payment – stating clearly that Class Members do not need to submit a claim form in order to receive a Settlement Payment, thereby encouraging Class Member participation and increasing the likelihood of Class Members obtaining recovery.

53.     The Class Notice also: states the amount of the proposed service award to be paid to Class Representative William Milburn; states the amount of Class Counsel's request for attorney's fees; states the amount to be paid to the Claims Administrator; states the amount to be paid to the LWDA; states the date, time and place of the final approval hearing; and explains how Class Members can obtain additional information.

54.     Furthermore, the Class Notice also makes clear that the Settlement does not constitute an admission of liability by Petsmart, that the Court has not ruled on the merits of the action, and that the final settlement approval decision has yet to be made.

55.     The Parties agreed to hire Rust Consulting ("Rust"), an experienced third-party administrator, to serve as Claims Administrator. Prior to selecting Rust as the Claims Administrator, the Parties obtained competitive bids from other third-party settlement administrators.

56.     In addition, Class Counsel negotiated two separate methods of address verification for the Class Members prior to the mailing of the Class Notice.  The Claims Administrator shall perform a National Change of Address (NCOA) search, as well as an Accurint® (or substantially similar) in-depth skip trace to attempt to obtain the best possible address for the Class Members. Accurint® is a search

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

database that provides a much more reliable updated address than an NCOA search alone, as it attempts to locate individuals using information from credit bureaus and public records. Whereas an NCOA search requires Class Members to maintain an updated address with the U.S. Postal Service, the Accurint® search will locate newer addresses for Class Members who, for example, recently applied for a credit card or have an account with a utility company.

57.     Not more than fifteen calendar (15) days after the Effective Date, the Settlement Administrator shall mail to each Participating Class Member his or her individual payment, less the employee's share of relevant tax withholdings, from a QSF administered by the Settlement Administrator but funded by PetSmart.

58.     The Objection/Exclusion deadline is sixty (60) calendar days following the initial mailing of the Notice. Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Net Settlement Fund and will not be bound by the Settlement. Class Members who do not submit a valid and timely Request for Exclusion, however, shall be bound by all terms of the Settlement and any judgment entered in the litigation once the Settlement is approved by the Court. The back of the Settlement Check will have an endorsement that a Participating Class Member must sign to release the Released Federal Law Claims.  Therefore, only those Settlement Class members who cash their Settlement Payment check shall be deemed to have fully and forever released claims under the Fair Labor Standards Act ("FLSA").

59.     The proposed notice plan, calling for first-class mailed notice to all Class Members, as well as in-depth skip tracing at the outset and further in-depth skip tracing on Class Notices returned without a forwarding address, is consistent with class notices approved by federal courts, and under the circumstances here, is the best notice practicable and the method most likely to reach the greatest number of Class Members.

## CLASS COUNSEL'S FEES AND COSTS ARE REASONABLE

60.     Class Counsel will request an attorneys' fee award in the amount of $450,000 and reimbursement of actual litigation costs, not to exceed $15,000.  These amounts are warranted and reasonable because of the substantial work and effort incurred to achieve the Settlement on behalf of the Class and the substantial monetary relief obtained.

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

61.     The fee request will be supported by a detailed explanation of the qualifications of each timekeeper, and their corresponding hourly rate, along with an explanation of the amount of time worked on the various tasks performed on behalf of Plaintiff and the Class. Similarly, the costs request will be supported at the time of final approval with an explanation of the amount and nature of the costs incurred.

62.     Although case law supports as high as a 50% fee award on common settlement funds of less than $10 million, Class Counsel's request for an attorney fee award of $450,000, representing 33.33% of the Total Settlement Amount is both "reasonable and fair" in light of the amount of work performed and the amount of resources and labor employed in the prosecution of this action. Based on my experience and knowledge of the relevant legal market for wage and hour class actions, these amounts accurately reflect the marketplace for similar representation of plaintiffs in wage and hour cases on a contingency basis.

63.     Plaintiff will provide details of Class Counsel's fees award request in the motion for Final Approval and award of attorney's fees and costs, to be filed in advance of the Final Approval hearing.  In making a fee request in class actions such as this, I always analyze the factors that the court must consider in awarding fees. I believe that such circumstances exist here to justify the requested attorney's fees award of 33.33% including: (a) the skilled work involved in achieving such an excellent result for the Class and bringing the hotly contested action to a conclusion; and (b) the associated risks in taking this matter on a contingency basis. In light of these considerations, I believe Class Counsel's requested fee of $450,000 is reasonable.

**CLASS REPRESENTATIVE SERVICE AWARD TO PLAINTIFF**

64.     At the same time as Class Counsel's fee request, Plaintiff William Milburn will request a Class Representative Service Award in the amount of $5,000, which shall be in addition to the Individual Settlement Payment that he is entitled to receive as a Class Member. As will be set forth in the accompanying memorandum of points and authorities that Plaintiff will file in support of Plaintiff's motion for Final Approval, such service awards are routinely made in wage and hour class actions like this case, particularly when, as here, Plaintiff initiated action by seeking legal assistance from Class Counsel, assisted with the preparation of the LWDA letter and Complaint, regularly communicated with Class Counsel via telephone and email, provided relevant documents and responded to numerous

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

discovery requests, identified potential witnesses, attended a mediation, and worked closely with Class Counsel throughout this litigation to protect the best interests of the Class. Plaintiff's participation was an essential element that allowed Class Counsel to reach a settlement. I believe other Class Members would not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiff's contribution.  Furthermore, under the terms of the Settlement, Plaintiff will execute a general release of claims, which is an expansive release that was not required of other Class Members, who will execute a limited release of claims. I believe that the requested service award in the amount of $5,000 for Plaintiff is fair and reasonable.

## **PROVISIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE**

65.    For the purposes of settlement, Plaintiff contends and Petsmart does not dispute that provisional certification of the Class is appropriate.

66.    The class definitions are precise, objective and presently ascertainable and makes abundantly clear who is a Class Member. In addition, Class Members can be identified easily by way of Petsmart's records. Petsmart maintains records containing relevant information about Plaintiff and Class Members, including, but not limited to, full dates of employment during the Class Period, full name, social security number, mailing address, and telephone number.

67.    During formal discovery, the defendant produced employee handbooks and policies and procedures that Plaintiff contends were applicable to all Class Members during the Class Period and all Class Members were subject to the same policies and procedures throughout the Class Period.

68.    At all times during his employment with Petsmart, Plaintiff worked first as a PetsHotel Manager and a PetsHotel Leader and was subject to the same policies and procedures as other Class Members. Therefore, Plaintiff's claims are typical of the Class he seeks to represent because he was subject to the same alleged illegal policies, procedures, practices and course of conduct as Class Members.

69.    Throughout the pendency of this litigation, Plaintiff has had no conflict of interest with the Class and has, along with Class Counsel, worked toward a positive resolution of this case for five years, demonstrating his dedication to prosecuting this action and obtaining the best possible recovery for the Class. In addition, Plaintiff's interests are co-extensive with those of the Class and Plaintiff seeks relief identical to that sought by every other Class Member. Since all members of the Class need to demonstrate

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

the same elements to recover on their claims, the interests of Class Members are sufficiently aligned with those of Plaintiff, and Plaintiff can be expected to pursue the interests of all Class Members adequately. In addition, Plaintiff retained counsel with extensive experience in prosecuting complex wage and hour class actions who have worked diligently to obtain this Settlement for the Class.  I believe that this case could not have continued without Plaintiff's efforts and desire to obtain this positive result for the Class. There are no conflicts between Plaintiff and his Counsel and Class Members.

70.    By consolidating more than 3,700 potential individual actions into a single proceeding, this Court's use of the class action device enables it to manage this litigation in a manner that promotes a better use of the time, effort and expense for the litigants and the judicial system. Absent class treatment, similarly-situated employees with small but nevertheless potentially meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort and expense required to prosecute individual actions. Accordingly, class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

71.    In conclusion, it is my opinion that this Settlement Agreement is fair, reasonable and adequate, and in the best interest of the Class. The Settlement is an excellent result, considering the formidable arguments that Petsmart advanced against liability and damages, which, in light of these issues, and the fact that the Settlement was the product of protracted, contentious, and arm's-length negotiations before an experienced and neutral third-party mediator, I believe that the Settlement should be preliminarily approved.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed this 26th day of September, 2018, at San Diego, California.


GRAHAM**HOLLIS** APC


By:   /s/ Graham S.P. Hollis
      GRAHAM S.P. HOLLIS
      Attorney for Plaintiff William Milburn

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

EXHIBIT 1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED by and between WILLIAM MILBURN ("Plaintiff" or "Class Representative"), on behalf of himself and all others similarly situated, on the one hand, and PetSmart, Inc. ("PetSmart"), on the other hand, hereinafter all referred to jointly as "Settling Parties" (and as defined herein at Section 1.45), as set forth below:

## I.  THE CONDITIONAL NATURE OF THIS STIPULATION

This Stipulation and Settlement Agreement and all associated exhibits and attachments (herein "Stipulation") are made for the sole purpose of settling the Litigation on a representative and class-wide basis.  This Stipulation and the settlement it evidences is made in compromise of disputed claims.  Because this action was pled as a class and representative action, this settlement must receive preliminary and final approval by the Court.  Accordingly, the Settling Parties enter into this Stipulation and associated settlement on a conditional basis.  In the event that the Court does not enter the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.12) shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation of the Stipulation shall remain confidential and the terms and entry of the Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, California Evidence Code section 1152 and any other analogous rules of evidence that are applicable.  In such event, all of the Class Representative's individual and putative class and representative claims shall proceed as though no settlement or compromise had been reached.

PetSmart denies all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief as well as the representative and class allegations asserted in the Litigation.  PetSmart has agreed to resolve the Litigation via this Stipulation, but to the extent this Stipulation is deemed void or the Effective Date does not occur, PetSmart does not waive, but rather expressly reserves, all rights to challenge all such claims and allegations in the Litigation

upon all procedural and factual grounds, including without limitation the ability to challenge class and representative action treatment on any grounds, as well as asserting any and all other potential defenses or privileges. The Class Representative and Class Counsel agree that PetSmart retains and reserves these rights and they agree not to take a position to the contrary; specifically the Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument that based on this Stipulation, PetSmart could not contest class certification or representative action treatment on any grounds, or assert any and all other potential defenses and privileges if this Litigation were to proceed.

## II.    THE PARTIES TO THIS STIPULATION

This Stipulation (with the associated exhibits) is made and entered into by and among the following Settling Parties: (i) the Class Representative (on behalf of himself and each of the Settlement Class Members, as the latter are defined in Section 1.40), with the assistance of Class Counsel; and (ii) PetSmart, with the assistance of its counsel of choice.

## III.   THE LITIGATION

On October 27, 2016, William Milburn filed a proposed class and representative action in the Fresno County Superior Court, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 16CECG03484 (the "Litigation"). Plaintiff alleges multiple causes of action under the California Labor Code that generally derive from his allegation of misclassification for: (1) failure to pay overtime wages (Labor Code §§ 510, 1194, 1198, and IWC Wage Order 7-2001 § 3); (2) failure to provide regular and minimum wages (Labor Code §§ 1197, 1194, 1198, and IWC Wage Order 7-2001 § 4); (3) failure to provide meal periods (Labor Code §§ 226.7, 512, 1198, and IWC Wage Order 7-2001 § 11); (4) failure to provide rest periods (Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 12); (5) failure to provide and maintain accurate itemized wage statements (Labor Code § 226); (6) failure to pay wages due during employment (Labor Code §§ 204(a), 1198, and IWC Wage Order 7-2001 § 4); (7) failure to pay wages due upon separation of employment (Labor Code §§ 201, 202, 203); (8) failure to maintain accurate records (Labor Code § 1174); (9) violation of Business and Professions Code §§ 17200 *et seq.*; (10) civil penalties under the Private Attorneys General Act ("PAGA")

(Labor Code § 2698, *et seq.*); and (11) failure to provide suitable seats under PAGA (Labor Code §§ 1198, 2698 *et seq.*, and IWC Wage Order 7-2001 § 14).

On March 20, 2018, Plaintiff filed a First Amended Complaint ("FAC"), adding two causes of action for failure to reimburse necessary business expenses (Labor Code § 2802) and violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)). On April 18, 2018, PetSmart filed a Notice of Removal, removing the action to the United States District Court for the Eastern District of California.

The Settling Parties engaged in early settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation. On January 4, 2018, the Settling Parties participated in a private mediation with mediator Mark S. Rudy, Esq. The mediation among the Settling Parties ultimately resulted in this Stipulation and Settlement Agreement. The Settling Parties intend this Stipulation to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims, Released Federal Law Claims, Released Seating Claims, and the Class Representative's Released Claims upon and subject to the terms and conditions hereof. PetSmart retains the right to void the Stipulation if any of the above released claims covered by this settlement and Stipulation are not extinguished as of the Effective Date.

## IV.   PETSMART'S DENIAL OF WRONGDOING OR LIABILITY

PetSmart specifically and generally denies all of the claims asserted in the Complaint and the Litigation. PetSmart also denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Complaint or the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever. PetSmart maintains that all of its PetsHotel Managers and Leaders are and always have been properly classified. PetSmart further asserts that the nature of the work performed by the Class Members does not reasonably permit the use of seats, and that suitable seats are provided in break areas. PetSmart also maintains that, for any purpose other than settlement, the claims alleged in the Complaint and the Litigation are not suitable or appropriate for class or representative action treatment pursuant to either California Code of Civil Procedure Section 382 or California Labor Code § 2698 *et seq.* or any other applicable laws or rule(s). Nonetheless, PetSmart has concluded that further conduct of the Litigation

would be protracted, distracting, and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. PetSmart has also taken into account the uncertainty and risks inherent in any litigation. PetSmart has therefore determined that it is desirable and beneficial to it to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## V.   CLAIMS OF THE CLASS REPRESENTATIVES AND BENEFITS OF SETTLEMENT

The Class Representative and Class Counsel believe that the claims asserted in the Litigation have merit and believe that evidence developed to date supports the claims. However, the Class Representative and Class Counsel recognize and acknowledge the expense and length of time of the type of continued proceedings necessary to prosecute the Litigation against PetSmart through trial and through appeals. The Class Representative and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in all litigation. Based upon their evaluation, the Class Representative and Class Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Class Representative and the Settlement Class. The Settling Parties have entered into this Stipulation following an "arms' length," full-day mediation with respected mediator Mark S. Rudy, which occurred after an informal exchange of discovery and an extensive investigation of the claims by Class Counsel and the Class Representative.

## VI.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representative (for himself and the Settlement Class Members) and PetSmart, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Class Members, the Released State Law Claims, Released Federal Law Claims, Released Seating Claims, and the Class Representative's Released Claims (all as defined below) shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation and the Judgment.

1.     *Definitions.*

As used in all parts of this Stipulation, the following terms have the meanings specified below:

1.1    "Administrative Costs" means the Court-approved amounts for the following: the Settlement Administrator's costs for administering the settlement; Class Counsel's award of attorneys' fees; Class Counsel's reasonably incurred litigation costs; the individual Enhancement to the Class Representative; the amounts to be paid to the California LWDA ("Labor and Workforce Development Agency") as set forth in Section 2.2.6; and any and all other costs in connection with consummating the terms of this Stipulation, including the costs of all notices set forth in Section 2.5 and its subsections.

1.2    "Allocation" means the form of distribution of the Net Settlement Amount to the Class, which shall be developed as provided in Section 2.2.2 of this Stipulation.

1.3    "Settlement Administrator" means the third-party claims administration firm of Rust Consulting.

1.4    "Class Counsel" means the law firm of GrahamHollis APC.

1.5    "Class Member" means a Person who is a member of the PetsHotel Manager Class, Waiting Time Penalties Subclass, PetsHotel Leader Class, or Seating Class.

1.6    "Class Period" for the purposes of this Settlement means the period from October 27, 2012 through the Preliminary Approval Date.

1.7    "Class Representative" means William L. Milburn.

1.8    "Class Representative's Released Claims" collectively means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the PetSmart Releasees (as defined in Section 1.29), whether or not acting in the course and scope of employment, and all persons acting by, through, under, or in concert with any of them, of any and every kind, nature and character whatsoever, known or unknown (as defined in Section 1.47), suspected or unsuspected, whether based on a tort, contract, statute, or any other theory of recovery, and whether for compensatory or punitive damages which Class Representative had at any time heretofore or claimed to have or which Class Representative may have or claim to have regarding events that have occurred

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

relating to any work performed for PetSmart Releasees as of the date on which the Court enters the Order of Final Approval. This includes all claims against PetSmart related to or arising out of Class Representative's employment with PetSmart Releasees, and/or the cessation of employment or purported employment therefrom. These claims expressly include, but are not limited to, those arising under the Americans With Disabilities Act of 1990 (42 U.S.C. §§ 12101, *et seq.*), the California Family Rights Act, the Employee Retirement Income Security Act (29 U.S.C. § 1000, *et seq.*), the Family and Medical Leave Act, the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 201 *et seq.*), the Lily Ledbetter Act, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000, *et seq.*), the California Fair Employment and Housing Act (Cal. Government Code § 12900, *et seq.*), and any and all claims related to the following: unpaid wages; unpaid overtime; failure to pay all compensation on termination of employment; missed meal periods; missed rest periods; reimbursement of expenses; inaccurate wage statements; deductions and/or chargebacks from wages; any alleged violations of the California Labor Code; any alleged violations of applicable federal law including, but not limited to, the FLSA; any alleged violation of and/or any remedy provided by the California Civil Code and/or the California Code of Civil Procedure including, but not limited to, section 1021.5; any claims for penalties under the California Labor Code and/or the California Private Attorneys General Act, California Labor Code section 2698 *et seq.* ("PAGA"); any and all claims for relief under California Business and Professions Code section 17200 *et seq.*, including any and all claims for injunctive relief; and any and all other claims for relief, including any associated prayers for compensatory damages, indemnification, injunctive relief, punitive damages, liquidated damages, penalties, interest, attorneys' fees or costs; any claims arising under the California Constitution; and any of Class Representative's claims or allegations that PetSmart Releasees' deprived Class Representative of any pay or other benefits or legal protections to which he alleges he is or was entitled. The Class Representative and PetSmart Releasees intend for this definition to be all encompassing and to act as a full and total release of any Claim that the Class Representative may legally waive or release against PetSmart Releasees arising from any work performed for PetSmart Releasees, whether specifically enumerated herein or not, that the Class Representative might have or has had, that exists or ever has existed on or to the date on which the Court enters the Order of Final

Approval. The Class Representative's Released Claims also include the waiver of any right to bring, maintain, or participate in a class, collective, or representative action against the PetSmart Releasees to the maximum extent permitted by law, other than participation in the settlement of this Litigation. The Class Representative's Released Claims, however, shall not constitute a release of any claims that may not lawfully be waived.

1.9   "Court" means the United States District Court for the Eastern District of California.

1.10   "PetsHotel Leader Workweeks" means workweeks from March 31, 2015 through the Preliminary Approval Date in which a Class Member worked in a nonexempt PetsHotel Leader position in California.

1.11   "Effective Date" means the date on which the Judgment becomes a Final Judgment.

1.12   "Enhancement" means an amount approved by the Court to be paid to the Class Representative, in addition to his award as a Participating Class Member, in recognition of his efforts in participating in the Litigation as the Class Representative.

1.13   "Final Judgment" means the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment. The Parties intend that the Final Approval Order will encompass an order entering Judgment.

1.14   "Waiting Time Penalties Subclass" means any members of the PetsHotel Manager Class and PetsHotel Leader Class whose employment ended, according to PetSmart's records, between October 27, 2013 and the Preliminary Approval Date and who does not timely opt-out of the Settlement Class.

1.15   "Judgment" means the judgment to be rendered by the Court pursuant to this Stipulation.

1.16   "Last Known Address" means the most recently recorded mailing address for a Class Member as such information is contained in PetSmart's records.

1.17 "The "Litigation" or the "Lawsuit" means the proposed class, representative, and collective action pending in the United States District Court for the Eastern District of California, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 1:18-CV-00535-DAD-SKO, including the claims asserted in the Complaint and in the FAC.

1.18 "PetsHotel Manager Class" means any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original Complaint was filed, October 27, 2012, through April 13, 2015 and who does not timely opt-out of the Settlement Class.

1.19 "Net Settlement Amount" means the Settlement Amount less the Administrative Costs.

1.20 The "Notice Mailing Deadline" shall be fifteen (15) calendar days following receipt by the Settlement Administrator of the list with a name and Last Known Address for each Class Member, as set forth in Section 2.5.3.

1.21 "Notice Regarding Pendency of Class and Representative Action" or "Class Notice" means a notice (and associated response forms) entitled "Notice To Class Members Regarding Pendency of a Class and Representative Action and Notice of Hearing On Proposed Settlement" to be approved by the Court, substantially in the form attached hereto as Exhibit 1.

1.22 The "Notice Response Deadline" shall be sixty (60) calendar days following the Notice Mailing Deadline.

1.23 "Opt Out" or "Opt Outs" means written and signed requests by Class Members to be excluded from the Settlement Class, which are submitted in the manner and within the time set forth in the Notice Regarding Pendency of Class and Representative Action. A Class Member who timely submits an "Opt Out" will not receive any payments under this Stipulation.

1.24 "Order of Final Approval" or "Order Granting Final Approval of Settlement" shall mean an order to be entered and filed by the Court determining that the parties' settlement was reached in good faith and granting final approval of the settlement.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

1.25 "Participating Class Member" means each Member of the PetsHotel Manager Class, PetsHotel Leader Class, or PetsHotel Seating Class who does not timely submit an Opt Out form.

1.26 "PetsHotel Leader Class" means any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the Preliminary Approval Date and who does not timely opt-out of the Settlement Class.

1.27 "PetsHotel Leader PAGA Settlement Allocation" means the 25% portion of the PAGA Payment for the PetsHotel Leader Class, i.e. $10,000, that remains in the Net Settlement Amount for distribution to Participating Class Members who are members of the PetsHotel Leader Class after deduction of the portion payable to the LWDA.

1.28 "PetSmart" means PetSmart, Inc.

1.29 "PetSmart Releasees" means PetSmart, each of its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives.

1.30 "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.31 "Preliminary Approval Order" means an order to be executed and filed by the Court granting preliminary approval of the class and representative action settlement, substantially in the form attached hereto as Exhibit 2, approving the terms contained in this Agreement, and certifying a class for settlement purposes only as provided in Section 2.1.

1.32 "QSF" shall mean the Qualified Settlement Fund established by the Settlement Administrator for the benefit of the Class Members and from which the Administrative Costs and all settlement payments made pursuant to this Stipulation, and all associated tax withholdings and payments, shall be paid.

1.33 "Reasonable Address Verification Measure" shall mean the utilization of an Accurint skip trace, as well as the National Change of Address Database maintained by the United

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

States Postal Service, to review the accuracy of and, if possible, update a mailing addresses for Class Members.

1.34 "Released Federal Law Claims" shall collectively mean any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint by a member of the PetsHotel Manager Class or PetsHotel Leader Class who is also participating Class Member that accrued on any date up through and including the date on which the Court issues an order granting preliminary approval of the Settlement, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.*

1.35 "Released PAGA Seating Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders for the failure to provide suitable seating members of the PetsHotel Seating Class that have been or could have been asserted as of the Preliminary Approval Date.

1.36 "Released State Law Claims" shall collectively mean any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims (including under the Private Attorneys General Act) that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint, and that accrued from October 27, 2012, through the Preliminary Approval Date. The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the Lawsuit; (b) any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any member of the PetsHotel Manager Class or PetsHotel Leader Class; (c) any and all claims which arose under applicable state laws for failure to

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

timely pay wages, including payment of wages at termination; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods; (e) any and all claims under applicable state laws stemming from or based on the alleged misclassification of employees as exempt employees, *i.e.*, employees who PetSmart classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in applicable state law; (f) any and all claims which arose under applicable state law for reimbursement for all necessary costs, expenditures, losses or expenses incurred by any member of the PetsHotel Manager Class or PetsHotel Leader Class in connection with their employment with PetSmart; (g) any and all claims which arose under applicable state law for wage statement violations; (h) any and all claims which arose under applicable state law for failure to provide suitable seating to employees; and (i) all claims for wages, penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (h) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date.  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations, or common law, including without limitation claims under the California Labor Code (including claims under PAGA on behalf of the State of California), the California Business & Professions Code, and the California Industrial Welfare Commission Wage Orders.

 1.37  "PetsHotel Seating Class" or "PetsHotel Seating Class Member" means all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the Preliminary Approval Date as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate.

 1.38  "PetsHotel Seating Class Period" for the purposes of this Settlement means the period during which PetSmart employed a PetsHotel Seating Class Member in California at any time from October 27, 2015 through the Preliminary Approval Date.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

1.39 "PetsHotel Seating Class Settlement Allocation" means the 25% portion of the PAGA Payment, i.e. $75,000, that remains in the Net Settlement Amount for distribution to Participating Class Members who are members of the PetsHotel Seating Class after deduction of the portion payable to the LWDA.

1.40 "PetsHotel Seating Workweeks" means workweeks from October 27, 2015 through the Preliminary Approval Date in which a PetsHotel Seating Class Member worked in a PetsHotel in California as a PetsHotel Leader, PetsHotel Manager, Assistant Manager and/or Assistant Leader, Store lead and/or seniors, Overnight PetCare Specialist, or Guest Services Associate.

1.41 "Settlement Amount" or "Maximum Settlement Amount" shall mean the amount that PetSmart shall pay under the terms of this Stipulation, which shall not exceed the gross sum of $1,350,000, and which shall not include the employer's share of any applicable payroll taxes.

1.42 "Settlement Check" means the payment to Participating Class Members pursuant to this Stipulation.  The back of the Settlement Check will have an endorsement that a Participating Class Member must sign to release the Released Federal Law Claims in accordance with Section 2.6.4 and to receive his or her share of the QSF.

1.43 "Settlement Class" means all of the Class Members who do not opt out of the PetsHotel Manager Class, PetsHotel Leader Class, or PetsHotel Seating Class by requesting exclusion/opting out pursuant to Section 2.6.2.

1.44 "Final Approval Hearing" means a hearing set by the Court for the purpose of: (a) determining the fairness, adequacy, and reasonableness of the Stipulation terms and associated settlement pursuant to class action procedures and requirements; and (b) entering Judgment.

1.45 "Settling Parties" means PetSmart, and the Class Representative on behalf of himself and all Members of the Settlement Class.

1.46 "Stipulation" means this agreement, *i.e.*, the Joint Stipulation of Settlement and Release together with all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement between them, and which is

subject to Court approval. It is understood and agreed that PetSmart's obligations for payment under this Stipulation are conditioned on, *inter alia,* the occurrence of the Effective Date.

      1.47 "Unknown Claims" means any of the Class Representative's Released Claims which the Class Representative does not know or suspect to exist in his favor at the time of the release, and which, if known by him might have affected his decision to release his claims as set forth in Section 1.8. With respect to any and all claims being released, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representative shall have expressly, knowingly, and intentionally waived for himself the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representative shall be deemed to have, and by operation of the Judgment shall have, waived all such benefits and rights as to the Class Representative's Released Claims. The Class Representative may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of the Class Representative's Released Claims and, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all of Class Representative's Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representative acknowledges the significance and consequence of this waiver and assumes full responsibility for any loss that may be incurred by reason of such waiver. The Class Representative further acknowledges that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

1.48 "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member, or any other source.

1.49 "Waiting Time Penalties Subclass" means all members of the PetsHotel Manager Class and/or the PetsHotel Leader Class whose employment with Defendant ended at any time from and after October 27, 2013 through the Preliminary Approval Date.

1.50 "Waiting Time Penalties Subclass Settlement Allocation" means the portion of the Net Settlement Amount allocated to the members of the Waiting Time Penalties Subclass in accordance with paragraph 2.2.2.

1.51 "PetsHotel Manager Workweek" means a workweek between October 27, 2012 and March 31, 2015 in which a Class Member worked in an exempt PetsHotel Manager position in California..

2.   *The Settlement.*

2.1   *Certification of a Class Action for Settlement Purposes Only.*

2.1.1   The Settling Parties stipulate, for settlement purposes only, to the certification by the Court of a class as to all claims asserted in the Litigation pursuant to state law.

2.1.2   If for any reason the Court does not approve this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment or Final Judgment, or if this Settlement Agreement and Stipulation is lawfully terminated for any other reason, PetSmart shall retain the absolute right to dispute the propriety of class certification and/or the ability of this action to proceed as a representative action on all applicable grounds.

2.2   *Consideration to Settlement Class Members.*

2.2.1   The Settlement Administrator will direct PetSmart to fund a QSF maintained by the Settlement Administrator within five (5) calendar days of the Final Judgment date with the following amounts: (1) the total aggregate of the amounts to be paid to Participating Class Members, (2) the Administrative Costs, and (3) the amount to be paid for the applicable employer's share of payroll taxes. The Settlement Administrator shall have control over the distribution of funds from the QSF, once funded. With respect to the QSF, the Settlement Administrator shall: (1)

calculate, withhold, remit and report each Participating Class Member's share of applicable payroll taxes pursuant to Section 2.2.4, and indemnify PetSmart for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) satisfy all federal, state and local and income and other tax reporting, return, and filing requirements with respect to the QSF and any interest or other income earned by the QSF; (3) satisfy out of the QSF all fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Agreement; and (4) notify PetSmart of the amount to be paid for the applicable employer's share of payroll taxes to be deposited in the QSF. The aforementioned fees, costs and expenses, apart from the employer's share of payroll taxes to be paid by PetSmart, shall be treated as and included in the costs of administering the QSF and as Administrative Costs. The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. If the Court does not enter the Order of Final Approval or if the Effective Date does not occur, the funds in the QSF shall remain the sole and exclusive property of PetSmart.

      2.2.2   The Settlement Administrator, according to the terms, conditions, and procedures set forth in Section 2.4 of this Stipulation, shall calculate pro rata settlement payments to Class Members based on each Class Member's relative percentage of eligible service time in PetsHotel Leader Workweeks and PetsHotel Manager Workweeks during the Class Period or PetsHotel Seating Class Period as reflected on PetSmart's internal records as set forth in this Section. The Parties agree that the following formulas for allocating the settlement payments to Class Members provided herein are reasonable and that the settlement payments provided herein are designed to provide a fair settlement to the Class:

    Before the Net Settlement Amount is allocated to the PetsHotel Manager Class, the PetsHotel Leader Class, or the Waiting Time Penalties Subclass, the PetsHotel Seating Class Settlement Allocation shall be made to members of the PetsHotel Seating Class as follows:

    <u>PetsHotel Seating Class</u>: From the Maximum Settlement Amount, $75,000.00 shall be allocated to the PetsHotel Seating Class Members for their share of PAGA penalties, which represents 25% of the $300,000.00 allocated to settle the claims in the Action brought pursuant to

                           - 14 -

PAGA Seating claims (the "PAGA Settlement Amount"). The specific calculation to arrive at an individual PetsHotel Seating Class Member's relative share of the PAGA Settlement Amount will be as follows: the numerator shall be the number of the individual Seating Workweeks during the Seating Period; the denominator shall be the total Seating Workweeks for all PetsHotel Seating Class Members; this fraction shall be multiplied by the PAGA Settlement Amount. If one or more PetsHotel Seating Class Members opt out of the settlement, the settlement payment to any Participating Class Member as a result of other PetsHotel Seating Class Members opting out of the Settlement will increase on a pro rata basis based upon the Participating Class Member's relative share of the PAGA Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment to a Participating Class Member that is greater than twice the initial amount calculated to be paid to the Participating Class Member pursuant to the above formula.

After deduction of the PetsHotel Seating Class Settlement Allocation from the Net Settlement Amount, the amount remaining in the Net Settlement Amount shall be distributed among Participating Class Members as follows:

PetsHotel Manager Class: PetsHotel Manager Class Members will receive a pro rata percentage of the Net Settlement Amount to be allocated based on each PetsHotel Manager Class Member's relative percentage of PetsHotel Manager Workweeks during the Class Period. The specific calculation to arrive at an individual PetsHotel Manager Class Member's relative share of the Net Settlement Amount will be as follows: the numerator shall be the individual PetsHotel Manager Class member's number of the individual PetsHotel Manager Workweeks during the Class Period; the denominator shall be the total PetsHotel Manager Workweeks for all PetsHotel Manager Class Members; this fraction shall be multiplied by 80% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation. If fewer than all PetsHotel Manager Class Members participate in the distribution, the settlement payment to Participating PetsHotel Manager Class Members will increase on a pro rata basis based upon their relative share of the Net Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment that is greater than twice the initial amount calculated to be paid to the Participating PetsHotel Manager Class Member pursuant to the above formula.

PetsHotel Leader Class:  PetsHotel Leader Class will be allocated 15% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.  The 15% allocation from the Net Settlement Amount to the PetsHotel Leader Class shall include the $10,000 payment to the PetsHotel Leader Class Members for their share of PAGA penalties, which represents 25% of the $40,000.00 allocated to settle the claims in the Action brought pursuant to PAGA for claims brought by the PetsHotel Leader Class.  PetsHotel Leader Class Members will receive a pro rata percentage of the Net Settlement Amount to be allocated based on each PetsHotel Leader Class Member's relative percentage of PetsHotel Leader Workweeks during the Class Period.  The specific calculation to arrive at an individual PetsHotel Leader Class Member's relative share of the Net Settlement Amount will be as follows: the numerator shall be the individual PetsHotel Leader Class member's number of the individual PetsHotel Leader Workweeks during the Class Period; the denominator shall be the total PetsHotel Leader Workweeks for all PetsHotel Leader Class Members; this fraction shall be multiplied by 15% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.  If fewer than all PetsHotel Leader Class Members participate in the distribution, the settlement payment to Participating PetsHotel Leader Class Members will increase on a pro rata basis based upon their relative share of the Net Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment that is greater than twice the initial amount calculated to be paid to the Participating PetsHotel Leader Class Member pursuant to the above formula.

Waiting Time Penalties Subclass:  Each member of the Waiting Time Penalties Subclass will receive a waiting time penalty payment on a per-capita basis, equivalent to 5% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.

2.2.3   To the extent administratively convenient, the payment to each Participating Class Member shall be made via a single Settlement Check.

2.2.4   The payments set forth in Section 2.2.2 shall be allocated for reporting reasons as set forth below: (a) one hundred percent (100%) of payments for waiting time penalties and the PetsHotel Seating Class Settlement Allocation shall be deemed payment in settlement for claims of statutory penalties; (b) fifty percent (50%) of the payments to the PetsHotel Manager Class,

and PetsHotel Leader Class other than those set forth in Section 2.2.4(a) shall be deemed payment in settlement of claims for unpaid wages; and (c) fifty percent (50%) of the payments to the PetsHotel Manager Class, and PetsHotel Leader Class other than those set forth in Section 2.2.4(a) shall be deemed payment in settlement for claims of penalties, liquidated damages, interest, and all other non-wage recovery.

2.2.5    As further detailed in Section 2.3, and for each payment made pursuant to Sections 2.2, 2.7, and 2.9 of this Section VI, PetSmart, through the Settlement Administrator, will report each payment to government authorities including the Internal Revenue Service as required by law, and PetSmart, through the Settlement Administrator, shall make all required deductions, withholdings, and/or payroll tax payments.

2.2.6    In addition to the payments to Participating Class Members set forth in Section 2.2.2, PetSmart, through the Settlement Administrator, shall also make a payment to the California LWDA as consideration for the release of all PAGA claims that are the subject of the Litigation on behalf of the State of California.  Of the Settlement Amount, $340,000 shall be allocated to the PAGA settlement payment, $255,000 of which shall be paid to the LWDA.  The PAGA settlement payment shall comprise $300,000 allocated to PAGA Seating claims and $40,000 allocated to PAGA claims brought by the PetsHotel Leader Class.  25% of each of these amounts shall be paid as follows: $75,000 to the PetsHotel Seating Class Members and $10,000 to the PetsHotel Leader Class members.  Such payment to the LWDA shall be included as part of the Administrative Costs and be paid out of the Settlement Amount.

2.3    *Taxes.*

2.3.1    Those payments allocated to the settlement of claims for unpaid wages: (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported in the year of payment as wage income to the Participating Class Member on a Form W-2 and such other state or local tax reporting forms as may be required by law.

2.3.2    Those payment amounts allocated to all other claims, including without limitation claims for penalties, reimbursement, liquidated damages, interest, and other non-wage

recovery (a) shall not be subject to required withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported in the year of payment as non-wage income to the Participating Class Members on a Form 1099 and such other state or local tax reporting forms as may be required by law.

2.3.3   Any amount paid to Participating Class Members shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "PetSmart Benefit Plans") provided by PetSmart, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any PetSmart Benefit Plans, and are not considered eligible compensation for PetSmart's 401(k) Savings and Retirement Plans or for any other benefit purposes, or otherwise require any contribution or award under any PetSmart Benefit Plan, or otherwise modify benefits, contributions or coverage under any PetSmart Benefit Plan.

2.3.4   Other than the withholding and reporting requirements set forth in Section 2.3.1, 2.3.2, and 2.3.3, Participating Class Members shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Section VI of this Stipulation. PetSmart, through the Settlement Administrator, will pay its share of payroll taxes associated with the settlement payments, in addition to the Settlement Amount. The Settlement Administrator shall calculate and inform PetSmart of its share of payroll taxes associated with the settlement payments. PetSmart will contribute any share of payroll taxes to the QSF and PetSmart's share of the payroll taxes will be paid out of the QSF, in addition to the Settlement Amount. Neither Class Counsel nor PetSmart makes any representations, and it is understood and agreed that PetSmart and Class Counsel have not made any representations, as to the taxability to any Participating Class Members of any portions of the settlement payments, the payment of any costs or an award of attorneys' fees, or any payments to the Class Representative. The Notice Regarding Pendency of

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Class and Representative Action will advise each Class Member to seek his or her own personal tax advice prior to acting in response to that notice, and PetSmart, the Class Representative, and Class Counsel agree that each Class Member will have an adequate opportunity to seek tax advice prior to acting in response to the notice.

2.4    *Court Approval of Notice to the Class and a Final Approval Hearing.*

2.4.1    The Class Representative, through his counsel of record in the Litigation, shall file this Stipulation with the Court and move for preliminary approval of this Stipulation. PetSmart agrees not to oppose Plaintiff's motions for Preliminary or Final Approval unless the motions are inconsistent with the terms set forth in this Settlement and PetSmart will be provided adequate opportunity to review the motion before it is filed. Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, will request that the Court enter the Preliminary Approval Order approving the terms of this Stipulation, certify a class action for settlement purposes only as provided in Section 2.1, approve the Settling Parties' proposed allocation of settlement funds set forth in Section 2.2.2, and schedule the Final Approval Hearing for the purposes of determining the fairness of the settlement, granting final approval of the settlement, granting final approval of this Stipulation, and entering Judgment.

2.4.2    Subject to Court availability, the Class Representative shall endeavor to notice the motion for entry of the Preliminary Approval Order described in Section 2.4.1 for a hearing as soon as possible after the motion is filed. A decision by the Court not to enter the Preliminary Approval Order in its entirety, or a decision by the Court to enter the Preliminary Approval Order with modifications that PetSmart determines in its reasonable and good faith judgment to be material, will be grounds for PetSmart to terminate the settlement and the terms of this Stipulation, as set forth in Section 2.11.

2.4.3    Subject to Court approval, the Parties will adhere to the following schedule:

| Event | Timing |
|-------|--------|
|       |        |

| | |
|---|---|
| PetSmart provides list of names, last known address, and number of PetsHotel Leader Workweeks and PetsHotel Manager Workweeks for each Class Member to the Settlement Administrator. | No later than 15 calendar days after Court enters Preliminary Approval Order. |
| Settlement Administrator mails Notice Regarding Pendency of Class and Representative Action to Class Members. | No later than 15 calendar days after receipt by Settlement Administrator of list of Class Members from Defendant(s). |
| Deadline to Opt Out. | No later than 60 calendar days after mailing by Settlement Administrator of Notice Regarding Pendency of Class and Representative Action. |
| Plaintiff files Petition for Fees and Costs. | No later than 14 calendar days before the Deadline to Opt Out. |
| PetSmart deposits the full amount of the Maximum Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator | No later than 7 calendar days after Effective Date |
| Distribution of payments to Participating Class Members, Class Representative and Class Counsel (subject to Court approval). | No later than 15 calendar days after the Effective Date. |
| Mailed settlement checks expire and funds go to *Cy Pres*. | 180 calendar days after Settlement Checks distributed to Participating Class Members. |

2.4.4   If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for PetSmart shall meet and confer to reach an agreement on any necessary revisions of the deadlines and timetables set forth in this Stipulation. In the event that the Settling Parties fail to reach such agreement, any of the Settling Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

2.4.5   If the Court enters the Preliminary Approval Order, then at the resulting Final Approval Hearing, the Class Representative and PetSmart, through their counsel of record, shall address any timely written objections from Class Members or any concerns from Class Members who attend the hearing, and any concerns of the Court, if any, and shall and hereby do, unless provided

otherwise in this Stipulation, stipulate to final approval of this Stipulation and entry of the Judgment by the Court.

   2.5    *Notice to Class Members.*

   2.5.1   If, by entering the Preliminary Approval Order, the Court provides authorization to send the Notice Regarding Pendency of Class and Representative Action to Class Members, the Settlement Administrator will facilitate the mailing of the Class Notice to all Class Members at their Last Known Addresses. This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

   2.5.2   This Class Notice and its envelope or covering shall be marked to denote the return address of the Settlement Administrator and the envelope shall also be marked "PetSmart, Inc. Settlement Notice."

   2.5.3   PetSmart shall prepare the name and Last Known Address for each Class Member for the Settlement Administrator so that the Settlement Administrator can engage in the processing and mailing of each Class Notice.

   2.5.4   Prior to mailing the Class Notice to each Class Member, the Settlement Administrator shall undertake a Reasonable Address Verification Measure, including the utilization of an Accurint skip trace, as well as the National Change of Address Database maintained by the United States Postal Service, to ascertain the current accuracy of the Last Known Address of each Class Member. To the extent this process yields an Updated Address, that Updated Address shall replace the Last Known Address and be treated as the new Last Known Address for purposes of this Stipulation and for subsequent mailings.

   2.5.5   Unless the parties agree otherwise in writing or the Court so orders, each of the Class Notices shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Deadline.

   2.5.6   The Claims Administration costs shall include all costs of the mailings described in this Section 2.5 which shall be the fees charged by the Settlement Administrator, the cost of the envelopes in which the Class Notice will be mailed, the cost of reproducing the Class Notice, and the cost of postage to send the Class Notice The Class Representative acknowledges that

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

PetSmart's agreement to pay the claims administration costs as part of the Settlement Amount constitutes part of the consideration to the Class.

2.5.7   Unless the Settlement Administrator receives a Class Notice returned from the United States Postal Service for reasons discussed below in this section, that Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five days (5) calendar days after mailing.  In the event that subsequent to the first mailing of a Class Notice and prior to the Notice Response Deadline, that Class Notice is returned to the Settlement Administrator by the United States Postal Service with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Class Notice to that address, the Class Notice will be deemed mailed as of that date, and the forwarding address shall be deemed the Updated Address for that Class Member.  In the event that subsequent to the first mailing of a Class Notice, and at least fourteen (14) calendar days prior to the Notice Response Deadline, that Class Notice is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Settlement Administrator shall perform an in-depth Accurint (or substantially similar) skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Class Notice within seven (7) calendar days of receiving such information; if no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address.  In either event, the Class Notice shall be deemed received once it is mailed for the second time.

2.5.8   Any communications with Settlement Class members (other than with the Class Representative) will initially be handled by the Settlement Administrator.  The Settlement Administrator will keep a log of all communications with any Settlement Class Member.  If the Settlement Administrator cannot resolve the question or issue raised by a particular Settlement Class Member, the Settlement Administrator will be instructed to forward the question or issue in writing to Class Counsel and counsel for PetSmart.  The Settling Parties then will jointly agree, through counsel, as to the substance and method of any communication with the Settlement Class Member.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Class Counsel will not initiate any communications with Settlement Class Members other than the Class Representative, but may respond to communications initiated by Settlement Class Members.

  2.6  *Responses to the Notice Regarding Pendency of Class Action; Motion for Final Approval.*

   2.6.1 Class Members have the option to retain their own attorney(s) in connection with this Lawsuit at their own expense. Class Members who choose this option will be responsible for any attorneys' fees or costs incurred as a result of this election. The Notice Regarding Pendency of Class Action will advise Class Members of this option.

   2.6.2 Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Lawsuit, the settlement, and the Settlement Class. As described in the instructions in the Notice of Class Members, any Class Member who wishes to exercise this option must send to the Settlement Administrator a written request for exclusion or "Opt Out" that must: (a) be in writing; (b) state the name, address and telephone number of the Class Member; (c) social security number; (d) contain a statement to the effect of: "I wish to be excluded from the Settlement." and (e) be post-marked no later than the Notice Response Deadline submitting the request. The Class Member must personally sign the Opt Out request. No Opt Out request may be made on behalf of a group of members of the Class. If an Opt Out request is not received by the Settlement Administrator from a Class Member with a postmark on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to opt out of the Settlement Class and shall be deemed a Member of the Settlement Class. Class Members who timely submit a properly executed Opt Out request shall have no further role in the Litigation, and for all purposes they shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, this settlement, or this Stipulation, and shall have no right to object to or otherwise oppose this settlement.

   2.6.3 Class Members who do not opt out of the Settlement Class pursuant to Section 2.6.2 may object to the Stipulation by submitting written objections to the Court and mailing copies of their written objection to the Settlement Administrator with a postmark on or before the Notice Response Deadline or by objecting at the Final Approval Hearing. The Class Notice shall

advise Class Members of this option. The Settlement Administrator shall immediately provide copies of any such objections to counsel of record for the Settling Parties.

   2.6.4 Class Members who do not opt out of the Settlement Class pursuant to Section 2.6.2 are Participating Class Members and will be entitled to their pro-rata distribution from the QSF upon the Participating Class Members' timely endorsement of the release located on the back of his or her Settlement Check. If a Participating Class Member has not completed and properly endorsed the release located on the back of his or her Settlement Check on or before the date 180 calendar days after his or her Settlement Check issued, then that Participating Class Member will be deemed to have waived his or her right to receive payment under this settlement. Provided they do not properly submit an Opt Out request, Class Members shall be deemed Members of the Settlement Class and shall be subject to the Judgment even if they do not endorse the release on the back of their Settlement Check in a timely and proper fashion, except that the Released Federal Claims will not apply to any Class Member who does not cash his or her settlement check. Only Participating Class Members who properly endorsed their Settlement Checks shall be entitled to payment pursuant to the settlement and this Stipulation.

   2.6.5 If a Participating Class Member disagrees with the number of PetsHotel Leader Workweeks pre-printed on his or her Notice of Weeks Worked, the Participating Class Member must write his or her correct PetsHotel Leader Workweeks or PetsHotel Manager Workweeks total and the correct dates of employment in each position identified in the PetsHotel Manager Class or PetsHotel Leader Class definition during the Class Period or identified in the PetsHotel Seating Class definition during the PetsHotel Seating Class Period, and provide documents that evidence that he or she was employed in such position during such period. The PetsHotel Leader Workweeks listed on the Notice of Weeks Worked will be presumed to be accurate unless the Participating Class Member submits documentation demonstrating otherwise. In the event of any dispute over an individual's PetsHotel Leader Workweeks, Class Counsel and counsel for PetSmart shall meet and confer in good faith in an attempt to resolve the dispute. For purposes of resolving the dispute, PetSmart's records will be presumed accurate. If the dispute cannot be resolved, it shall be submitted to the Settlement Administrator for a binding, non-appealable final determination, using

- 24 -

and applying the definitions and provisions set forth in this Stipulation. All disputes under this Section 2.6.5 must be resolved according to the timeline contained herein, and before the Allocation formula can be applied and before any payments can be made under Section 2.7.1. In no event shall the resolution of any dispute over any Class Member's total number of PetsHotel Leader Workweeks result in PetSmart being required to pay more than the Settlement Amount.

       2.6.6   Class Members who, for future reference and mailings from the Court or Settlement Administrator, if any, wish to change the name or address listed on the envelope in which the Class Notice was first mailed to them, must fully complete, execute, and mail, per the instructions therein, the portion of the form entitled "Change of Name or Address Information," attached to the Notice Regarding Pendency of Class and Representative Action. The address provided shall be the "Updated Address" for any such Class Member.

       2.6.7   Prior to the Final Approval Hearing and consistent with the rules imposed by the Court, the Class Representative shall move the Court for entry of the Order of Final Approval and the associated entry of Judgment pursuant to the timeline described in Section 2.4.3. The Settling Parties shall make all reasonable efforts to secure entry of the Order of Final Approval and the associated entry of Judgment. If the Court rejects the Stipulation, fails to enter the Order of Final Approval, fails to certify the class action for settlement purposes as agreed by the Settling Parties in this Stipulation, or fails to enter the Judgment, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.15) shall be void *ab initio,* PetSmart shall have no obligations to make any payments under the Stipulation, all of the Class Representative's individual and putative class and representative claims shall be restored in their entirety as though no settlement or compromise had been reached.

      2.7    *Timing of Payment to Participating Class Members and Notice of Final Approval to Settlement Class Members.*

       2.7.1   Not more than fifteen calendar (15) days after the Effective Date, the Settlement Administrator shall mail to each Participating Class Member at his or her Last Known

Address, or Updated Address if obtained, his or her individual payment pursuant to this Section 2.7 and in accordance with the terms of Section 2.2.2, less the employee's share of relevant tax withholdings, from a QSF administered by the Settlement Administrator but funded by PetSmart.

2.7.2   Checks issued to Participating Class Members pursuant to this Stipulation shall remain negotiable for a period of one hundred and eighty (180) calendar days from the date of mailing. The Settlement Administrator will make reasonable efforts under the direction of the Parties to locate and contact Participating Class Members who have not negotiated checks issued to them pursuant to Sections 2.6.4 and 2.7. Participating Class Members who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the terms of the Stipulation and Judgment. The funds associated with any checks not properly or timely negotiated shall be distributed by *cy pres* to the Salvation Army's California programs for unemployed and underemployment workers, which serves such workers in gaining the employment skills and experience necessary to obtain employment and supports them during periods of unemployment.

2.7.3   Following the mailing of the payments to Participating Claimants discussed in Section 2.7.1, the Claims Administrator shall provide counsel for the parties with a written confirmation of this mailing. Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of judgment wit the Court in the Litigation on behalf of the Settlement Class.

2.8     *Releases.*

2.8.1   Upon the Effective Date, the Class Representative and all Participating Class Members , on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Section 1.36.

2.8.2   In addition, upon the Effective Date, the Class Representative and all Participating Class Members who endorse his or her Settlement Check, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and

by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Section 1.34.

2.8.3    In addition, upon the Effective Date, the Class Representative, on behalf of himself, and each of his heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Class Representative's Released Claims as defined in Section 1.8.

2.8.4    In addition, upon the Effective Date, the Class Representative and each of the PetsHotel Seating Class Members, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released PAGA Seating Claims as defined in Section 1.35.

2.8.5    The Class Representative agrees that he will not, at any time after the execution of this Stipulation, make any critical or disparaging statements publicly about any of the PetSmart Releasees or any of the PetSmart Releasees' products, services, processes, owners, shareholders, or employees, unless such statements are made truthfully in response to a subpoena or other legal process.

2.8.6    The Class Representative agrees to waive and release any right to reinstatement or re-employment with the PetSmart Releasees and agrees that the PetSmart Releasees will not reinstate or re-employ him. The Class Representative further agrees that he will not, at any time in the future, intentionally apply for or accept employment with any of the PetSmart Releasees. If the Class Representative breaches this provision, he understands that his application will be rejected.

2.9    *Payment of Costs and Attorneys' Fees to the Class Representative.*

2.9.1    Not more than five (7) calendar days after the Effective Date, subject to Court approval, the Settlement Administrator will pay Class Counsel an amount allowed by the Court not to exceed $450,000 for all attorneys' fees, and an amount not to exceed $15,000 for all reasonable Litigation costs and expenses (not including the Settlement Administrator's fees) from the QSF

described in Section 2.2.1. Payments made per this paragraph shall constitute full satisfaction of any claim for fees or costs, and the Class Representative and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory. The Class Representative and Class Counsel agree that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and they agree to submit, as appropriate and/or as required by the Court, the necessary materials to justify this payment no later than fourteen (14) calendar days before the Deadline to Opt Out. Provided it is consistent with this Stipulation, PetSmart will not oppose the amount of fees or costs requested by Class Counsel. In the event that the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, or less than the amount requested for Enhancement payments for Class Representative set forth in Section 2.9.2, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this paragraph and full payment thereunder. To the extent the Court awards less than the amount requested for attorneys' fees and/or costs or the Enhancement, such award shall not affect approval of the settlement and any amount not awarded shall remain part of the Settlement Amount and shall be distributed to Class Members as part of the Net Settlement Amount pursuant to the terms of this Agreement. Other than any reporting of this fee payment as required by this Stipulation or law, Class Counsel and the Class Representative shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment that they have received pursuant to this section.

2.9.2   Not more than fifteen (15) calendar days after the Effective Date, the Settlement Administrator will forward two separate checks payable to the Class Representative in his personal capacity only and via his counsel of record. The first said check for the Class Representative shall be his individual payment as a Participating Class Member, pursuant to Sections 2.2 and 2.7. The second said check shall be compensation and consideration of an amount approved by the Court, not to exceed $5,000, as an Enhancement payment for the efforts of the Class Representative in the Litigation. Through this agreement, the Class Representative agrees to be a Member of the Settlement Class and a Participating Claimant subject to the Judgment, and in light of this agreement, it shall not be necessary for the Class Representative to be sent a Notice Regarding

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Pendency of Class and Representative Action. The Settling Parties agree that PetSmart, through the Settlement Administrator, shall report the Enhancement payment as non-wage income in the year of payment, and that PetSmart, through the Settlement Administrator, will report the payment of the Class Representative's individual payment pursuant to Section 2.3 according to the terms of this Agreement.  Other than the reporting and withholding set forth in this paragraph, and with the exception of the employer's share of any federal, state, and local taxes, the Class Representative shall be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made to him pursuant to this section.

   2.9.3   PetSmart shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Class Representative, Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Stipulation, including, but not limited to, any award or payment pursuant to Section 2.9.1 or 2.9.2.

   2.10 *Settlement Administrator.*

   2.10.1  The actions of the Settlement Administrator shall be governed by the terms of this Stipulation.  PetSmart may provide relevant confidential information needed by the Settlement Administrator such as the names, social security numbers, and addresses of Class Members to the Settlement Administrator and engage in related communications with the Settlement Administrator without notice or copies to Class Counsel, any Class Members (including Class Representative), or the Court.

   2.10.2  Pursuant to a confidentiality agreement between the Settlement Administrator and PetSmart, the Settlement Administrator shall keep confidential all information about Class Members that PetSmart provides to the Settlement Administrator under the terms of this Stipulation.

   2.10.3  In the event that either PetSmart or Class Counsel take the position that the Settlement Administrator is not acting in accordance with the terms of the Stipulation, such party shall meet and confer with opposing counsel prior to raising any such issue with the Settlement Administrator or the Court.

2.11    *Termination of Settlement*

2.11.1  PetSmart shall have the discretion and right to terminate and withdraw from the Settlement at any time prior to an Order of Court granting final approval of the Settlement if: (a) 5% or more of Class Members elect to "opt-out" of the Settlement Class, pursuant to Section 2.6.2; or (b) the Court construes the terms of the settlement in a fashion that is materially different from the terms of this Stipulation; or (c) if the Class Representative or Class Counsel materially breach the terms of this Stipulation.

2.11.2  In the event that the Stipulation is not approved in its entirety as is by the Court, excluding modifications that PetSmart determines in its reasonable and good faith judgment to not be material modifications, or in the event that the settlement set forth in the Stipulation is terminated (by PetSmart pursuant to Section 2.11.1 or otherwise), cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by PetSmart in accordance with the terms of this Stipulation, except for costs already incurred by the Settlement Administrator, and the Settling Parties shall bear their own costs and fees with regard to the efforts to obtain Court approval.  In such event, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.15) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*. Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel or reducing the amount of any Enhancement paid to the Class Representative shall constitute grounds for cancellation or termination of the Stipulation or grounds for limiting any other provision of the Judgment.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

2.12    *Injunctive Relief.*

2.12.1  Upon the Court's entry of the Preliminary Approval Order, the Class Representatives and Class Members are enjoined from further prosecution of the Litigation against PetSmart; filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against PetSmart Releases in any forum in which any of the claims subject to the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

2.13    *Communication to PetsHotel Employees Regarding Seating*

2.13.1  Although PetSmart does not admit, and expressly denies, that any of its policies or procedures violated any law, including the "suitable seating" requirements provided in Section 14 of the Industrial Welfare Commission Wage Orders, the Parties agree that within sixty (60) calendar days of the Effective Date, PetSmart shall post a copy of its "California Workplace Seating Policy," in substantially the same form as Exhibit 3 attached to this Agreement, near the break rooms and time clocks, if applicable, in its PetsHotel locations in California, which shall be accessible to all California PetsHotel employees.

2.14    *Miscellaneous Provisions.*

2.14.1  The only Class Members, other than the Class Representative, entitled to any payments under this Stipulation and the associated Judgment are Participating Class Members, and they shall be entitled to their individual payments pursuant to Section 2.2.2 only.  This Stipulation and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.  Those parts of the Net Settlement Amount remaining after the Settlement Administrator has calculated the allocations pursuant to Section 2.2.2 shall be used to increase the individual payments to all other Participating Class Members on a *pro rata* basis, subject to the condition stated in Section 2.2.2 that any *pro rata* increase shall not result in a settlement payment to a Participating Class Member that is greater than twice the initial amount calculated to be paid to the Participating Class Member pursuant to the above formula set forth in Section 2.2.2.

2.14.2  PetSmart's sole obligations to Class Counsel and the Settlement Administrator are set forth in this Stipulation.  Class Counsel and the Settlement Administrator shall hold PetSmart harmless for any award of fees or costs beyond those made in accordance with the Stipulation and shall not seek to recover any fees or costs awarded in excess of the terms in this Stipulation.

2.14.3  The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation, including but not limited to obtaining the dismissal, transfer to the Court, and/or stay of any pending or subsequently-filed individual, class collective and /or representative action lawsuit that alleges any of the Released State Law Claims and/or Released PAGA Seating Claims set forth in Sections 1.35 and 1.34, respectively, of this stipulation.

2.14.4  The Stipulation compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense.  The Settling Parties agree that the amounts paid in settlement and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect an "arm's length" settlement that was reached voluntarily after consultation with competent legal counsel and mediation and subsequent discussions with a neutral mediator, Mark Rudy.

2.14.5  PetSmart specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Litigation and makes no concessions or admissions of liability of any sort.  Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Stipulation or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released State Law Claims or Released Federal Law Claims or Released PAGA Seating Claims, or of any wrongdoing or liability of the PetSmart Releasees, or any of them; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the PetSmart Releasees, or any of them, in any civil, criminal or administrative proceeding in any court,

administrative agency, or other tribunal; or (c) is or may be deemed to be or may be used as an admission of, or evidence of, the appropriateness of class certification or collective action certification of any claims asserted against any of the PetSmart Releasees. The Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that PetSmart could not contest (or is estopped from contesting) class or collective action certification or representative action treatment on any grounds if the Court fails to enter the Order of Final Approval; this Stipulation shall not be deemed an admission by, or ground for estoppel against, the PetSmart Releasees that class or collective action certification or representative action treatment in the Litigation is proper or cannot be contested on any grounds.

2.14.6  All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

2.14.7  The Stipulation may be amended or modified only by a written instrument signed by authorized representatives of all Settling Parties or their respective successors-in-interest.

2.14.8  The Stipulation constitutes the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

2.14.9  Class Counsel, on behalf of the Class, represent that, after consultation with and approval by the Class Representative, they are expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to affect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate. Similarly, PetSmart counsel represents that it is expressly authorized to take all appropriate action required or permitted to be taken by PetSmart pursuant to the Stipulation to affect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of PetSmart which they deem appropriate.

2.14.10     Each counsel or other person executing the Stipulation or any of its exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

2.14.11     The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

2.14.12     Whenever this Stipulation requires or contemplates that one party, the Court or the Settlement Administrator shall or may give notice to another, notice shall be provided by e-mail, facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i) If to PetSmart, then to:

Carrie A. Gonell
Morgan Lewis & Bockius LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626

(ii) If to Class Representative, then to:

Graham S.P. Hollis
Graham Hollis APC
3555 Fifth Avenue, Suite 200
San Diego, CA 92103

2.14.13     The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Stipulation is not designed to and does not create any third-party beneficiaries other than third parties that are identified as PetSmart Releasees in Section 1.29 of this Stipulation.

2.14.14     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation. Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

2.14.15    The Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, in the State of California, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without giving effect to that State's choice of law principles.

2.14.16    The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party. No party shall be deemed the drafter of this Stipulation. The parties acknowledge that the terms of the Stipulation are contractual and are the product of arms' length negotiations between the parties and their counsel. Each party and their counsel cooperated in the drafting and preparation of the Stipulation. In any construction to be made of the Stipulation, the Stipulation shall not be construed against any party.

2.14.17    Other than necessary disclosures made to a court and communications with Class Members, the Class Representative, PetSmart, and their respective counsel agree to keep the fact of settlement, this Stipulation and any attached documents, and their settlement negotiations confidential and will not disclose that information to any third party (including the press) until such time as the Class Representative moves for preliminary approval of this Stipulation or the Settling Parties otherwise agree in writing. After entry of the Preliminary Approval Order, neither Class Counsel nor the Class Representative shall issue any statement to the press or any other media or engage in any other publicity regarding this Settlement that identifies PetSmart.

2.14.18    The Settling Parties stipulate and agree that as of the Effective Date, the Litigation shall be dismissed with prejudice in its entirety.

2.15    *Return of All Documents and Other Discovery.*

2.15.1 Within thirty (30) calendar days after the Settlement terminates for any reason, the Class Representative and Class Counsel shall return to PetSmart all originals and duplicate copies of documents, information, and data produced or obtained from PetSmart during and in connection with all settlement discussions and mediation sessions.

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11 and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

_____
William L. Milburn
Plaintiff and Class Representative

DATED:  September ___, 2018

_____
Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

DATED:  September ___, 2018

_____
By:_____
Its:_____
PETSMART, INC.

DATED:  September ___, 2018

_____
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.

DATED:  September 24, 2018

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

---

William L. Milburn
Plaintiff and Class Representative

DATED:  September ___, 2018

---

Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

DATED:  September ___, 2018

By: _Brian Ankrust_

Its: _Executive Vice President_
PETSMART, INC.

DATED:  September 18, 2018

---

Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.

DATED:  September ___, 2018

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

_____
William L. Milburn
Plaintiff and Class Representative

DATED:  September 25, 2018

_____
Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

DATED:  September 25, 2018

By:_____
Its:_____
PETSMART, INC.

DATED:  September ___, 2018

_____
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.

DATED:  September 24, 2018

EXHIBIT A

# Milburn v. PetSmart, Inc.

United States District Court, Eastern District of California, Case 1:18-CV-00535-DAD-SKO

**PLEASE READ THIS NOTICE CAREFULLY. YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR NOT.**

*The Court authorized this notice. This is not a solicitation from a lawyer.*

A proposed class settlement has been reached between the Parties in the above-entitled action and preliminarily approved by the Court as described below. You have received this notice because PetSmart's records indicate that you are one of the individuals who fall within one or more of the Settlement Classes and are entitled to participate in the Settlement.

Dear [CLASS MEMBER NAME]:

---

**You are eligible to receive an Individual Settlement Amount, estimated to be Approximately $ [_____].**

**PetSmart's records indicate that you are a member of the following Class(es):**

**[PetsHotel Manager Class:** which means **"**any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period from October 27, 2012, through April 13, 2015.

**[PetsHotel Leader Class:** which means **"**any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from April 13, 2015 through [INSERT PA DATE]

**[PetsHotel Seating Class:** which means "all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through [INSERT PA DATE] as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associates"]

**[Waiting Time Penalties Subclass:** which means **"**any members of the PetsHotel Manager Class and PetsHotel Leader Class whose employment ended, according to PetSmart's records, between October 27, 2013 and [INSERT PA DATE]"]

---

This settlement relates only to the time period October 27, 2012 - [date of preliminary approval], the qualifying time period for this Settlement, and may not reflect all of your employment dates with PetSmart.

## 1.     WHY SHOULD I READ THIS NOTICE?

You should read this notice because you are entitled to claim money from the Settlement and because your legal rights may be affected even if you do nothing. The Plaintiff and PetSmart have entered into a Joint Stipulation of Settlement and Release ("Settlement Agreement") that will, if finally approved by the Court, fully resolve the claims alleged against PetSmart in this case. The Settlement Agreement sets forth the details of the settlement. You may obtain a copy of the Settlement Agreement from either the Claims Administrator or Class Counsel. The proposed

Settlement Agreement has been submitted to the Court, and has been preliminarily approved for settlement purposes. The Court also appointed the law firm of GrahamHollis A.P.C. as Class Counsel to represent you and the Settlement Class.

As a member of one or more the Classes, you are entitled to share in the funds available for settlement of this class action. You are <u>not</u> being sued and you will not be individually responsible for any of the attorney's fees or expenses of the litigation, as the settlement requires those amounts to be paid by Petsmart. Your rights will be affected by the Settlement Agreement described in this Notice whether you act or not.

The Court must finally approve the terms of the settlement described below as fair and reasonable to the Settlement Class, before it will take effect. If approved, the settlement will affect all Class Members who do not exclude themselves from the Settlement Class. An administrator that has been appointed by the Court will make all approved settlement payments after the Court orders them.

## 2.      WHAT IS THIS CASE ABOUT?

William Milburn ("Plaintiff") is a former employee of PetSmart who held positions of PetsHotel Manager and PetsHotel Leader in California. Plaintiff filed a class action and representative action lawsuit which is now pending in the United States District Court for the Eastern District of California located in Fresno. The Plaintiff alleges that he and PetsHotel Managers were misclassified as exempt employees and not paid for overtime worked and were not provided with all required meal and rest breaks. Plaintiff also alleges that he and other PetsHotel Leaders sometimes performed unpaid work "off the clock" and were not provided with all required meal and rest breaks. Plaintiff also alleges he and other PetsHotel Managers and Leaders were not compensated for the use of their personal cell phone while at work.  Plaintiff also alleges that he and other PetsHotel Managers, Leaders, Assistant Managers, Assistant Leaders, Store Leads, Seniors, Overnight PetCare Specialists, and Guest Services Associates were not provided with suitable seating while working in a PetsHotel for PetSmart.  Plaintiff alleges on behalf of himself and all other members of the Classes that PetSmart violated various provisions of the California Labor Code, the California Private Attorneys General Act (PAGA) and the Fair Labor Standards Act (FLSA.)  PetSmart denies all the claims and contentions alleged in the lawsuit. PetSmart maintains it has fully complied with the law. The Court has not ruled on whether PetSmart violated the law, but Plaintiff and PetSmart have agreed on the settlement terms described below.

## 3.      WHO IS INCLUDED IN THE SETTLEMENT CLASS?

**PetsHotel Manager Class:** which means **"**any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period from October 27, 2012, through April 13, 2015.

**PetsHotel Leader Class:** which means **"**any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from April 13, 2015 through [INSERT PA DATE].

**PetsHotel Seating Class:**  which means "all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from

October 27, 2015 through [INSERT PA DATE] as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate."

**Waiting Time Penalties Subclass:** which means **"**any members of the PetsHotel Manager Class and PetsHotel Leader Class whose employment ended, according to PetSmart's records, between October 27, 2013, and [INSERT PA DATE]."

## 4.   WHAT ARE THE TERMS OF THE SETTLEMENT AND HOW MUCH CAN I EXPECT TO RECEIVE?

### a. Summary of Settlement Terms

PetSmart will pay $1,350,000.00 to settle this case (the "Total Settlement Amount"). From that amount, payments will be made to Class Counsel for court-approved attorney's fees and costs, to the Claims Administrator for administration costs, to the California Labor and Workforce Development Agency for penalties, and to the Plaintiff as a service award for his representation of the Classes and Subclass. After deduction of these amounts, the remainder – the "Net Settlement Fund" – of approximately $600,000.00 will be distributed to Participating Settlement Class Members due to membership in one or more of the Classes and the Subclass, as defined above in section 1.

The Settlement Awards paid to Class Members shall be calculated as follows:

(1)     $75,000.00 from the Net Settlement Fund will be paid to members of the PetsHotel Seating Class. The pay periods for all PetsHotel Class Members shall be added together, and the amount of $75,000.00 allocated to the PetsHotel Seating Class shall be divided by the total number of pay periods to obtain a per pay period settlement amount. The Settlement Payment for each Class Member shall be calculated by multiplying the individual member's number of pay periods by the per pay period PetsHotel Seating Class settlement amount. (The $75,000.00 amount comprises the portion of PAGA penalties payable to the PetsHotel Seating Class Members from a total allocation of $300,000.00 for PAGA penalties for seating claims with $225,000.00 to be paid to the California LWDA.)

(2)     80% of the Net Settlement Fund after deduction of the PetsHotel Seating Class Settlement allocation, shall be allocated to the PetsHotel Manager Class. The pay periods for all PetsHotel Manager Class Members shall be added together, and the amount of the Net Settlement Fund allocated to the PetsHotel Manager Class shall be divided by the total number of pay periods to obtain a per pay period settlement amount. The Settlement Payment for each PetsHotel Manager Class Member shall be calculated by multiplying the individual member's number of pay periods by the per pay period PetsHotel Manager Class settlement amount.

(3)     15% of the Net Settlement Fund after deduction of the PetsHotel Seating Class Settlement allocation, shall be allocated to the PetsHotel Leader Class. The pay periods for all PetsHotel Leader Class Members shall be added together, and the amount of the Net Settlement Fund allocated to the PetsHotel Leader Class shall be divided by the total number of pay periods to obtain a per pay period settlement amount. The Settlement Payment for each PetsHotel Leader Class Member shall be

calculated by multiplying the individual member's number of pay periods by the per pay period PetsHotel Leader Class settlement amount.

(4)     5% of the Net Settlement Fund after deduction of the PetsHotel Seating Class Settlement allocation shall be allocated to the PetsHotel Waiting Time Penalties Subclass. The Claims Administrator shall divide the total amount of the Net Settlement Fund allocated to the PetsHotel Waiting Time Penalties Subclass by the total number of members of the PetsHotel Waiting Time Penalties Subclass obtain a per PetsHotel Waiting Time Penalties Subclass Member amount.

**b.      Calculation of Individual Class Member Payments**

Your Settlement Payment (i.e. the amount you will receive if you do not submit a Request for Exclusion) will be calculated using the formulas described above. The actual Settlement Payment will vary depending on the number of Class Members that exclude themselves from the Settlement.

**c.      Who will receive settlement payments?**

Any Class Member who does not submit a timely Request for Exclusion.

**d.      When will I receive my settlement payment?**

Distributions of Settlement Payments to Participating Settlement Class Members shall occur no later than twenty-two (22) calendar days after the Court approves the settlement at a Final Fairness Hearing and enters Judgment in accordance with the terms of the Settlement.

**TO ENSURE THAT YOU RECEIVE YOUR SETTLEMENT PAYMENT CHECK YOU MUST NOTIFY THE CLAIMS ADMINISTRATOR IF YOU CHANGE YOUR MAILING ADDRESS.**

**e.      How much can I expect to receive?**

The estimated payment on this Notice states the estimated total amount you can expect to receive if you participate in the settlement. This amount is based on PetSmart's records of your total number of pay periods worked during one or more of the Classes and whether you are also a member of the PetSmart Hotel Waiting Time Penalties Subclass.

The estimated payment amount may be reduced or increased, however, based on the number of Participating Settlement Class Members, the number of Requests for Exclusion submitted, whether additional class members are identified or come forward, the potential reallocation of some of the unclaimed funds to Participating Settlement Class Members, and the terms of the Court's final approval order.

(1)     Unclaimed Amounts/Uncashed Checks

Participating Settlement Class Members shall have one hundred and eighty (180) days after the mailing of each Settlement Payment check by the Claims Administrator to cash their Settlement Payment checks.  The amount equal to all uncashed checks will be paid to the Salvation Army's California programs for unemployed and underemployed workers.

C.      **SETTLEMENT ADMINISTRATION COSTS**

Costs incurred by the Claims Administrator in connection with providing Notice to the Class, receiving and determining challenges to estimated settlement payment amounts, receiving and forwarding to the Court and the parties Requests for Exclusion and objection letters received, if any, and calculating and distributing payments due to Participating Settlement Class Members and others entitled to settlement payment under the terms of the Settlement Agreement as approved by the Court, will be paid from the Total Settlement Amount. These costs are estimated not to exceed $25,000.00.

The Claims Administrator is:

>       Rust Consulting

>       [INSERT contact information]

D.      **ATTORNEYS' FEES AND COSTS**

All payments for Class Counsel's attorney's fees and costs will be deducted from the Total Settlement Amount. Class Counsel will apply to the Court for final approval of their attorney's fees and costs. The attorneys for the Class will ask for reimbursement of their costs actually incurred in litigating this case and for fees of up to $450,000.00. The amount of fees and costs awarded will be determined by the Court, and will be paid from the Total Settlement Amount paid by Defendant.

E.      **SERVICE AWARDS PAYABLE TO PLAINTIFF**

The Court has also preliminarily approved a payment of $5,000 to Plaintiff as a service award. The service award will be paid from the Total Settlement Amount. The service award is to compensate Plaintiff for his risk incurred and time and efforts in assisting with the prosecution of the Action on behalf of the Class Members and in return for executing a General Release of all Claims against the Released Parties, which is broader than the release applicable to the Settlement Class Members who are not a named plaintiff.

F.      **PAYMENT TO THE LABOR AND WORKFORCE DEVELOPMENT AGENCY**

$340,000.00 of the Total Settlement Sum will be allocated as penalties authorized by the Private Attorneys General Act, of which $255,000.00 will be paid to the California Labor and Workforce Development Agency and $85,000 will be paid to Participating Settlement Class Members by including that amount in the settlement payments made to the Participating Class Members as described in this notice.

G.       **TAX TREATMENT OF INDIVIDUAL SETTLEMENT AMOUNTS**

Settlement Payments to Participating Settlement Class Members due to their membership in the PetsHotel Seating Class and the PetsHotel Waiting Time Penalties Class are allocated as penalties for tax purposes. No withholding shall be made on these Participating Settlement Class Members' Settlement Payments. Settlement Payments to Participating Class Members due to their membership in the PetsHotel Manager and PetsHotel Leader Classes are allocated 50% as unpaid wages and 50% as penalties, liquidated damages, interest, and all other non-wage recovery. The portion that is allocated as wages will be subject to withholding and the portion allocated as penalties, liquidated damages, interest, and all other non-wage recovery will not be subject to withholding. Participating Settlement Class Members within these Classes will be responsible for the tax consequences of all payments received by them, for filing returns and reporting all income received to state and federal taxing authorities, and for payment of any other applicable taxes due. The parties to the case cannot provide and will not provide any advice regarding tax obligations. You should seek tax advice as to any amounts you receive pursuant to the Settlement from your own tax advisor. That portion of each Class Member's Individual Settlement Amount representing wages will be subject to normal employment tax withholdings and an IRS Form W-2 will be provided to each Settlement Class Member. That portion of each Class Member's Individual Settlement Amount constituting interest, liquidated damages, and penalties will be reported on an IRS Form 1099 provided to each Settlement Class Member, with required copies of the IRS Form 1099s provided to the Internal Revenue Service.

5.       **WHAT DO I NEED TO DO TO COLLECT MONEY?**

If you want to participate in the settlement, you need not take any action as this will occur automatically. All you need to do is make sure the Settlement Administrator is aware of your correct mailing address.

6.       **WHAT IF I DO NOTHING?**

You may decide to do nothing. However, you will be bound by the terms of the Settlement Agreement and/or by any other final outcome of this lawsuit. Specifically, unless you affirmatively exclude yourself from the Settlement, you will be bound by the terms of the release as described in # 9 below and therefore be barred from pursuing any state wage law claims against PetSmart that were alleged in this lawsuit.

7. **HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT?**

If you do not wish to participate in the Settlement, you may exclude yourself ("opt out") by sending a Request for Exclusion to the Claims Administrator listing your name, address, and phone number, and the last four digits of your social security number along with the following statement:

  **"I do not wish to participate in or be bound by the Milburn v. PetSmart class action settlement."**

The Request for Exclusion must be completed, signed, dated, and returned to the Claims Administrator.

Any person who submits a timely Request for Exclusion shall, upon receipt, no longer be a member of the Settlement Class, shall be barred from participating in any portion of the Settlement, and shall receive no money from the Settlement. Any such person, at his/her own expense, may pursue any claims he/she may have against PetSmart. However, there are deadlines to pursuing such claims, known as statutes of limitation. Please consult an attorney of your choice to ensure you are not forever barred from pursuing a claim if you decide to opt out of this Settlement.

**THE REQUEST FOR EXCLUSION MUST BE MAILED VIA FIRST-CLASS MAIL AND POSTMARKED NO LATER THAN [INSERT DATE 60 DAYS AFTER MAILING].**

**8.     HOW DO I OBJECT TO THE SETTLEMENT?**

You may object to the terms of the Settlement before final approval. If you choose to object to the Settlement, you may represent yourself or hire your own attorney. You must file a written objection.

You must file these documents, along with any briefs, exhibits, and/or other material that you wish the Court to consider, with the United States District Court Clerk, Eastern District at Robert E. Coyle United States Courthouse, Courtroom 5, 7th floor, 2500 Tulare Street, Fresno, CA 93721. In addition, you must send copies to Class Counsel and Defense Counsel identified in Number 10 below.

Any written objections should state each specific reason for your objection and any legal support for each objection. Your objection must also state your full name, address, and the dates of your employment by PetSmart in California in a position listed in Number 3 above. To be valid and effective, any objections to the proposed Settlement must be filed with the Clerk of the Court and served upon each of the above-listed attorneys no later than **[INSERT DATE 60 DAYS AFTER MAILING].**

**IF THE COURT REJECTS YOUR OBJECTION AND APPROVES THE SETTLEMENT, YOU WILL BE BOUND BY THE TERMS OF THE SETTLEMENT.**

**9.     WHAT CLAIMS DO I RELEASE IF I PARTICIPATE IN THE SETTLEMENT?**

Upon the final approval of the Settlement by the Court, each member of the PetsHotel Manager Class, PetsHotel Leader Class and/or PetsHotel Waiting Time Penalty Subclass (other than opt-outs), will fully release and discharge PetSmart, its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives ("Released Parties") from any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims (including under the Private Attorneys

General Act) that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint, and that accrued from October 27, 2012, through the Preliminary Approval Date. The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the Lawsuit; (b) any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any member of the PetsHotel Manager Class or PetsHotel Leader Class; (c) any and all claims which arose under applicable state laws for failure to timely pay wages, including payment of wages at termination; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods; (e) any and all claims under applicable state laws stemming from or based on the alleged misclassification of employees as exempt employees, *i.e.*, employees who PetSmart classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in applicable state law; (f) any and all claims which arose under applicable state law for reimbursement for all necessary costs, expenditures, losses or expenses incurred by any member of the PetsHotel Manager Class or PetsHotel Leader Class in connection with their employment with PetSmart; (g) any and all claims which arose under applicable state law for wage statement violations; (h) any and all claims which arose under applicable state law for failure to provide suitable seating to employees; and (i) all claims for wages, penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (h) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date. The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations, or common law, including without limitation claims under the California Labor Code (including claims under PAGA on behalf of the State of California), the California Business & Professions Code, and the California Industrial Welfare Commission Wage Orders. In addition, those members of the PetsHotel Manager Class or PetsHotel Leader Class who endorse their settlement checks will also release claims for any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.*

Upon the final approval of the Settlement by the Court, each member of the PetsHotel Seating Class (other than opt outs) will release PetSmart, its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives ("Released Parties") for any and all claims, obligations, demands, actions, rights, causes of action, and liabilities, under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders for the failure to provide suitable seating that have been or could have been asserted in the Amended Complaint.

**10.      WHO ARE THE LAWYERS REPRESENTING THE PARTIES?**

Attorneys for Plaintiffs & the Classes are:        Attorneys for PetSmart, Inc. are:
**GRAHAMHOLLIS** APC                                 MORGAN LEWIS & BOKIUS LLP
Graham S. P. Hollis                                  Carrie A. Gonnell
ghollis@grahamhollis.com                             carrie.gonnell@morganlewis.com
Vilmarie Cordero                                     600 Anton Blvd., Ste. 1800
vcordero@grahamhollis.com                            Costa Mesa, CA 92626
3555 Fifth Avenue, Ste 200                           Telephone: (949) 399-7160
San Diego, CA 92103
Telephone: (619) 906-4017

Copies of any documents filed with the Court in this Litigation should be sent to the above-listed counsel.

**11.      WHO IS THE SETTLEMENT ADMINISTRATOR?**

Rust Consulting
[ADDRESS]
[PHONE#]

**If you move after receiving this notice, or if it was incorrectly addressed, please provide your correct address to the Settlement Administrator.**

**12.      FINAL SETTLEMENT APPROVAL HEARING.**

The United States District Court, Eastern District will hold a hearing at the Robert E. Coyle United States Courthouse, Courtroom 5, 7th floor, 2500 Tulare Street, Fresno, CA 93721on [DATE] at [TIME] to determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court also will be asked to approve Settlement Class Counsel's request for attorneys' fees and reimbursement of costs and expenses and the service awards to be paid to Plaintiffs. The hearing may be continued without further notice to the Settlement Class. It is not necessary for you to appear at this hearing.

**13.      ADDITIONAL INFORMATION.**

The above is a summary of the basic terms of the Settlement. A complete copy of the Settlement Agreement may be obtained from the Settlement Administrator or Class Counsel.
**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT. ALL QUESTIONS REGARDING THE SETTLEMENT SHOULD BE DIRECTED TO THE SETTLEMENT ADMINISTRATOR OR THE LAWYERS FOR THE PARTIES.**

EXHIBIT B



## <u>CALIFORNIA WORKPLACE SEATING POLICY</u>

PetSmart makes seating available to California associates for use at appropriate times and locations in accord with the following California state labor regulation:

(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.

(B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

If you do not have seating at or near your work area and feel you need seating, please let your Store Leader know, and we will look into the situation to determine what can be done.

If you have any questions or concerns about seating please reach out to your Store Leader or Associate Relations at (866) 263-8411, option #4 - Associate Relations or AssociateRelations@petsmart.com.

EXHIBIT 2

GrahamHollis, A.P.C.
3555 Fifth Avenue, Suite 200, San Diego, CA  92103
(619) 692-0800
www.grahamhollis.com

**Appointed as Class Counsel[1] for the following wage and hour employment law cases:**

**United States District Court - Central District**:

- *Ellis v. Pacific Bell Telephone Co.* settled for $3.1 million on behalf of approximately 84 class members, and Judge Carney awarded 33.3% in fees.

- *Rodriguez v. Old Dominion Freight Line, Inc.* settled for $3.4 million on behalf of approximately 76 class members, and Judge Fischer awarded 27.5% in fees.

- *Corral v. Lifecare Solutions* settled for $3 million on behalf of approximately 270 class members, and Judge Olguin awarded 30% in fees.

- *Madera v. Universal Alloy Corporation* settled for $4.75 million on behalf of approximately 744 class members, and Judge Selna awarded 25% in fees.

- *Green v. Lawrence Service Co.* settled for $60,000 on behalf of approximately 295 class members, and Judge Kronstadt awarded $169,500 in fees.

- *Weaver v. Hallmark Marketing Corp.* settled for $5.625 million on behalf of approximately 3,846 class members, and Judge Fairbanks awarded 33% in fees.

**United States District Court – Northern District**:

- *Moore v. Petsmart, Inc.* settled for $10 million on behalf of approximately 19,701 class members, and Judge Davila awarded 27% in fees.

- *Delatorre v. Johnson Controls, Inc.* settled for $2.8 million on behalf of approximately 1,441 class members, and Judge Grewal awarded 25% in fees.

- *Fong v. Regis Corporation* settled for $5,750,000, on behalf of approximately 5,573 class members, and Judge Chhabria awarded 33% in fees.

- *Jimenez v. Menzies Aviation* settled for $1,250,000 on behalf of 5,175 class members and Judge Orrick awarded 33% in fees.

- *Aston v. United Parcel Services, Inc.* settled for $490,000 on behalf of approximately 2,000 class members, and Judge White awarded 33.33% in fees.

---

[1] List includes cases filed by Graham Hollis, A.P.C., as well as its predecessor entities.  It also includes cases where other law firms were appointed as co-class counsel.

**United States District Court – Southern District:**

- *Lopez v. GAT Airline Ground Support, Inc.* settled for $600,000 on behalf of approximately 1,394 class members, and Judge Battaglia awarded 25% in fees.

- *Birch v. Office Depot, Inc.* settled for $14 million on behalf of approximately 16,722 class members, and Judge Sabraw awarded 40% in fees.

- *Singer v. Becton Dickinson and Co.* settled for $1 million on behalf of approximately 266 class members, and Judge Gonzalez awarded 33.33% in fees.

- *Cook v. Tiffany and Company* settled for $4,148,270 on behalf of approximately 1,584 class members, and Judge Lorenz awarded 24.8% in fees.

- *Ferguson v. Winston Retail Solutions* settled for $750,000 on behalf of approximately 660 class members; and Judge Battaglia awarded 33.33% in fees.

**Superior Court for the County of Alameda:**

- *Hobdy v. Landmark Event Staffing Services, Inc.* settled for $245,100 on behalf of approximately 3,671 class members, and Judge Hernandez, Jr., awarded 33.33% in fees.

**Superior Court for the County of Contra Costa:**

- *Stevenson v. Falcon Critical Care Transport* settled for $233,853 on behalf of approximately 46 class members, and Judge Goode awarded 29% in fees.

**Superior Court for the County of Fresno:**

- *Parmelee v. Driveline Retail Merchandising, Inc.* settled for $1,000,000 on behalf of approximately 1,261 class members, and Judge Kapetan awarded 33.33% in fees.

- *Kenner v. Oak Harbor Freight Lines, Inc.* settled for $1,850,000 on behalf of approximately 216 class members, and Judge Snauffer awarded 27% in fees.

**Superior Court for the County of Los Angeles:**

- *Lucarini v. Dresser, Inc.* settled for $1.024 million on behalf of approximately 78 class members, and Judge Mohr awarded 39.55% in fees.

- *Magana-Mead v. LKQ Corporation, et al.,* was settled for $1,150,000 on behalf of 303 class members, and Judge Nelson awarded 33% in fees.

- *Mahoney v AT&T Corp.* settled for $13,894,098.62 on behalf of approximately 719 class members, and Judge Elias awarded 33.33% in fees.

- *Calhoun v. General Petroleum Corp.* settled for $950,000 on behalf of approximately 300 class members, and Judge Dunn awarded 40% in fees.

- *Frugard v. Unified Protective Services, Inc.* is an ongoing case which has been certified as a class action by Judge Johnson.

- *Garcia v. Menzies Aviation, Inc.* settled for $1,000,000 on behalf of approximately 1,800 class members, and Judge Rosenblatt awarded 33.33% in fees.

- *Wright v. Menzies Aviation, Inc.* was certified as a class action by Judge Weintrob and was consolidated with *Jimenez v. Menzies Aviation, Inc.* for settlement purposes.

- *Williams v. One Legacy* settled for $1.2 million on behalf of approximately 145 class members, and Judge Johnson awarded 33% in fees.

- *Solaberrieta v. Baker Hughes Oilfield Operations* settled for $3.5 million on behalf of approximately 295 class members, and Judge Wiley awarded 33.33% in fees.

- *Wright v. AMF Bowling Centers, Inc.* settled for $6.35 million on behalf of approximately 4,914 class members, and Judge Duffy-Lewis awarded 28% in fees.

- *Iskandaryan v. Casual Male Retail Group, Inc.* settled for $950,000 on behalf of approximately 716 class members, and Judge Stern awarded 33.33% in fees.

**Superior Court for the County of Orange**:

- *Duarte v. Rainbow Disposal Co., Inc.* settled for $1.6 million on behalf of approximately 110 class members, and Judge Andler awarded 40% in fees.

- *Payton v. Atlantic Aviation Investors, Inc.* settled for $1 million on behalf of approximately 162 class members, and Judge Stock awarded 40% in fees.

- *Flannery v. AGR Group California* settled for $1,324,937 on behalf of approximately 5,182 class members, and Judge Andler awarded 33% in fees.

- *Parnell v. Hart-Hanks Shoppers, Inc.* settled for $600,000, on behalf of approximately 169 class members, and Judge Andler awarded 33.33% in fees.

- *Jenkins v. The Mentor Network, Inc.* settled for $1,625,000 on behalf of approximately 1050 class members, and Judge Perkins awarded 33% in fees.

**Superior Court for the County of Riverside**:

- *Leonard v. ABTTC, Inc.* settled for $2.5 million on behalf of approximately 336 class members, and Judge Riemer awarded 33% in fees.

- *Vest v. Scher Tire, Inc.* settled for $3,363,396 on behalf of approximately 795 class members, and Judge Waters awarded 33.33% in fees.

- *Digiacomo v. Castelli's Ristorante* settled for $225,000 on behalf of approximately 35 class members, and Judge Waters awarded 33% in fees.

**Superior Court for the County of San Bernardino**:

- *Bracy v. Speedy Cash* settled for $237,320 on behalf of approximately 222 class members, and Judge Kayashima awarded 22.69% in fees.

- *Booher v. The Poma Companies* settled for $650,000 on behalf of approximately 75 class members, and Judge Plotkin awarded 44% in fees.

- *Jeffries v. Praxair Services, Inc.* settled for $373,000 on behalf of approximately 23 class members, and Judge Garza awarded 35% in fees.

- *Scaglione v. M.O. Dion & Sons, Inc.* settled for $585,000 on behalf of approximately 123 class members, and Judge Garza awarded 30% in fees.

- *Malone v. Praxair, Inc.* settled for $900,000 on behalf of approximately 57 class members, and Judge Davis awarded 40% in fees.

- *Alvarez v. Core States, Inc.* settled for $530,000 on behalf of approximately 45 class members, and Judge Garza awarded 40% in fees.

**Superior Court for the County of San Diego**:

- *Fennessey v. Round Table Pizza, Inc.* settled for $2,125,000 on behalf of approximately 16,333 class members, and Judge Lewis awarded 28% in fees.

- *Morales v. Sony Electronics, Inc.* settled for $450,100 on behalf of approximately 4,742 class members, and Judge Styn awarded $296,275 in fees.

- *Frayre v. United Parcel Services Supply Chain Services, Inc.* settled for $494,000 on behalf of approximately 55 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Julio v. L&M Tire Company, Inc.* settled for $1.85 million on behalf of approximately 1,087 class members, and Judge Barton awarded 33% in fees.

- *Irmen v. Raphael's Party Rentals* settled for $1 million on behalf of approximately 845 class members, and Judge Lewis awarded 40% in fees.

- *Well v. Hooters of America, Inc.* settled for $1.35 million on behalf of approximately 2,300 class members, and Judge Wohfeil awarded 35% in fees.

- *Clancy v. Scripps Health* settled for $6.4 million on behalf of approximately 124 class members, and Judge Meyer awarded 33% in fees.

- *De La Rosa v. Quten Research Institute, LLC* settled for $450,000 on behalf of approximately 402 class members, and Judge Meyer awarded 33.33% in fees.

- *Martinez v. San Diego Auto Scrubber, Inc.* settled for $500,000 on behalf of approximately 148 class members, and Judge Hayes awarded 33.33% in fees.

- *Chavez v. Real Time Staffing Services, Inc.* settled for $1.9 million on behalf of approximately 3,120 class members, and Judge Medel awarded 35% in fees.

- *Thompson v. LawInfo.com, Inc.* settled for $150,000 on behalf of approximately 115 class members, and Judge Enright awarded 33.33% in fees.

- *Escoto-Miranda v. Evans Tire & Service Centers, Inc.* settled for $800,000 on behalf of approximately 450 class members, and Judge Strauss awarded 33% in fees.

- *Loveless v ASM Affiliates* settled for $750,000 on behalf of approximately 276 class members, and Judge Styn awarded 33.33% in fees.

- *Falcon v. Flight Suits, Inc.* settled for $450,000 on behalf of approximately 101 class members, and Judge Denton awarded 33.33% in fees.

- *Solis v. Check Agencies of California, Inc.* settled for $475,000 on behalf of approximately 559 class members, and Judge Taylor awarded 35% in fees.

- *Demers v. Hotcakes No. 3, Inc.* settled for $150,000 on behalf of approximately 300 class members, and Judge Nevitt awarded 33% in fees.

- *Madriz v. North County Ford, Inc.* settled for $188,000 on behalf of approximately 45 class members, and Judge Wohfeil awarded 33.33% in fees.

- *Fay v Cement Cutting, Inc.,* settled for $720,000 on behalf of approximately 376 class members, and Judge Bacal awarded 33.33% in fees.

- *Costa v. Altman Specialty Plants, Inc.* settled for $2,400,000 on behalf of approximately 4,414 class members, and Judge Hayes awarded 33.33% in fees.

- *Huerta v. Venture Petroleum Company, Inc.*, settled for $300,000 on behalf of approximately 513 class members, and Judge Wohlfeil awarded 33.33% in fees.

- *Johnson v. The SoCo Group, Inc.*, settled for $895,000 on behalf of approximately 218 class members, and Judge Lewis awarded 33.33% in fees.

- *Geilenfeldt v. EDF Renewable Energy, Inc.* settled for $2,500,000 on behalf of approximately 144 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Garcia v. Task Ventures, LLC*, is an ongoing case and has been conditionally approved as a class action by Judge Wohlfeil.

- *Barron v Green Farms, Inc.*, settled for $650,000 on behalf of approximately 154 class members, and Judge Pollak awarded 33.33% in fees.

- *Arriaga v. International Coffee & Tea*, is an ongoing case and has been conditionally approved as a class action by Judge Bacal.

**Superior Court for the County of San Francisco**:

- *Casas v. Pacific Bell Telephone Co.* settled for $6 million on behalf of approximately 464 class members, and Judge Goldsmith awarded 23% in fees.

**Superior Court for the County of Santa Clara**:

- *Ledbetter v. Entrepreneurial Ventures, Inc.* settled for $1.8 million on behalf of approximately 754 class members, and Judge Overton awarded 33.33% in fees.

- *Subia v. National Securities Industries, Inc.* settled for $275,000 on behalf of approximately 187 class members, and Judge Lucas awarded 30% in fees.

- *Letuligasenoa v. International Paper Company* for $4,500,000 on behalf of approximately 3,786, and Judge Errand awarded 33.33% in fees with a 1.47 multiplier.

**Superior Court for the County of Solano**:

- *Turnage v. Park Management Corporation* settled for $400,000 on behalf of approximately 214 class members, and Judge Daniels awarded 33.33% in fees.

- *Saechao v. Pla-Fit Franchise d.b.a. Planet Fitness* settled for $325,000 on behalf of approximately 149 class members, and Judge Mattice awarded 25% in fees.

- *Stafford v. Dollar Tree Stores Inc.* settled for $4,600,000 on behalf of approximately 7,737 class members, and Judge Beeman awarded 33.33% in fees.

**Superior Court for the County of Ventura**:

- *Jackson v. Vulcan Materials Co.* settled for $800,000 on behalf of approximately 103 class members, and Judge Bysshe awarded 37.5% in fees.

- *Laux v. Van Nuys Skyways, Inc.* settled for $800,000 on behalf of approximately 70 class members, and Judge Riley awarded 35% in fees.

**Serving as Plaintiffs' Counsel in the following wage and hour employment law class/representative action cases:**

**United States District Court – Central District:**

- *Potter v. Big Tex Trailer Manufacturing, Inc., et al.*, before Judge Gutierrez

**United States District Court – Eastern District:**

- *Stoddart v. Express Services, Inc.* before Judge Mueller

- *Milburn v. Petsmart, Inc.* before Judge Drozd

- *Osegueda v. Northern California Inalliance,* before Judge Shubb

**Superior Court for the County of Alameda**:

- *Roberson v. Center for the Elders' Independence*, before Judge Seligman

- *Lee v. Sutter Bay Medical Foundation*, before Judge Seligman

**Superior Court for the County of Fresno**:

- *Drake v. Midvalley Disposal, LLC et al.,* before Judge Snauffer

**Superior Court for the County of Kern:**

● *McGough v. Love's Travel Stops & Country Stores, Inc., et al.*, before Judge Chapin

**Superior Court for the County of Los Angeles:**

● *Agredano v. Southwest Water Company, et al.,* before Judge Nelson

● *Gordon v. Accountable Healthcare Staffing, Inc., et al.,* before Judge Highberger

● *Silva v LK&M Wall Corp.,* before Judge Berle

● *Taylor v. Cross Country Support Services,* before Judge Nelson

● *Ramirez v Baker Hughes Oilfield Operations,* before Judge Kuhl

● *Valentine v. Rehabilitation Center of Santa Monica Holding Company GP*, before Judge Kuhl

● *Lopez v. Kazi Foods, Inc., et al.*, before Judge Berle

**Superior Court for the County of Orange**:

● *Blackwood v. Solid Landings Behavioral Health, Inc.* before Judge Sherman

● *Collins v. The Stephouse Recovery, Inc.* before Judge Claster

● *Valenzuela v. Enver Solar, Inc., et al.*, before Judge Sanders

● *Dilorenzo v. Healthy Healing Holistic Options dba Showgrow., et al.*, before Judge Sherman

**Superior Court for the County of Sacramento**:

● *Muniz v. Sutter Valley Hospitals*, before Judge Perkins

**Superior Court for the County of San Bernardino:**

● *Christensen v. Heartland Express, Inc.* before Judge Cohn

● *Sala v. Personnel Staffing Group, LLC, before Judge Cohn*

**Superior Court for the County of San Diego:**

● *Potacka v. Scripps Health et al.*, before Judge Strauss

● *Ceron de Orozco v. Flagship Facility Services, Inc.* before Judge Bacal

**Superior Court for the County of Santa Clara:**

● *Allison v. Super Zen, Inc.*, before Judge Kuhnle

● *Suarez v. First Alarm Security & Patrol, Inc.*, before Judge Walsh

● *Jordan v. Arriaga & Associates, Inc.,* before Judge Kuhnle

7

- *Furlough v. Capstone Logistics, LLC,* before Judge Kumle

**Superior Court for the County of Tulare**

- *Lopez v. Ruiz Food Products, Inc.*, before Judge Hillman