1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

FOR THE EASTERN DISTRICT OF CALIFORNIA

10

WILLIAM L. MILBURN, individually and on behalf of all other current and former similarly situated and aggrieved employees of DEFENDANTS in the State of California,

Plaintiff,

v.

PETSMART INC. and DOES 1 through 25, inclusive,

Defendant.

11
12
13
14
15
16
17

Case No.:   1:18-CV-00535-DAD-SKO

**[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (2) PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; (3) APPROVAL OF THE CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVE; AND (5) SETTING A FINAL APPROVAL HEARING**

18
19
20

Date:        November 6, 2018
Time:        9:30 AM
Dept:        5
Judge:      Dale A. Drozd

21
22
23
24
25
26
27
28

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Plaintiff's Motion for Preliminary Approval of Class Action Settlement came before this Court on November 6, 2018. The Court, having considered the proposed Stipulation of Class Action and PAGA Representative Action Settlement and Release (the "Settlement Agreement"), Plaintiff's Motion for Preliminary Approval, and all papers filed in support, **HEREBY ORDERS THE FOLLOWING**:

1.     The Court grants preliminary approval of the Settlement and preliminarily finds that: (1) the Settlement is fair and reasonable to the Class when balanced against the possible risks of further litigation, including issues relating to class certification, liability, calculating damages, and potential appeals; (2) significant investigation, research, and litigation was conducted, which allowed the Parties to fairly evaluate their respective positions; (3) settlement at this time will avoid the substantial cost, delay, and risks presented by further litigation of the action; and (4) the Settlement was reached after serious, informed, and non-collusive negotiations, which were conducted at arm's length by experienced counsel with the assistance of a neutral and reputable mediator.

2.     This Order incorporates by reference all defined terms set forth in the Settlement Agreement, which is attached hereto as **Exhibit A**.

3.     The Court finds that the proposed Settlement Class meets the requirements of numerosity, commonality, and typicality to justify certification, and that there is adequate and fair representation.

4.     The Court grants provisional certification of the following Settlement Class and Subclass:

  a.   **PetsHotel Manager Class**: "which means **"**any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period from October 27, 2012, through April 13, 2015.

  b.   **PetsHotel Leader Class:** which means **"**any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from April 13, 2015 through the date of the Court's Preliminary Approval of the Settlement."

  c.   **PetsHotel Seating Class:**  which means "all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the date of the Court's Preliminary Approval of the Settlement, as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associates"]

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

2

d. **Waiting Time Penalties Subclass:** which means "any members of the PetsHotel Manager Class and PetsHotel Leader Class whose employment ended, according to PetSmart's records, between October 27, 2013 through the date of the Court's Preliminary Approval of the Settlement."

5.     The Court approves the appointment of Plaintiff William Milburn as Class Representative.

6.     The Court approves the appointment of Plaintiff's Counsel: Graham S.P. Hollis, Vilmarie Cordero, and Nathan Reese of GrahamHollis APC as class counsel.

7.     The Court approves the form and content of the Notice of Class Action Settlement, in substantially the form attached to the Settlement Agreement as Exhibit A, and finds that the proposed method of disseminating the Class Notice to the Class meets all the due process requirements, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all Class Members.

8.     The Court preliminarily approves the definition and disposition of the Maximum Settlement Amount of $1,350,000, which is inclusive of: (1) all Individual Settlement Payments to Participating Class Members; (2) the Class Representative Service Award; (3) Class Counsel's fees and costs; (4) all Settlement Administration Costs; and (5) the PAGA Payment.

9.     The Court approves the retention of Rust Consulting, Inc. ("Rust") as the Settlement Administrator and hereby directs Rust to provide the approved Class Notice to Class Members and administer the Settlement in accordance with the procedures described in the Settlement Agreement and the Implementation Schedule set forth below.

10.     In the event the Settlement does not become effective in accordance with the terms of the Settlement Agreement, or the Settlement is not finally approved, is terminated, cancelled or fails to become effective for any reason, this Order shall be rendered null and void and shall be vacated, and the Parties shall revert to their respective positions as of the commencement of the litigation.

/ / /

/ / /

/ / /

/ / /

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

11. The Court orders the following implementation schedule for further proceedings:

| | |
|---|---|
| Preliminary Approval | **November 6, 2018** |
| Deadline for Defendant to provide Class Data to the Settlement Administrator. | **November 21, 2018** Within fifteen (15) calendar days following the Court's entry of its Order Granting Preliminary Approval. |
| Deadline for Settlement Administrator to mail the Class Notice to Class Members. | **December 6, 2018** Within fifteen (15) calendar days after receipt of the Class Data from Defendant. |
| Deadline for Class Members to submit a Request for Exclusion or written objection to the Settlement. | **February 4, 2019** No later than sixty (60) calendar days after the date of the mailing of the Class Notice. The date the Request for Exclusion or written objection is postmarked shall be the exclusive means for determining whether the request or objection has been timely filed. |
| Deadline for Class Counsel to file Plaintiff's Motion for Final Approval of Class Action Settlement and Award of Attorney's Fees and Costs and Class Representative Service Award. | No later than sixteen (16) Court days prior to the hearing date for Plaintiff's Motion for Final Approval of Class Action Settlement and Award of Attorney's Fees and Costs and Class Representative Service Award. |
| Deadline to Opt Out. | No later than 60 calendar days after mailing by Settlement Administrator of Notice Regarding Pendency of Class and Representative Action. |
| Plaintiff files Petition for Fees and Costs. | No later than 14 calendar days before the Deadline to Opt Out. |
| PetSmart deposits the full amount of the Maximum Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator | No later than 7 calendar days after Effective Date |
| Distribution of payments to Participating Class Members, Class Representative and Class Counsel (subject to Court approval). | No later than 15 calendar days after the Effective Date. |
| Mailed settlement checks expire and funds go to *Cy Pres*. | 180 calendar days after Settlement Checks distributed to Participating Class Members. |

/ / /

/ / /

/ / /

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

4

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

The Court hereby sets a hearing date for Plaintiff's Motion for Final Approval of Class Action Settlement and Award of Attorney's Fees, Costs, and Class Representative Service Award on: _____at_____ in Department 5 of this Court.

**IT IS SO ORDERED**.

Dated:

_____

Honorable Dale A. Drozd
United States District Judge

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

[PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

EXHIBIT A

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED AND AGREED by and between WILLIAM MILBURN ("Plaintiff" or "Class Representative"), on behalf of himself and all others similarly situated, on the one hand, and PetSmart, Inc. ("PetSmart"), on the other hand, hereinafter all referred to jointly as "Settling Parties" (and as defined herein at Section 1.45), as set forth below:

## I.  THE CONDITIONAL NATURE OF THIS STIPULATION

This Stipulation and Settlement Agreement and all associated exhibits and attachments (herein "Stipulation") are made for the sole purpose of settling the Litigation on a representative and class-wide basis. This Stipulation and the settlement it evidences is made in compromise of disputed claims. Because this action was pled as a class and representative action, this settlement must receive preliminary and final approval by the Court. Accordingly, the Settling Parties enter into this Stipulation and associated settlement on a conditional basis. In the event that the Court does not enter the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.12) shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation of the Stipulation shall remain confidential and the terms and entry of the Stipulation shall remain subject to the provisions of Federal Rule of Evidence 408, California Evidence Code section 1152 and any other analogous rules of evidence that are applicable. In such event, all of the Class Representative's individual and putative class and representative claims shall proceed as though no settlement or compromise had been reached.

PetSmart denies all claims as to liability, damages, penalties, interest, fees, restitution, injunctive relief and all other forms of relief as well as the representative and class allegations asserted in the Litigation. PetSmart has agreed to resolve the Litigation via this Stipulation, but to the extent this Stipulation is deemed void or the Effective Date does not occur, PetSmart does not waive, but rather expressly reserves, all rights to challenge all such claims and allegations in the Litigation

upon all procedural and factual grounds, including without limitation the ability to challenge class and representative action treatment on any grounds, as well as asserting any and all other potential defenses or privileges.  The Class Representative and Class Counsel agree that PetSmart retains and reserves these rights and they agree not to take a position to the contrary; specifically the Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument that based on this Stipulation, PetSmart could not contest class certification or representative action treatment on any grounds, or assert any and all other potential defenses and privileges if this Litigation were to proceed.

## II.     THE PARTIES TO THIS STIPULATION

This Stipulation (with the associated exhibits) is made and entered into by and among the following Settling Parties:  (i) the Class Representative (on behalf of himself and each of the Settlement Class Members, as the latter are defined in Section 1.40), with the assistance of Class Counsel; and (ii) PetSmart, with the assistance of its counsel of choice.

## III.    THE LITIGATION

On October 27, 2016, William Milburn filed a proposed class and representative action in the Fresno County Superior Court, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 16CECG03484 (the "Litigation").  Plaintiff alleges multiple causes of action under the California Labor Code that generally derive from his allegation of misclassification for:  (1) failure to pay overtime wages (Labor Code §§ 510, 1194, 1198, and IWC Wage Order 7-2001 § 3); (2) failure to provide regular and minimum wages (Labor Code §§ 1197, 1194, 1198, and IWC Wage Order 7-2001 § 4); (3) failure to provide meal periods (Labor Code §§ 226.7, 512, 1198, and IWC Wage Order 7-2001 § 11); (4) failure to provide rest periods (Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 12); (5) failure to provide and maintain accurate itemized wage statements (Labor Code § 226); (6) failure to pay wages due during employment (Labor Code §§ 204(a), 1198, and IWC Wage Order 7-2001 § 4); (7) failure to pay wages due upon separation of employment (Labor Code §§ 201, 202, 203); (8) failure to maintain accurate records (Labor Code § 1174); (9) violation of Business and Professions Code §§ 17200 *et seq.*; (10) civil penalties under the Private Attorneys General Act ("PAGA")

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

(Labor Code § 2698, *et seq.*); and (11) failure to provide suitable seats under PAGA (Labor Code §§ 1198, 2698 *et seq.*, and IWC Wage Order 7-2001 § 14).

On March 20, 2018, Plaintiff filed a First Amended Complaint ("FAC"), adding two causes of action for failure to reimburse necessary business expenses (Labor Code § 2802) and violation of the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 207, 211(c), 216(b)). On April 18, 2018, PetSmart filed a Notice of Removal, removing the action to the United States District Court for the Eastern District of California.

The Settling Parties engaged in early settlement negotiations and agreed to attempt to resolve Plaintiff's claims through private mediation. On January 4, 2018, the Settling Parties participated in a private mediation with mediator Mark S. Rudy, Esq. The mediation among the Settling Parties ultimately resulted in this Stipulation and Settlement Agreement. The Settling Parties intend this Stipulation to fully, finally, and forever resolve, discharge, and settle the Released State Law Claims, Released Federal Law Claims, Released Seating Claims, and the Class Representative's Released Claims upon and subject to the terms and conditions hereof. PetSmart retains the right to void the Stipulation if any of the above released claims covered by this settlement and Stipulation are not extinguished as of the Effective Date.

## IV.   PETSMART'S DENIAL OF WRONGDOING OR LIABILITY

PetSmart specifically and generally denies all of the claims asserted in the Complaint and the Litigation. PetSmart also denies any and all liability or wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Complaint or the Litigation, and makes no concessions or admissions of wrongdoing or liability of any kind whatsoever. PetSmart maintains that all of its PetsHotel Managers and Leaders are and always have been properly classified. PetSmart further asserts that the nature of the work performed by the Class Members does not reasonably permit the use of seats, and that suitable seats are provided in break areas. PetSmart also maintains that, for any purpose other than settlement, the claims alleged in the Complaint and the Litigation are not suitable or appropriate for class or representative action treatment pursuant to either California Code of Civil Procedure Section 382 or California Labor Code § 2698 *et seq.* or any other applicable laws or rule(s). Nonetheless, PetSmart has concluded that further conduct of the Litigation

would be protracted, distracting, and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. PetSmart has also taken into account the uncertainty and risks inherent in any litigation. PetSmart has therefore determined that it is desirable and beneficial to it to settle the Litigation in the manner and upon the terms and conditions set forth in this Stipulation.

## V.    CLAIMS OF THE CLASS REPRESENTATIVES AND BENEFITS OF SETTLEMENT

The Class Representative and Class Counsel believe that the claims asserted in the Litigation have merit and believe that evidence developed to date supports the claims. However, the Class Representative and Class Counsel recognize and acknowledge the expense and length of time of the type of continued proceedings necessary to prosecute the Litigation against PetSmart through trial and through appeals. The Class Representative and Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in all litigation. Based upon their evaluation, the Class Representative and Class Counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Class Representative and the Settlement Class. The Settling Parties have entered into this Stipulation following an "arms' length," full-day mediation with respected mediator Mark S. Rudy, which occurred after an informal exchange of discovery and an extensive investigation of the claims by Class Counsel and the Class Representative.

## VI.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Class Representative (for himself and the Settlement Class Members) and PetSmart, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Class Members, the Released State Law Claims, Released Federal Law Claims, Released Seating Claims, and the Class Representative's Released Claims (all as defined below) shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Stipulation and the Judgment.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

1.    *Definitions.*

As used in all parts of this Stipulation, the following terms have the meanings specified below:

1.1    "Administrative Costs" means the Court-approved amounts for the following: the Settlement Administrator's costs for administering the settlement; Class Counsel's award of attorneys' fees; Class Counsel's reasonably incurred litigation costs; the individual Enhancement to the Class Representative; the amounts to be paid to the California LWDA ("Labor and Workforce Development Agency") as set forth in Section 2.2.6; and any and all other costs in connection with consummating the terms of this Stipulation, including the costs of all notices set forth in Section 2.5 and its subsections.

1.2    "Allocation" means the form of distribution of the Net Settlement Amount to the Class, which shall be developed as provided in Section 2.2.2 of this Stipulation.

1.3    "Settlement Administrator" means the third-party claims administration firm of Rust Consulting.

1.4    "Class Counsel" means the law firm of GrahamHollis APC.

1.5    "Class Member" means a Person who is a member of the PetsHotel Manager Class, Waiting Time Penalties Subclass, PetsHotel Leader Class, or Seating Class.

1.6    "Class Period" for the purposes of this Settlement means the period from October 27, 2012 through the Preliminary Approval Date.

1.7    "Class Representative" means William L. Milburn.

1.8    "Class Representative's Released Claims" collectively means any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against the PetSmart Releasees (as defined in Section 1.29), whether or not acting in the course and scope of employment, and all persons acting by, through, under, or in concert with any of them, of any and every kind, nature and character whatsoever,  known or unknown (as defined in Section 1.47), suspected or unsuspected, whether based on a tort, contract, statute, or any other theory of recovery, and whether for compensatory or punitive damages which Class Representative had at any time heretofore or claimed to have or which Class Representative may have or claim to have regarding events that have occurred

relating to any work performed for PetSmart Releasees as of the date on which the Court enters the Order of Final Approval. This includes all claims against PetSmart related to or arising out of Class Representative's employment with PetSmart Releasees, and/or the cessation of employment or purported employment therefrom. These claims expressly include, but are not limited to, those arising under the Americans With Disabilities Act of 1990 (42 U.S.C. §§ 12101, *et seq.*), the California Family Rights Act, the Employee Retirement Income Security Act (29 U.S.C. § 1000, *et seq.*), the Family and Medical Leave Act, the Fair Labor Standards Act ("FLSA") (29 U.S.C. §§ 201 *et seq.*), the Lily Ledbetter Act, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000, *et seq.*), the California Fair Employment and Housing Act (Cal. Government Code § 12900, *et seq.*), and any and all claims related to the following: unpaid wages; unpaid overtime; failure to pay all compensation on termination of employment; missed meal periods; missed rest periods; reimbursement of expenses; inaccurate wage statements; deductions and/or chargebacks from wages; any alleged violations of the California Labor Code; any alleged violations of applicable federal law including, but not limited to, the FLSA; any alleged violation of and/or any remedy provided by the California Civil Code and/or the California Code of Civil Procedure including, but not limited to, section 1021.5; any claims for penalties under the California Labor Code and/or the California Private Attorneys General Act, California Labor Code section 2698 *et seq.* ("PAGA"); any and all claims for relief under California Business and Professions Code section 17200 *et seq.*, including any and all claims for injunctive relief; and any and all other claims for relief, including any associated prayers for compensatory damages, indemnification, injunctive relief, punitive damages, liquidated damages, penalties, interest, attorneys' fees or costs; any claims arising under the California Constitution; and any of Class Representative's claims or allegations that PetSmart Releasees' deprived Class Representative of any pay or other benefits or legal protections to which he alleges he is or was entitled. The Class Representative and PetSmart Releasees intend for this definition to be all encompassing and to act as a full and total release of any Claim that the Class Representative may legally waive or release against PetSmart Releasees arising from any work performed for PetSmart Releasees, whether specifically enumerated herein or not, that the Class Representative might have or has had, that exists or ever has existed on or to the date on which the Court enters the Order of Final

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Approval.  The Class Representative's Released Claims also include the waiver of any right to bring, maintain, or participate in a class, collective, or representative action against the PetSmart Releasees to the maximum extent permitted by law, other than participation in the settlement of this Litigation. The Class Representative's Released Claims, however, shall not constitute a release of any claims that may not lawfully be waived.

  1.9 "Court" means the United States District Court for the Eastern District of California.

  1.10 "PetsHotel Leader Workweeks" means workweeks from March 31, 2015 through the Preliminary Approval Date in which a Class Member worked in a nonexempt PetsHotel Leader position in California.

  1.11 "Effective Date" means the date on which the Judgment becomes a Final Judgment.

  1.12 "Enhancement" means an amount approved by the Court to be paid to the Class Representative, in addition to his award as a Participating Class Member, in recognition of his efforts in participating in the Litigation as the Class Representative.

  1.13 "Final Judgment" means the latest of: (a) the date of final affirmance on an appeal of the Judgment; (b) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (c) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment.  The Parties intend that the Final Approval Order will encompass an order entering Judgment.

  1.14 "Waiting Time Penalties Subclass" means any members of the PetsHotel Manager Class and PetsHotel Leader Class whose employment ended, according to PetSmart's records, between October 27, 2013 and the Preliminary Approval Date and who does not timely opt-out of the Settlement Class.

  1.15 "Judgment" means the judgment to be rendered by the Court pursuant to this Stipulation.

  1.16 "Last Known Address" means the most recently recorded mailing address for a Class Member as such information is contained in PetSmart's records.

1.17 "The "Litigation" or the "Lawsuit" means the proposed class, representative, and collective action pending in the United States District Court for the Eastern District of California, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 1:18-CV-00535-DAD-SKO, including the claims asserted in the Complaint and in the FAC.

1.18 "PetsHotel Manager Class" means any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original Complaint was filed, October 27, 2012, through April 13, 2015 and who does not timely opt-out of the Settlement Class.

1.19 "Net Settlement Amount" means the Settlement Amount less the Administrative Costs.

1.20 The "Notice Mailing Deadline" shall be fifteen (15) calendar days following receipt by the Settlement Administrator of the list with a name and Last Known Address for each Class Member, as set forth in Section 2.5.3.

1.21 "Notice Regarding Pendency of Class and Representative Action" or "Class Notice" means a notice (and associated response forms) entitled "Notice To Class Members Regarding Pendency of a Class and Representative Action and Notice of Hearing On Proposed Settlement" to be approved by the Court, substantially in the form attached hereto as Exhibit 1.

1.22 The "Notice Response Deadline" shall be sixty (60) calendar days following the Notice Mailing Deadline.

1.23 "Opt Out" or "Opt Outs" means written and signed requests by Class Members to be excluded from the Settlement Class, which are submitted in the manner and within the time set forth in the Notice Regarding Pendency of Class and Representative Action. A Class Member who timely submits an "Opt Out" will not receive any payments under this Stipulation.

1.24 "Order of Final Approval" or "Order Granting Final Approval of Settlement" shall mean an order to be entered and filed by the Court determining that the parties' settlement was reached in good faith and granting final approval of the settlement.

1.25  "Participating Class Member" means each Member of the PetsHotel Manager Class, PetsHotel Leader Class, or PetsHotel Seating Class who does not timely submit an Opt Out form.

1.26  "PetsHotel Leader Class" means any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the Preliminary Approval Date and who does not timely opt-out of the Settlement Class.

1.27  "PetsHotel Leader PAGA Settlement Allocation" means the 25% portion of the PAGA Payment for the PetsHotel Leader Class, i.e. $10,000, that remains in the Net Settlement Amount for distribution to Participating Class Members who are members of the PetsHotel Leader Class after deduction of the portion payable to the LWDA.

1.28  "PetSmart" means PetSmart, Inc.

1.29  "PetSmart Releasees" means PetSmart, each of its affiliates and related entities (including, without limitation, their parents and subsidiaries), predecessors, successors, divisions, joint ventures and assigns, and each of these entities' past or present directors, officers, employees, partners, members, principals, agents, insurers, co-insurers, re-insurers, shareholders, attorneys, and personal or legal representatives.

1.30  "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.31  "Preliminary Approval Order" means an order to be executed and filed by the Court granting preliminary approval of the class and representative action settlement, substantially in the form attached hereto as Exhibit 2, approving the terms contained in this Agreement, and certifying a class for settlement purposes only as provided in Section 2.1.

1.32  "QSF" shall mean the Qualified Settlement Fund established by the Settlement Administrator for the benefit of the Class Members and from which the Administrative Costs and all settlement payments made pursuant to this Stipulation, and all associated tax withholdings and payments, shall be paid.

1.33  "Reasonable Address Verification Measure" shall mean the utilization of an Accurint skip trace, as well as the National Change of Address Database maintained by the United

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

States Postal Service, to review the accuracy of and, if possible, update a mailing addresses for Class Members.

 1.34 "Released Federal Law Claims" shall collectively mean any and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint by a member of the PetsHotel Manager Class or PetsHotel Leader Class who is also participating Class Member that accrued on any date up through and including the date on which the Court issues an order granting preliminary approval of the Settlement, for any type of relief, including without limitation claims for wages, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, based on any and all claims arising under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. §201, *et seq.*

 1.35 "Released PAGA Seating Claims" shall collectively mean any and all claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, under PAGA for underlying violations of the California Labor Code or the California Industrial Welfare Commission Wage Orders for the failure to provide suitable seating members of the PetsHotel Seating Class that have been or could have been asserted as of the Preliminary Approval Date.

 1.36 "Released State Law Claims" shall collectively mean any and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims (including under the Private Attorneys General Act) that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint, and that accrued from October 27, 2012, through the Preliminary Approval Date. The Released State Law Claims include but are not limited to: (a) any and all claims asserted in the Lawsuit; (b) any and all claims under applicable state laws for the failure to pay any type of overtime compensation or minimum wage to any member of the PetsHotel Manager Class or PetsHotel Leader Class; (c) any and all claims which arose under applicable state laws for failure to

timely pay wages, including payment of wages at termination; (d) any and all claims which arose under applicable state laws for the failure to provide or pay for meal breaks, and/or rest periods; (e) any and all claims under applicable state laws stemming from or based on the alleged misclassification of employees as exempt employees, *i.e.*, employees who PetSmart classified as exempt under state law from the wage and hour requirements imposed on employers but who actually do not qualify for any exemption, including without limitation the executive, administrative, or professional exemptions set forth in applicable state law; (f) any and all claims which arose under applicable state law for reimbursement for all necessary costs, expenditures, losses or expenses incurred by any member of the PetsHotel Manager Class or PetsHotel Leader Class in connection with their employment with PetSmart; (g) any and all claims which arose under applicable state law for wage statement violations; (h) any and all claims which arose under applicable state law for failure to provide suitable seating to employees; and (i) all claims for wages, penalties or additional damages, including without limitation waiting time penalties, which allegedly arise from the claims described in (a) through (h) above under any applicable law, including all such claims that are existing and have been asserted as of the Preliminary Approval Date.  The Released State Law Claims are the claims meeting the above definition under any and all applicable statutes, regulations, or common law, including without limitation claims under the California Labor Code (including claims under PAGA on behalf of the State of California), the California Business & Professions Code, and the California Industrial Welfare Commission Wage Orders.

   1.37  "PetsHotel Seating Class" or "PetsHotel Seating Class Member" means all members of the PetsHotel Manager Class, and the PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the Preliminary Approval Date as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate.

   1.38  "PetsHotel Seating Class Period" for the purposes of this Settlement means the period during which PetSmart employed a PetsHotel Seating Class Member in California at any time from October 27, 2015 through the Preliminary Approval Date.

1.39 "PetsHotel Seating Class Settlement Allocation" means the 25% portion of the PAGA Payment, i.e. $75,000, that remains in the Net Settlement Amount for distribution to Participating Class Members who are members of the PetsHotel Seating Class after deduction of the portion payable to the LWDA.

1.40 "PetsHotel Seating Workweeks" means workweeks from October 27, 2015 through the Preliminary Approval Date in which a PetsHotel Seating Class Member worked in a PetsHotel in California as a PetsHotel Leader, PetsHotel Manager, Assistant Manager and/or Assistant Leader, Store lead and/or seniors, Overnight PetCare Specialist, or Guest Services Associate.

1.41 "Settlement Amount" or "Maximum Settlement Amount" shall mean the amount that PetSmart shall pay under the terms of this Stipulation, which shall not exceed the gross sum of $1,350,000, and which shall not include the employer's share of any applicable payroll taxes.

1.42 "Settlement Check" means the payment to Participating Class Members pursuant to this Stipulation. The back of the Settlement Check will have an endorsement that a Participating Class Member must sign to release the Released Federal Law Claims in accordance with Section 2.6.4 and to receive his or her share of the QSF.

1.43 "Settlement Class" means all of the Class Members who do not opt out of the PetsHotel Manager Class, PetsHotel Leader Class, or PetsHotel Seating Class by requesting exclusion/opting out pursuant to Section 2.6.2.

1.44 "Final Approval Hearing" means a hearing set by the Court for the purpose of: (a) determining the fairness, adequacy, and reasonableness of the Stipulation terms and associated settlement pursuant to class action procedures and requirements; and (b) entering Judgment.

1.45 "Settling Parties" means PetSmart, and the Class Representative on behalf of himself and all Members of the Settlement Class.

1.46 "Stipulation" means this agreement, i.e., the Joint Stipulation of Settlement and Release together with all of its attachments and exhibits, which the Settling Parties understand and agree sets forth all material terms and conditions of the Settlement between them, and which is

subject to Court approval. It is understood and agreed that PetSmart's obligations for payment under this Stipulation are conditioned on, *inter alia,* the occurrence of the Effective Date.

      1.47 "Unknown Claims" means any of the Class Representative's Released Claims which the Class Representative does not know or suspect to exist in his favor at the time of the release, and which, if known by him might have affected his decision to release his claims as set forth in Section 1.8. With respect to any and all claims being released, the Settling Parties stipulate and agree that, upon the Effective Date, the Class Representative shall have expressly, knowingly, and intentionally waived for himself the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representative shall be deemed to have, and by operation of the Judgment shall have, waived all such benefits and rights as to the Class Representative's Released Claims. The Class Representative may hereafter discover facts in addition to or different from those which he now knows or believes to be true with respect to the subject matter of the Class Representative's Released Claims and, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all of Class Representative's Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representative acknowledges the significance and consequence of this waiver and assumes full responsibility for any loss that may be incurred by reason of such waiver. The Class Representative further acknowledges that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part.

1.48  "Updated Address" means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Class Member, or any other source.

1.49  "Waiting Time Penalties Subclass" means all members of the PetsHotel Manager Class and/or the PetsHotel Leader Class whose employment with Defendant ended at any time from and after October 27, 2013 through the Preliminary Approval Date.

1.50  "Waiting Time Penalties Subclass Settlement Allocation" means the portion of the Net Settlement Amount allocated to the members of the Waiting Time Penalties Subclass in accordance with paragraph 2.2.2.

1.51  "PetsHotel Manager Workweek" means a workweek between October 27, 2012 and March 31, 2015 in which a Class Member worked in an exempt PetsHotel Manager position in California..

2.     *The Settlement.*

2.1    *Certification of a Class Action for Settlement Purposes Only.*

2.1.1   The Settling Parties stipulate, for settlement purposes only, to the certification by the Court of a class as to all claims asserted in the Litigation pursuant to state law.

2.1.2   If for any reason the Court does not approve this Stipulation, fails to enter the Order of Final Approval, or fails to enter the Judgment or Final Judgment, or if this Settlement Agreement and Stipulation is lawfully terminated for any other reason, PetSmart shall retain the absolute right to dispute the propriety of class certification and/or the ability of this action to proceed as a representative action on all applicable grounds.

2.2    *Consideration to Settlement Class Members.*

2.2.1   The Settlement Administrator will direct PetSmart to fund a QSF maintained by the Settlement Administrator within five (5) calendar days of the Final Judgment date with the following amounts: (1) the total aggregate of the amounts to be paid to Participating Class Members, (2) the Administrative Costs, and (3) the amount to be paid for the applicable employer's share of payroll taxes.  The Settlement Administrator shall have control over the distribution of funds from the QSF, once funded.  With respect to the QSF, the Settlement Administrator shall:  (1)

calculate, withhold, remit and report each Participating Class Member's share of applicable payroll taxes pursuant to Section 2.2.4, and indemnify PetSmart for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) satisfy all federal, state and local and income and other tax reporting, return, and filing requirements with respect to the QSF and any interest or other income earned by the QSF; (3) satisfy out of the QSF all fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of its duties and functions as described in this Agreement; and (4) notify PetSmart of the amount to be paid for the applicable employer's share of payroll taxes to be deposited in the QSF. The aforementioned fees, costs and expenses, apart from the employer's share of payroll taxes to be paid by PetSmart, shall be treated as and included in the costs of administering the QSF and as Administrative Costs. The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. If the Court does not enter the Order of Final Approval or if the Effective Date does not occur, the funds in the QSF shall remain the sole and exclusive property of PetSmart.

2.2.2    The Settlement Administrator, according to the terms, conditions, and procedures set forth in Section 2.4 of this Stipulation, shall calculate pro rata settlement payments to Class Members based on each Class Member's relative percentage of eligible service time in PetsHotel Leader Workweeks and PetsHotel Manager Workweeks during the Class Period or PetsHotel Seating Class Period as reflected on PetSmart's internal records as set forth in this Section. The Parties agree that the following formulas for allocating the settlement payments to Class Members provided herein are reasonable and that the settlement payments provided herein are designed to provide a fair settlement to the Class:

Before the Net Settlement Amount is allocated to the PetsHotel Manager Class, the PetsHotel Leader Class, or the Waiting Time Penalties Subclass, the PetsHotel Seating Class Settlement Allocation shall be made to members of the PetsHotel Seating Class as follows:

PetsHotel Seating Class:  From the Maximum Settlement Amount, $75,000.00 shall be allocated to the PetsHotel Seating Class Members for their share of PAGA penalties, which represents 25% of the $300,000.00 allocated to settle the claims in the Action brought pursuant to

PAGA Seating claims (the "PAGA Settlement Amount"). The specific calculation to arrive at an individual PetsHotel Seating Class Member's relative share of the PAGA Settlement Amount will be as follows: the numerator shall be the number of the individual Seating Workweeks during the Seating Period; the denominator shall be the total Seating Workweeks for all PetsHotel Seating Class Members; this fraction shall be multiplied by the PAGA Settlement Amount. If one or more PetsHotel Seating Class Members opt out of the settlement, the settlement payment to any Participating Class Member as a result of other PetsHotel Seating Class Members opting out of the Settlement will increase on a pro rata basis based upon the Participating Class Member's relative share of the PAGA Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment to a Participating Class Member that is greater than twice the initial amount calculated to be paid to the Participating Class Member pursuant to the above formula.

After deduction of the PetsHotel Seating Class Settlement Allocation from the Net Settlement Amount, the amount remaining in the Net Settlement Amount shall be distributed among Participating Class Members as follows:

PetsHotel Manager Class: PetsHotel Manager Class Members will receive a pro rata percentage of the Net Settlement Amount to be allocated based on each PetsHotel Manager Class Member's relative percentage of PetsHotel Manager Workweeks during the Class Period. The specific calculation to arrive at an individual PetsHotel Manager Class Member's relative share of the Net Settlement Amount will be as follows: the numerator shall be the individual PetsHotel Manager Class member's number of the individual PetsHotel Manager Workweeks during the Class Period; the denominator shall be the total PetsHotel Manager Workweeks for all PetsHotel Manager Class Members; this fraction shall be multiplied by 80% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation. If fewer than all PetsHotel Manager Class Members participate in the distribution, the settlement payment to Participating PetsHotel Manager Class Members will increase on a pro rata basis based upon their relative share of the Net Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment that is greater than twice the initial amount calculated to be paid to the Participating PetsHotel Manager Class Member pursuant to the above formula.

PetsHotel Leader Class:  PetsHotel Leader Class will be allocated 15% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.  The 15% allocation from the Net Settlement Amount to the PetsHotel Leader Class shall include the $10,000 payment to the PetsHotel Leader Class Members for their share of PAGA penalties, which represents 25% of the $40,000.00 allocated to settle the claims in the Action brought pursuant to PAGA for claims brought by the PetsHotel Leader Class.  PetsHotel Leader Class Members will receive a pro rata percentage of the Net Settlement Amount to be allocated based on each PetsHotel Leader Class Member's relative percentage of PetsHotel Leader Workweeks during the Class Period.  The specific calculation to arrive at an individual PetsHotel Leader Class Member's relative share of the Net Settlement Amount will be as follows: the numerator shall be the individual PetsHotel Leader Class member's number of the individual PetsHotel Leader Workweeks during the Class Period; the denominator shall be the total PetsHotel Leader Workweeks for all PetsHotel Leader Class Members; this fraction shall be multiplied by 15% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.  If fewer than all PetsHotel Leader Class Members participate in the distribution, the settlement payment to Participating PetsHotel Leader Class Members will increase on a pro rata basis based upon their relative share of the Net Settlement Amount, subject to the condition that any pro rata increase shall not result in a settlement payment that is greater than twice the initial amount calculated to be paid to the Participating PetsHotel Leader Class Member pursuant to the above formula.

Waiting Time Penalties Subclass:  Each member of the Waiting Time Penalties Subclass will receive a waiting time penalty payment on a per-capita basis, equivalent to 5% of the Net Settlement Amount after deduction of the PetsHotel Seating Class Settlement Allocation.

2.2.3    To the extent administratively convenient, the payment to each Participating Class Member shall be made via a single Settlement Check.

2.2.4    The payments set forth in Section 2.2.2 shall be allocated for reporting reasons as set forth below: (a) one hundred percent (100%) of payments for waiting time penalties and the PetsHotel Seating Class Settlement Allocation shall be deemed payment in settlement for claims of statutory penalties; (b) fifty percent (50%) of the payments to the PetsHotel Manager Class,

and PetsHotel Leader Class other than those set forth in Section 2.2.4(a) shall be deemed payment in settlement of claims for unpaid wages; and (c) fifty percent (50%) of the payments to the PetsHotel Manager Class, and PetsHotel Leader Class other than those set forth in Section 2.2.4(a) shall be deemed payment in settlement for claims of penalties, liquidated damages, interest, and all other non-wage recovery.

2.2.5    As further detailed in Section 2.3, and for each payment made pursuant to Sections 2.2, 2.7, and 2.9 of this Section VI, PetSmart, through the Settlement Administrator, will report each payment to government authorities including the Internal Revenue Service as required by law, and PetSmart, through the Settlement Administrator, shall make all required deductions, withholdings, and/or payroll tax payments.

2.2.6    In addition to the payments to Participating Class Members set forth in Section 2.2.2, PetSmart, through the Settlement Administrator, shall also make a payment to the California LWDA as consideration for the release of all PAGA claims that are the subject of the Litigation on behalf of the State of California. Of the Settlement Amount, $340,000 shall be allocated to the PAGA settlement payment, $255,000 of which shall be paid to the LWDA. The PAGA settlement payment shall comprise $300,000 allocated to PAGA Seating claims and $40,000 allocated to PAGA claims brought by the PetsHotel Leader Class. 25% of each of these amounts shall be paid as follows: $75,000 to the PetsHotel Seating Class Members and $10,000 to the PetsHotel Leader Class members. Such payment to the LWDA shall be included as part of the Administrative Costs and be paid out of the Settlement Amount.

2.3    *Taxes.*

2.3.1    Those payments allocated to the settlement of claims for unpaid wages: (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported in the year of payment as wage income to the Participating Class Member on a Form W-2 and such other state or local tax reporting forms as may be required by law.

2.3.2    Those payment amounts allocated to all other claims, including without limitation claims for penalties, reimbursement, liquidated damages, interest, and other non-wage

recovery (a) shall not be subject to required withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported in the year of payment as non-wage income to the Participating Class Members on a Form 1099 and such other state or local tax reporting forms as may be required by law.

      2.3.3   Any amount paid to Participating Class Members shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "PetSmart Benefit Plans") provided by PetSmart, and no payment made pursuant to this Settlement will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any PetSmart Benefit Plans, and are not considered eligible compensation for PetSmart's 401(k) Savings and Retirement Plans or for any other benefit purposes, or otherwise require any contribution or award under any PetSmart Benefit Plan, or otherwise modify benefits, contributions or coverage under any PetSmart Benefit Plan.

      2.3.4   Other than the withholding and reporting requirements set forth in Section 2.3.1, 2.3.2, and 2.3.3, Participating Class Members shall be solely responsible for the reporting and payment of the employee's share of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Section VI of this Stipulation. PetSmart, through the Settlement Administrator, will pay its share of payroll taxes associated with the settlement payments, in addition to the Settlement Amount. The Settlement Administrator shall calculate and inform PetSmart of its share of payroll taxes associated with the settlement payments. PetSmart will contribute any share of payroll taxes to the QSF and PetSmart's share of the payroll taxes will be paid out of the QSF, in addition to the Settlement Amount. Neither Class Counsel nor PetSmart makes any representations, and it is understood and agreed that PetSmart and Class Counsel have not made any representations, as to the taxability to any Participating Class Members of any portions of the settlement payments, the payment of any costs or an award of attorneys' fees, or any payments to the Class Representative. The Notice Regarding Pendency of

Class and Representative Action will advise each Class Member to seek his or her own personal tax advice prior to acting in response to that notice, and PetSmart, the Class Representative, and Class Counsel agree that each Class Member will have an adequate opportunity to seek tax advice prior to acting in response to the notice.

2.4     *Court Approval of Notice to the Class and a Final Approval Hearing.*

2.4.1    The Class Representative, through his counsel of record in the Litigation, shall file this Stipulation with the Court and move for preliminary approval of this Stipulation.  PetSmart agrees not to oppose Plaintiff's motions for Preliminary or Final Approval unless the motions are inconsistent with the terms set forth in this Settlement and PetSmart will be provided adequate opportunity to review the motion before it is filed.  Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, will request that the Court enter the Preliminary Approval Order approving the terms of this Stipulation, certify a class action for settlement purposes only as provided in Section 2.1, approve the Settling Parties' proposed allocation of settlement funds set forth in Section 2.2.2, and schedule the Final Approval Hearing for the purposes of determining the fairness of the settlement, granting final approval of the settlement, granting final approval of this Stipulation, and entering Judgment.

2.4.2    Subject to Court availability, the Class Representative shall endeavor to notice the motion for entry of the Preliminary Approval Order described in Section 2.4.1 for a hearing as soon as possible after the motion is filed.  A decision by the Court not to enter the Preliminary Approval Order in its entirety, or a decision by the Court to enter the Preliminary Approval Order with modifications that PetSmart determines in its reasonable and good faith judgment to be material, will be grounds for PetSmart to terminate the settlement and the terms of this Stipulation, as set forth in Section 2.11.

2.4.3    Subject to Court approval, the Parties will adhere to the following schedule:

| Event | Timing |
|---|---|
|  |  |

| PetSmart provides list of names, last known address, and number of PetsHotel Leader Workweeks and PetsHotel Manager Workweeks for each Class Member to the Settlement Administrator. | No later than 15 calendar days after Court enters Preliminary Approval Order. |
|---|---|
| Settlement Administrator mails Notice Regarding Pendency of Class and Representative Action to Class Members. | No later than 15 calendar days after receipt by Settlement Administrator of list of Class Members from Defendant(s). |
| Deadline to Opt Out. | No later than 60 calendar days after mailing by Settlement Administrator of Notice Regarding Pendency of Class and Representative Action. |
| Plaintiff files Petition for Fees and Costs. | No later than 14 calendar days before the Deadline to Opt Out. |
| PetSmart deposits the full amount of the Maximum Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator | No later than 7 calendar days after Effective Date |
| Distribution of payments to Participating Class Members, Class Representative and Class Counsel (subject to Court approval). | No later than 15 calendar days after the Effective Date. |
| Mailed settlement checks expire and funds go to *Cy Pres*. | 180 calendar days after Settlement Checks distributed to Participating Class Members. |

2.4.4   If any deadlines related to this Settlement cannot be met, Class Counsel and counsel for PetSmart shall meet and confer to reach an agreement on any necessary revisions of the deadlines and timetables set forth in this Stipulation. In the event that the Settling Parties fail to reach such agreement, any of the Settling Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Stipulation.

2.4.5   If the Court enters the Preliminary Approval Order, then at the resulting Final Approval Hearing, the Class Representative and PetSmart, through their counsel of record, shall address any timely written objections from Class Members or any concerns from Class Members who attend the hearing, and any concerns of the Court, if any, and shall and hereby do, unless provided

otherwise in this Stipulation, stipulate to final approval of this Stipulation and entry of the Judgment by the Court.

     2.5    *Notice to Class Members.*

     2.5.1   If, by entering the Preliminary Approval Order, the Court provides authorization to send the Notice Regarding Pendency of Class and Representative Action to Class Members, the Settlement Administrator will facilitate the mailing of the Class Notice to all Class Members at their Last Known Addresses. This Class Notice shall be mailed via first class mail through the United States Postal Service, postage pre-paid.

     2.5.2   This Class Notice and its envelope or covering shall be marked to denote the return address of the Settlement Administrator and the envelope shall also be marked "PetSmart, Inc. Settlement Notice."

     2.5.3   PetSmart shall prepare the name and Last Known Address for each Class Member for the Settlement Administrator so that the Settlement Administrator can engage in the processing and mailing of each Class Notice.

     2.5.4   Prior to mailing the Class Notice to each Class Member, the Settlement Administrator shall undertake a Reasonable Address Verification Measure, including the utilization of an Accurint skip trace, as well as the National Change of Address Database maintained by the United States Postal Service, to ascertain the current accuracy of the Last Known Address of each Class Member. To the extent this process yields an Updated Address, that Updated Address shall replace the Last Known Address and be treated as the new Last Known Address for purposes of this Stipulation and for subsequent mailings.

     2.5.5   Unless the parties agree otherwise in writing or the Court so orders, each of the Class Notices shall be mailed to the Last Known Addresses of the Class Members no later than the Notice Mailing Deadline.

     2.5.6   The Claims Administration costs shall include all costs of the mailings described in this Section 2.5 which shall be the fees charged by the Settlement Administrator, the cost of the envelopes in which the Class Notice will be mailed, the cost of reproducing the Class Notice, and the cost of postage to send the Class Notice The Class Representative acknowledges that

PetSmart's agreement to pay the claims administration costs as part of the Settlement Amount constitutes part of the consideration to the Class.

        2.5.7   Unless the Settlement Administrator receives a Class Notice returned from the United States Postal Service for reasons discussed below in this section, that Class Notice shall be deemed mailed and received by the Class Member to whom it was sent five days (5) calendar days after mailing.  In the event that subsequent to the first mailing of a Class Notice and prior to the Notice Response Deadline, that Class Notice is returned to the Settlement Administrator by the United States Postal Service with a forwarding address for the recipient, the Settlement Administrator shall re-mail the Class Notice to that address, the Class Notice will be deemed mailed as of that date, and the forwarding address shall be deemed the Updated Address for that Class Member.  In the event that subsequent to the first mailing of a Class Notice, and at least fourteen (14) calendar days prior to the Notice Response Deadline, that Class Notice is returned to the Settlement Administrator by the United States Postal Service because the address of the recipient is no longer valid, *i.e.,* the envelope is marked "Return to Sender," the Settlement Administrator shall perform an in-depth Accurint (or substantially similar) skip trace in an effort to attempt to ascertain the current address of the particular Class Member in question and, if such an address is ascertained, the Settlement Administrator will re-send the Class Notice within seven (7) calendar days of receiving such information; if no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address.  In either event, the Class Notice shall be deemed received once it is mailed for the second time.

        2.5.8   Any communications with Settlement Class members (other than with the Class Representative) will initially be handled by the Settlement Administrator.  The Settlement Administrator will keep a log of all communications with any Settlement Class Member.  If the Settlement Administrator cannot resolve the question or issue raised by a particular Settlement Class Member, the Settlement Administrator will be instructed to forward the question or issue in writing to Class Counsel and counsel for PetSmart.  The Settling Parties then will jointly agree, through counsel, as to the substance and method of any communication with the Settlement Class Member.

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Class Counsel will not initiate any communications with Settlement Class Members other than the Class Representative, but may respond to communications initiated by Settlement Class Members.

      2.6    *Responses to the Notice Regarding Pendency of Class Action; Motion for Final Approval.*

      2.6.1   Class Members have the option to retain their own attorney(s) in connection with this Lawsuit at their own expense. Class Members who choose this option will be responsible for any attorneys' fees or costs incurred as a result of this election. The Notice Regarding Pendency of Class Action will advise Class Members of this option.

      2.6.2   Class Members may elect to "opt out" of the Settlement Class and thus exclude themselves from the Lawsuit, the settlement, and the Settlement Class. As described in the instructions in the Notice of Class Members, any Class Member who wishes to exercise this option must send to the Settlement Administrator a written request for exclusion or "Opt Out" that must: (a) be in writing; (b) state the name, address and telephone number of the Class Member; (c) social security number; (d) contain a statement to the effect of: "I wish to be excluded from the Settlement." and (e) be post-marked no later than the Notice Response Deadline submitting the request. The Class Member must personally sign the Opt Out request. No Opt Out request may be made on behalf of a group of members of the Class. If an Opt Out request is not received by the Settlement Administrator from a Class Member with a postmark on or before the Notice Response Deadline, then that Class Member will be deemed to have forever waived his or her right to opt out of the Settlement Class and shall be deemed a Member of the Settlement Class. Class Members who timely submit a properly executed Opt Out request shall have no further role in the Litigation, and for all purposes they shall be regarded as if they never were either a party to this Litigation or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, this settlement, or this Stipulation, and shall have no right to object to or otherwise oppose this settlement.

      2.6.3   Class Members who do not opt out of the Settlement Class pursuant to Section 2.6.2 may object to the Stipulation by submitting written objections to the Court and mailing copies of their written objection to the Settlement Administrator with a postmark on or before the Notice Response Deadline or by objecting at the Final Approval Hearing. The Class Notice shall

advise Class Members of this option.  The Settlement Administrator shall immediately provide copies of any such objections to counsel of record for the Settling Parties.

2.6.4    Class Members who do not opt out of the Settlement Class pursuant to Section 2.6.2 are Participating Class Members and will be entitled to their pro-rata distribution from the QSF upon the Participating Class Members' timely endorsement of the release located on the back of his or her Settlement Check.  If a Participating Class Member has not completed and properly endorsed the release located on the back of his or her Settlement Check on or before the date 180 calendar days after his or her Settlement Check issued, then that Participating Class Member will be deemed to have waived his or her right to receive payment under this settlement.  Provided they do not properly submit an Opt Out request, Class Members shall be deemed Members of the Settlement Class and shall be subject to the Judgment even if they do not endorse the release on the back of their Settlement Check in a timely and proper fashion, except that the Released Federal Claims will not apply to any Class Member who does not cash his or her settlement check.  Only Participating Class Members who properly endorsed their Settlement Checks shall be entitled to payment pursuant to the settlement and this Stipulation.

2.6.5    If a Participating Class Member disagrees with the number of PetsHotel Leader Workweeks pre-printed on his or her Notice of Weeks Worked, the Participating Class Member must write his or her correct PetsHotel Leader Workweeks or PetsHotel Manager Workweeks total and the correct dates of employment in each position identified in the PetsHotel Manager Class or PetsHotel Leader Class definition during the Class Period or identified in the PetsHotel Seating Class definition during the PetsHotel Seating Class Period, and provide documents that evidence that he or she was employed in such position during such period.  The PetsHotel Leader Workweeks listed on the Notice of Weeks Worked will be presumed to be accurate unless the Participating Class Member submits documentation demonstrating otherwise.  In the event of any dispute over an individual's PetsHotel Leader Workweeks, Class Counsel and counsel for PetSmart shall meet and confer in good faith in an attempt to resolve the dispute.  For purposes of resolving the dispute, PetSmart's records will be presumed accurate.  If the dispute cannot be resolved, it shall be submitted to the Settlement Administrator for a binding, non-appealable final determination, using

and applying the definitions and provisions set forth in this Stipulation. All disputes under this Section 2.6.5 must be resolved according to the timeline contained herein, and before the Allocation formula can be applied and before any payments can be made under Section 2.7.1. In no event shall the resolution of any dispute over any Class Member's total number of PetsHotel Leader Workweeks result in PetSmart being required to pay more than the Settlement Amount.

        2.6.6   Class Members who, for future reference and mailings from the Court or Settlement Administrator, if any, wish to change the name or address listed on the envelope in which the Class Notice was first mailed to them, must fully complete, execute, and mail, per the instructions therein, the portion of the form entitled "Change of Name or Address Information," attached to the Notice Regarding Pendency of Class and Representative Action. The address provided shall be the "Updated Address" for any such Class Member.

        2.6.7   Prior to the Final Approval Hearing and consistent with the rules imposed by the Court, the Class Representative shall move the Court for entry of the Order of Final Approval and the associated entry of Judgment pursuant to the timeline described in Section 2.4.3. The Settling Parties shall make all reasonable efforts to secure entry of the Order of Final Approval and the associated entry of Judgment. If the Court rejects the Stipulation, fails to enter the Order of Final Approval, fails to certify the class action for settlement purposes as agreed by the Settling Parties in this Stipulation, or fails to enter the Judgment, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.15) shall be void *ab initio,* PetSmart shall have no obligations to make any payments under the Stipulation, all of the Class Representative's individual and putative class and representative claims shall be restored in their entirety as though no settlement or compromise had been reached.

      2.7    *Timing of Payment to Participating Class Members and Notice of Final Approval to Settlement Class Members.*

        2.7.1   Not more than fifteen calendar (15) days after the Effective Date, the Settlement Administrator shall mail to each Participating Class Member at his or her Last Known

Address, or Updated Address if obtained, his or her individual payment pursuant to this Section 2.7 and in accordance with the terms of Section 2.2.2, less the employee's share of relevant tax withholdings, from a QSF administered by the Settlement Administrator but funded by PetSmart.

2.7.2    Checks issued to Participating Class Members pursuant to this Stipulation shall remain negotiable for a period of one hundred and eighty (180) calendar days from the date of mailing. The Settlement Administrator will make reasonable efforts under the direction of the Parties to locate and contact Participating Class Members who have not negotiated checks issued to them pursuant to Sections 2.6.4 and 2.7. Participating Class Members who fail to negotiate their check(s) in a timely fashion shall, like all Settlement Class Members, remain subject to the terms of the Stipulation and Judgment. The funds associated with any checks not properly or timely negotiated shall be distributed by *cy pres* to the Salvation Army's California programs for unemployed and underemployment workers, which serves such workers in gaining the employment skills and experience necessary to obtain employment and supports them during periods of unemployment.

2.7.3    Following the mailing of the payments to Participating Claimants discussed in Section 2.7.1, the Claims Administrator shall provide counsel for the parties with a written confirmation of this mailing. Upon receipt of this confirmation, Class Counsel will file a notice or acknowledgement of satisfaction of judgment wit the Court in the Litigation on behalf of the Settlement Class.

2.8    *Releases.*

2.8.1    Upon the Effective Date, the Class Representative and all Participating Class Members , on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Law Claims as defined in Section 1.36.

2.8.2    In addition, upon the Effective Date, the Class Representative and all Participating Class Members who endorse his or her Settlement Check, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and

by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Law Claims as defined in Section 1.34.

2.8.3    In addition, upon the Effective Date, the Class Representative, on behalf of himself, and each of his heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Class Representative's Released Claims as defined in Section 1.8.

2.8.4    In addition, upon the Effective Date, the Class Representative and each of the PetsHotel Seating Class Members, on behalf of themselves, and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released PAGA Seating Claims as defined in Section 1.35.

2.8.5    The Class Representative agrees that he will not, at any time after the execution of this Stipulation, make any critical or disparaging statements publicly about any of the PetSmart Releasees or any of the PetSmart Releasees' products, services, processes, owners, shareholders, or employees, unless such statements are made truthfully in response to a subpoena or other legal process.

2.8.6    The Class Representative agrees to waive and release any right to reinstatement or re-employment with the PetSmart Releasees and agrees that the PetSmart Releasees will not reinstate or re-employ him. The Class Representative further agrees that he will not, at any time in the future, intentionally apply for or accept employment with any of the PetSmart Releasees. If the Class Representative breaches this provision, he understands that his application will be rejected.

2.9    *Payment of Costs and Attorneys' Fees to the Class Representative.*

2.9.1    Not more than five (7) calendar days after the Effective Date, subject to Court approval, the Settlement Administrator will pay Class Counsel an amount allowed by the Court not to exceed $450,000 for all attorneys' fees, and an amount not to exceed $15,000 for all reasonable Litigation costs and expenses (not including the Settlement Administrator's fees) from the QSF

described in Section 2.2.1. Payments made per this paragraph shall constitute full satisfaction of any claim for fees or costs, and the Class Representative and Class Counsel, on behalf of themselves and all Settlement Class Members, agree that they shall not seek nor be entitled to any additional attorneys' fees or costs under any theory. The Class Representative and Class Counsel agree that they shall be responsible for justifying the amount of this cost and fee payment to the Court, and they agree to submit, as appropriate and/or as required by the Court, the necessary materials to justify this payment no later than fourteen (14) calendar days before the Deadline to Opt Out. Provided it is consistent with this Stipulation, PetSmart will not oppose the amount of fees or costs requested by Class Counsel. In the event that the Court (or any appellate court) awards less than the amount requested for attorneys' fees and/or costs, or less than the amount requested for Enhancement payments for Class Representative set forth in Section 2.9.2, only the awarded amounts shall be paid and shall constitute full satisfaction of the obligations of this paragraph and full payment thereunder. To the extent the Court awards less than the amount requested for attorneys' fees and/or costs or the Enhancement, such award shall not affect approval of the settlement and any amount not awarded shall remain part of the Settlement Amount and shall be distributed to Class Members as part of the Net Settlement Amount pursuant to the terms of this Agreement. Other than any reporting of this fee payment as required by this Stipulation or law, Class Counsel and the Class Representative shall alone be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment that they have received pursuant to this section.

2.9.2   Not more than fifteen (15) calendar days after the Effective Date, the Settlement Administrator will forward two separate checks payable to the Class Representative in his personal capacity only and via his counsel of record. The first said check for the Class Representative shall be his individual payment as a Participating Class Member, pursuant to Sections 2.2 and 2.7. The second said check shall be compensation and consideration of an amount approved by the Court, not to exceed $5,000, as an Enhancement payment for the efforts of the Class Representative in the Litigation. Through this agreement, the Class Representative agrees to be a Member of the Settlement Class and a Participating Claimant subject to the Judgment, and in light of this agreement, it shall not be necessary for the Class Representative to be sent a Notice Regarding

DocuSign Envelope ID: 67037119-567F-45E4-A045-F011AE1706E1

Pendency of Class and Representative Action. The Settling Parties agree that PetSmart, through the Settlement Administrator, shall report the Enhancement payment as non-wage income in the year of payment, and that PetSmart, through the Settlement Administrator, will report the payment of the Class Representative's individual payment pursuant to Section 2.3 according to the terms of this Agreement. Other than the reporting and withholding set forth in this paragraph, and with the exception of the employer's share of any federal, state, and local taxes, the Class Representative shall be responsible for the reporting and payment of any federal, state, and/or local income or other form of tax on any payment made to him pursuant to this section.

    2.9.3   PetSmart shall have no responsibility for, and no liability whatsoever with respect to, the allocation among the Class Representative, Class Counsel, and/or any other person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Stipulation, including, but not limited to, any award or payment pursuant to Section 2.9.1 or 2.9.2.

    2.10   *Settlement Administrator.*

    2.10.1  The actions of the Settlement Administrator shall be governed by the terms of this Stipulation. PetSmart may provide relevant confidential information needed by the Settlement Administrator such as the names, social security numbers, and addresses of Class Members to the Settlement Administrator and engage in related communications with the Settlement Administrator without notice or copies to Class Counsel, any Class Members (including Class Representative), or the Court.

    2.10.2  Pursuant to a confidentiality agreement between the Settlement Administrator and PetSmart, the Settlement Administrator shall keep confidential all information about Class Members that PetSmart provides to the Settlement Administrator under the terms of this Stipulation.

    2.10.3  In the event that either PetSmart or Class Counsel take the position that the Settlement Administrator is not acting in accordance with the terms of the Stipulation, such party shall meet and confer with opposing counsel prior to raising any such issue with the Settlement Administrator or the Court.

2.11   *Termination of Settlement*

2.11.1  PetSmart shall have the discretion and right to terminate and withdraw from the Settlement at any time prior to an Order of Court granting final approval of the Settlement if: (a) 5% or more of Class Members elect to "opt-out" of the Settlement Class, pursuant to Section 2.6.2; or (b) the Court construes the terms of the settlement in a fashion that is materially different from the terms of this Stipulation; or (c) if the Class Representative or Class Counsel materially breach the terms of this Stipulation.

2.11.2  In the event that the Stipulation is not approved in its entirety as is by the Court, excluding modifications that PetSmart determines in its reasonable and good faith judgment to not be material modifications, or in the event that the settlement set forth in the Stipulation is terminated (by PetSmart pursuant to Section 2.11.1 or otherwise), cancelled, declared void, or fails to become effective in accordance with its terms, or if the Judgment does not become a Final Judgment, or if the Effective Date does not occur, no payments shall be made by PetSmart in accordance with the terms of this Stipulation, except for costs already incurred by the Settlement Administrator, and the Settling Parties shall bear their own costs and fees with regard to the efforts to obtain Court approval.  In such event, this Stipulation (except for those provisions relating to non-admissibility and non-admission of liability set forth in Sections I, IV, 2.14.4, and 2.14.5; provisions relating to confidentiality in Section 2.14.17; and those provisions relating to the return of documents and discovery set forth in Section 2.15) shall be deemed null and void, its terms and provisions shall have no further force and effect with respect to the Settling Parties and shall not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc.* Notwithstanding any other provision of this Stipulation, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel or reducing the amount of any Enhancement paid to the Class Representative shall constitute grounds for cancellation or termination of the Stipulation or grounds for limiting any other provision of the Judgment.

2.12    *Injunctive Relief.*

2.12.1  Upon the Court's entry of the Preliminary Approval Order, the Class Representatives and Class Members are enjoined from further prosecution of the Litigation against PetSmart; filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on a class or collective action basis any action, claim or proceeding against PetSmart Releases in any forum in which any of the claims subject to the Settlement Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

2.13    *Communication to PetsHotel Employees Regarding Seating*

2.13.1  Although PetSmart does not admit, and expressly denies, that any of its policies or procedures violated any law, including the "suitable seating" requirements provided in Section 14 of the Industrial Welfare Commission Wage Orders, the Parties agree that within sixty (60) calendar days of the Effective Date, PetSmart shall post a copy of its "California Workplace Seating Policy," in substantially the same form as Exhibit 3 attached to this Agreement, near the break rooms and time clocks, if applicable, in its PetsHotel locations in California, which shall be accessible to all California PetsHotel employees.

2.14    *Miscellaneous Provisions.*

2.14.1  The only Class Members, other than the Class Representative, entitled to any payments under this Stipulation and the associated Judgment are Participating Class Members, and they shall be entitled to their individual payments pursuant to Section 2.2.2 only.  This Stipulation and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required.  Those parts of the Net Settlement Amount remaining after the Settlement Administrator has calculated the allocations pursuant to Section 2.2.2 shall be used to increase the individual payments to all other Participating Class Members on a *pro rata* basis, subject to the condition stated in Section 2.2.2 that any *pro rata* increase shall not result in a settlement payment to a Participating Class Member that is greater than twice the initial amount calculated to be paid to the Participating Class Member pursuant to the above formula set forth in Section 2.2.2.

2.14.2  PetSmart's sole obligations to Class Counsel and the Settlement Administrator are set forth in this Stipulation.  Class Counsel and the Settlement Administrator shall hold PetSmart harmless for any award of fees or costs beyond those made in accordance with the Stipulation and shall not seek to recover any fees or costs awarded in excess of the terms in this Stipulation.

2.14.3  The Settling Parties: (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish the foregoing terms and conditions of the Stipulation, including but not limited to obtaining the dismissal, transfer to the Court, and/or stay of any pending or subsequently-filed individual, class collective and /or representative action lawsuit that alleges any of the Released State Law Claims and/or Released PAGA Seating Claims set forth in Sections 1.35 and 1.34, respectively, of this stipulation.

2.14.4  The Stipulation compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or any potential defense.  The Settling Parties agree that the amounts paid in settlement and the other terms of the settlement were negotiated in good faith by the Settling Parties, and reflect an "arm's length" settlement that was reached voluntarily after consultation with competent legal counsel and mediation and subsequent discussions with a neutral mediator, Mark Rudy.

2.14.5  PetSmart specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims asserted in the Litigation and makes no concessions or admissions of liability of any sort.  Neither the Stipulation nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Stipulation or the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released State Law Claims or Released Federal Law Claims or Released PAGA Seating Claims, or of any wrongdoing or liability of the PetSmart Releasees, or any of them; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the PetSmart Releasees, or any of them, in any civil, criminal or administrative proceeding in any court,

administrative agency, or other tribunal; or (c) is or may be deemed to be or may be used as an admission of, or evidence of, the appropriateness of class certification or collective action certification of any claims asserted against any of the PetSmart Releasees. The Class Representative and Class Counsel agree not to argue or present any argument, and hereby waive any argument, that PetSmart could not contest (or is estopped from contesting) class or collective action certification or representative action treatment on any grounds if the Court fails to enter the Order of Final Approval; this Stipulation shall not be deemed an admission by, or ground for estoppel against, the PetSmart Releasees that class or collective action certification or representative action treatment in the Litigation is proper or cannot be contested on any grounds.

      2.14.6  All of the exhibits to the Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

      2.14.7  The Stipulation may be amended or modified only by a written instrument signed by authorized representatives of all Settling Parties or their respective successors-in-interest.

      2.14.8  The Stipulation constitutes the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation or its exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

      2.14.9  Class Counsel, on behalf of the Class, represent that, after consultation with and approval by the Class Representative, they are expressly authorized by the Class Representative to take all appropriate action required or permitted to be taken by the Settlement Class pursuant to the Stipulation to affect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of the Settlement Class which they deem appropriate. Similarly, PetSmart counsel represents that it is expressly authorized to take all appropriate action required or permitted to be taken by PetSmart pursuant to the Stipulation to affect its terms, and also are expressly authorized to enter into any modifications or amendments to the Stipulation on behalf of PetSmart which they deem appropriate.

2.14.10      Each counsel or other person executing the Stipulation or any of its exhibits on behalf of any party hereto hereby warrants that such person has the full authority to do so.

2.14.11      The Stipulation may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

2.14.12      Whenever this Stipulation requires or contemplates that one party, the Court or the Settlement Administrator shall or may give notice to another, notice shall be provided by e-mail, facsimile and/or next-day (excluding Sundays and Court holidays) express delivery service as follows:

(i) If to PetSmart, then to:

Carrie A. Gonell
Morgan Lewis & Bockius LLP
600 Anton Boulevard, Suite 1800
Costa Mesa, CA 92626

(ii) If to Class Representative, then to:

Graham S.P. Hollis
Graham Hollis APC
3555 Fifth Avenue, Suite 200
San Diego, CA 92103

2.14.13      The Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Stipulation is not designed to and does not create any third-party beneficiaries other than third parties that are identified as PetSmart Releasees in Section 1.29 of this Stipulation.

2.14.14      The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation. Any action to enforce this Stipulation shall be commenced and maintained only in the Court.

2.14.15     The Stipulation and the exhibits hereto shall be considered to have been negotiated, executed, and delivered, in the State of California, and the rights and obligations of the Parties to the Stipulation shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without giving effect to that State's choice of law principles.

2.14.16     The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party.  No party shall be deemed the drafter of this Stipulation.  The parties acknowledge that the terms of the Stipulation are contractual and are the product of arms' length negotiations between the parties and their counsel.  Each party and their counsel cooperated in the drafting and preparation of the Stipulation.  In any construction to be made of the Stipulation, the Stipulation shall not be construed against any party.

2.14.17     Other than necessary disclosures made to a court and communications with Class Members, the Class Representative, PetSmart, and their respective counsel agree to keep the fact of settlement, this Stipulation and any attached documents, and their settlement negotiations confidential and will not disclose that information to any third party (including the press) until such time as the Class Representative moves for preliminary approval of this Stipulation or the Settling Parties otherwise agree in writing.  After entry of the Preliminary Approval Order, neither Class Counsel nor the Class Representative shall issue any statement to the press or any other media or engage in any other publicity regarding this Settlement that identifies PetSmart.

2.14.18     The Settling Parties stipulate and agree that as of the Effective Date, the Litigation shall be dismissed with prejudice in its entirety.

2.15     *Return of All Documents and Other Discovery.*

2.15.1 Within thirty (30) calendar days after the Settlement terminates for any reason, the Class Representative and Class Counsel shall return to PetSmart all originals and duplicate copies of documents, information, and data produced or obtained from PetSmart during and in connection with all settlement discussions and mediation sessions.

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11 and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

_____
William L. Milburn
Plaintiff and Class Representative

DATED:  September ___, 2018

_____
Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

DATED:  September ___, 2018

_____
By:_____
Its:_____
PETSMART, INC.

DATED:  September ___, 2018

_____
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.

DATED:  September 24, 2018

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

---
William L. Milburn
Plaintiff and Class Representative

DATED:  September ___, 2018

---
Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

DATED:  September ___, 2018

By: _Brian Ankrust_
Its: _Executive Vice President_
PETSMART, INC.

DATED:  September 16, 2018

---
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.

DATED:  September ___, 2018

2.15.2  No discovery materials shall be offered for sale or distributed to any person or entity by the Class Representative or Class Counsel.  All originals or reproductions of any discovery materials given to any party, expert, consultant, or other person shall be retrieved by Class Counsel and returned to PetSmart, and all parties receiving such documents shall certify within thirty (30) calendar days of the Effective Date, or within thirty (30) calendar days of the date the Settlement terminates as set forth in Section 2.11and its subsections, that they have returned all such documents or information and all copies thereof.

2.15.3  This provision and the provisions of Sections 2.15.1 and 2.15.2 are not intended to cover work product produced by Class Counsel, but are intended to cover any documents or other materials described herein that are attached to any work product, and all such documents or materials attached to work product shall be returned to PetSmart.  All such documents, information or materials incorporated into any work product shall be excised.

_____          DATED:  September 25, 2018
William L. Milburn
Plaintiff and Class Representative

_____          DATED:  September 25, 2018
Graham S.P. Hollis
GRAHAM HOLLIS APC
Attorneys for Plaintiff
WILLIAM L. MILBURN, on behalf of himself
and all others similarly situated

                                         DATED:  September __, 2018

_____
By:_____
Its:_____
PETSMART, INC.

_____          DATED:  September 24, 2018
Carrie A. Gonell
MORGAN LEWIS & BOCKIUS LLP
Attorneys for Defendants
PETSMART, INC.