UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIAM L. MILBURN, individually and on behalf of all other current and former similarly situated and aggrieved employees of defendants in the State of California,

        Plaintiff,

    v.

PETSMART, INC. and DOES 1 through 50, inclusive,

        Defendants.

No. 1:18-cv-00535-DAD-SKO

ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND COLLECTIVE ACTION SETTLEMENT

(Doc. No. 9)

This matter came before the court on November 6, 2018, for hearing on plaintiff's unopposed motion for preliminary approval of a class action and collective action settlement. (Doc. No. 9.) Attorney Graham Hollis appeared on behalf of plaintiff, and attorney Alexander L. Grodan appeared on behalf of defendant. Following the hearing, plaintiff filed supplemental declarations in support of the motion on November 30 and December 10, 2018. (Doc. Nos. 13, 14.) For the reasons set forth below, plaintiff's motion will be granted.

## BACKGROUND

Defendant PetSmart, Inc. (hereinafter "PetSmart") is a specialty retailer of pet services and supplies, which operates stores and "PetsHotels" throughout North America. (Doc. No. 9-1 at 6.) PetSmart maintains approximately thirty-three PetsHotel locations in California. (*Id.*)

1

Plaintiff began employment with PetSmart in April 2012 as a Manager at a PetsHotel in Fresno, California. (*Id.*; Doc. No. 1-2 at 4.) Plaintiff alleges that PetsHotel Managers were misclassified as exempt employees, and therefore were not paid overtime and were not provided with compliant meal and rest breaks, among other violations (the "PetsHotel Manager Class"). (Doc. No. 9-1 at 6.) In April 2015, PetSmart changed the job title of plaintiff and other PetsHotel Managers to PetsHotel Leaders, who were classified as non-exempt employees. (*Id.*) Plaintiff alleges that although PetsHotel Leaders were properly classified as non-exempt, they were nevertheless not always paid for all work performed nor were they always provided with compliant meal and rest breaks (the "PetsHotel Leader Class"). (*Id.*)

Plaintiff further alleges that he and other former employees who are members of the PetsHotel Manager Class and PetsHotel Leader Class were not paid all of their wages at the time of separation from employment, and thus seek waiting time penalties (the "Waiting Time Penalties Subclass"). (*Id.*) In addition, plaintiff alleges that he and other of defendant's employees with various job titles were not provided with suitable seating (the "PetsHotel Seating Class"). (*Id.*)

On October 27, 2016, plaintiff filed this class and representative action in the Fresno County Superior Court, alleging causes of action for: (1) failure to pay overtime wages under Labor Code §§ 510, 1194, 1198, and Industrial Welfare Commission ("IWC") Wage Order 7-2001 § 3; (2) failure to provide regular and minimum wages under Labor Code §§ 1197, 1194, 1198, and IWC Wage Order 7-2001 § 4; (3) failure to provide meal periods under Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 11; (4) failure to provide rest periods under Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 12; (5) failure to provide and maintain accurate itemized wage statements under Labor Code § 226; (6) failure to pay wages due during employment under Labor Code §§ 204(a), 1198, and IWC Wage Order 7-2001 § 4; (7) failure to pay wages due upon separation of employment under Labor Code §§ 201, 202, 203; (8) failure to maintain accurate records under Labor Code § 1174; (9) violation of Business and Professions Code §§ 17200 *et seq.*; (10) civil penalties under the Private Attorney General Act ("PAGA"), Labor Code § 2698, *et seq.*; and (11) failure to provide suitable seats under PAGA, Labor Code

§§ 1198, 2698 *et seq.* and IWC Wage Order 7-2001 § 14. (*Id.* at 7.)

On January 4, 2018, the parties participated in a private mediation with mediator Mark S. Rudy, Esq., which resulted in a stipulation and settlement agreement. (*Id.* at 8.) Thereafter, on March 14, 2018, the parties stipulated to the filing of a first amended complaint. (Doc. No. 1 at 138–87.) On March 20, 2018, plaintiff filed the operative first amended complaint, which added two causes of action for failure to reimburse necessary business expenses pursuant to Labor Code § 2802, and violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (*Id.*) On April 18, 2018, defendant removed the action to this federal court, asserting federal question jurisdiction based on the cause of action brought in the first amended complaint pursuant to the FLSA. (Doc. No. 1 at 2.)

On September 26, 2018, plaintiff filed the present unopposed motion for conditional certification and for preliminary approval of the class action and collective action settlement. (Doc. No. 9.) At the hearing on the motion, the court raised several concerns regarding the settlement and invited plaintiff to file supplemental briefing in support of the motion. (*See* Doc. No. 12.) On November 30 and December 10, 2018, plaintiff filed supplemental declarations in support of the motion, including a revised proposed settlement agreement. (Doc. Nos. 13, 14.)

Pursuant to the settlement agreement, plaintiff seeks to certify a class of all persons who are members of the PetsHotel Manager Class, PetsHotel Leader Class, PetsHotel Seating Class, and Waiting Time Penalties Subclass. (Doc. No. 9-1 at 9.) Those classes are defined as follows:

(1) PetsHotel Manager Class: any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original complaint was filed, October 27, 2012, through April 13, 2015.

(2) PetsHotel Leader Class: any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the date of preliminary approval.

(3) PetsHotel Seating Class: all members of the PetsHotel Manager Class and PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the date of preliminary approval as an Assistant Manager

3

1    and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or

2    Guest Services Associate.

3    (4) Waiting Time Penalties Subclass:  all members of the PetsHotel Manager Class and/or

4    PetsHotel Leader Class whose employment with PetSmart ended at any time from and

5    after October 27, 2013 through the date of preliminary approval.

6    Under the proposed settlement agreement, defendant would pay a maximum settlement

7    amount of $1,350,000.  (*Id.*)  The agreement provides for the following allocation of that

8    payment:  (i) attorneys' fees of one-third, or $450,000, to be paid to class counsel; (ii) estimated

9    litigation costs of up to $15,000 to be paid to class counsel; (iii) estimated settlement

10   administration costs not to exceed $25,000 to be paid to the administrator Rust Consulting; (iv) an

11   incentive award of $5,000 to be paid to plaintiff; (v) penalties of $255,000 to be paid to the Labor

12   and Workforce Development Agency pursuant to California Labor Code § 2699(i); and (vi) the

13   remaining net settlement amount to be distributed to class members and the collective.  (*Id.* at 9–

14   10; Doc. No. 13 at ¶ 2.)  Of the net settlement amount that will be distributed to class members,

15   $300,000 is allocated to the PetsHotel Seating Class, with 5 percent of the balance to be allocated

16   to the Waiting Time Penalties Subclass, and 95 percent of the balance allocated to the "Manager

17   and Leader Combined Settlement Fund."  (Doc. No. 9-1 at 10–11; Doc. No. 13 at ¶¶ 14–15.)  Of

18   the Manager and Leader Combined Settlement Fund, 80 percent will be allocated to the PetsHotel

19   Manager Class, and 15 percent will be allocated to the PetsHotel Leader Class.  (Doc. No. 13 at ¶

20   15.)  Those allocations will also be subdivided such that 36 percent will be allocated to payment

21   of the FLSA collective action claims, while 64 percent will be allocated to payment of the Rule

22   23 class action claims.  (*Id.* at ¶ 9.)

23   The individual settlement amount awarded to each class member of the PetsHotel Seating

24   Class shall be paid pro rata according to the relative number of work weeks worked by each

25   member during the PetsHotel Seating Class period from October 27, 2015 through the date of

26   preliminary approval.  (Doc. No. 9-1 at 10.)  The Waiting Time Penalties Subclass members shall

27   be paid a per capita share of the amount allocated to the Waiting Time Penalties Subclass.  (*Id.* at

28   10–11.)  The PetsHotel Manager Class members shall be paid a pro rata share of the Manager and

4

Leader Combined Settlement Fund according to the relative number of work weeks worked by each member during the PetsHotel Manager period from October 27, 2012 through April 13, 2015. (Doc. No. 13 at ¶ 15.) The PetsHotel Leader Class members shall be paid a pro rata share of the Manager and Leader Combined Settlement Fund according to the relative number of work weeks worked by each member during the PetsHotel Leader Class period from April 15, 2015 through the date of preliminary approval. (*Id.*)

The proposed settlement provides that the settlement amount is non-reversionary. (Doc. No. 9 at 12.) If any checks remain uncashed after 180 days, those amounts will be donated to the Salvation Army's California programs for unemployed and underemployed workers as the *cy pres* beneficiary. (*Id.*)

Plaintiff seeks an order from this court: (i) certifying the collective action and settlement class, with appointment of plaintiff as class representative, appointment of plaintiff's counsel as class counsel, and approval of Rust Consulting as the settlement administrator; (ii) preliminarily approving the settlement agreement; (iii) approving the proposed form and method of notice, including the FLSA collective action opt-in form; and (iv) scheduling the hearing date for the final approval of the class settlement. (Doc. No. 13 at 1–2.)

## LEGAL STANDARDS

### A. Rule 23 Settlements

Federal Rule of Civil Procedure 23(e) mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .

/////

Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class

representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also* NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011); *Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class]."). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982).

## B.     FLSA Settlements

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013).  Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court.  *See Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Beidleman v. City of Modesto*, No. 1:16–cv–01100–DAD–SKO, 2018 WL 1305713, at *1 (E.D. Cal. Mar. 13, 2018); *Yue Zhou v. Wang's Rest.*, No. 05–cv–0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).  Employees may bring collective actions under the FLSA, representing all "similarly situated" employees, but "each employee [must] opt-in to the suit by filing a consent to sue with the district court." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016).  However, district

courts in this circuit have frequently applied a widely-used standard adopted by the Eleventh

Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide

dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th

Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal.

2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL

2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the

existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal

quotation marks and citation omitted). A court will not approve a settlement of an action in

which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because

doing so would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23

factors for assessing proposed class action settlements when evaluating the fairness of an FLSA

settlement, while recognizing that some of those factors do not apply because of the inherent

differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No.

CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether

the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have

balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the stage of the proceedings;
> the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed
> settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D.

Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also*

*Almodova v. City & County of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at

*4 (D. Haw. Mar. 31, 2010), *recommendations adopted by* 2010 WL 1644971 (D. Haw. Apr. 20,

2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement

even though some of those factors will not apply). District courts in this circuit have also taken

note of the "unique importance of the substantive labor rights involved" in settling FLSA actions

and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Following this approach, the district court's "[o]bligation is not to act as caretaker but as gatekeeper," so that FLSA "settlements do not undermine the Act's purposes." *Goodwin v. Citywide Home Loans, Inc.*, No. SACV 14–866–JLS (JCGx), 2015 WL 12868143, at *2 (C.D. Cal. Nov. 2, 2015) (quoting *Goudie v. Cable Commc'ns, Inc.*, No. CV 08-507-AC, 2009 WL 88336 at *1 (D. Or. Jan. 12, 2009)). Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

As recognized by the Ninth Circuit, some district courts within this circuit have questioned the propriety of allowing an FLSA collective action to proceed in the same case as a Rule 23 class action. *See Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1093 (9th Cir. 2011) (noting that the question of whether a Rule 23 class action can "co-exist with a related collective action under the FLSA . . . has divided district courts in our circuit"); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 471–73 (E.D. Cal. 2010) (collecting cases). Nevertheless, other district courts have allowed hybrid FLSA/Rule 23 actions to proceed to settlement, particularly where the funds and claims are treated separately. *See, e.g.*, *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895, at *8 (S.D. Cal. Feb. 22, 2017) (noting that "courts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims"); *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710, at *1–2 (E.D. Cal. May 31, 2016); *Moore v. Fitness Int'l, LLC*, No. 3:12–CV–1551–LAB–NLS, 2013 WL 3189080, at *8, n.6 (S.D. Cal. June 21, 2013) (observing that the FLSA does not permit collective claims brought under it to be treated in the same manner as a class under Rule 23).

Below, the court will apply these standards in considering the proposed settlement.

/////

**ANALYSIS**

**A.      Preliminary Certification of Class related to California Law Violations**

Plaintiff seeks preliminary certification of the proposed class under Rule 23 of the Federal Rules of Civil Procedure.

1.      Rule 23(a) Requirements

"Rule 23(a) establishes four prerequisites for class action litigation:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation."  *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  The court will address each requirement below.

a.  *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises of as few as thirty-nine members, or where joining all class members would serve only to impose financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiff estimates that there are approximately 56 members of the PetsHotel Manager Class; 89 members of the PetsHotel Leader Class; 42 class members in the Waiting Time Penalties Subclass; and 3,491 members of the PetsHotel Seating Class.  (Doc. No. 9-2 at 21–22.)  This showing with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1).  *See Murillo*, 266 F.R.D. at 474.

b.  *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation.  *Dukes*, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common 'questions'—even in

droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.") (internal citations omitted). "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, plaintiff argues that the alleged Labor Code violations are common to each member of each class. (Doc. No. 9-1 at 22.) Because it appears that the same conduct which defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied as well. *Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468, 475 (E.D. Cal. 2010) (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation omitted).

c. *Typicality*

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be

substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiff is a member of each class identified in the settlement agreement. Plaintiff was employed by PetSmart from April 2012 through November 2015, and worked as a PetsHotel Manager until April 2015, when his job title was changed to PetsHotel Leader. (Doc. No. 9-3 at ¶¶ 3–4.) As a former employee, plaintiff's claims for suitable seating and waiting time penalties are also typical of the rest of the class. His claims and those of the putative class are based on identical legal theories. The court concludes that plaintiff's claims are reasonably co-extensive with those of the absent class members, and that typicality is therefore satisfied here.

### d. *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

Plaintiff's counsel states that the proposed class representative, plaintiff Milburn, has no conflicts of interest with any other class member. (Doc. No. 9-1 at 23.) Moreover, counsel represents that they are experienced employment and class action litigators who are fully qualified to pursue the interests of the class. (*Id.*) As such, the court finds that plaintiff Milburn and plaintiff's counsel satisfy the adequacy of representation requirement.

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem*, 521 U.S. at 615. The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am.,*

*LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).  The court examines each requirement in turn below.

### a. *Predominance*

First, common questions must "predominate" over any individual questions.  While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis.  *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022 (9th Cir. 1998).  While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022.  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiff contends that all class members during the class period were subject to the same policies and procedures of defendant.  (Doc. No. 9-2 at 25.)  Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios*, 2015 WL 4078135, at *5–6; *see also Clesceri*, 2011 WL 320998, at *7.  The predominance requirement has therefore been met in this case.

### b. *Superiority*

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  In resolving the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

By consolidating more than 3,700 potential individual actions into a single proceeding here, plaintiff argues that the class action device enables more efficient management of this

litigation for the court and the litigants alike. (Doc. No. 9-2 at 26.) Absent class treatment, plaintiff argues that class members with small but potentially meritorious claims would, practically speaking, have no means of redress due to the time and expense required to prosecute an individual action. (*Id.*) These reasons are persuasive, and warrant finding that the superiority requirement is satisfied here.

**B.      Conditional Certification of Collective Action under the FLSA**

As discussed above, plaintiffs seeking conditional certification of a collective action under the FLSA have the burden to show that they are "similarly situated" to other employee class members. *See Litty*, 2015 WL 4698475, at *6; *see also Lewis v. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). Courts apply a lenient standard when determining whether to conditionally certify a class under the FLSA. *See Syed*, 2014 WL 6685966, at *2. Here, the proposed FLSA collective is comprised of the members of the PetsHotel Manager Class and PetsHotel Leader Class. (Doc. No. 13 at 3.) For all the reasons these classes satisfy the requirements for preliminary certification under Rule 23, the proposed FLSA collective also satisfies the FLSA's less stringent requirement that the members be "similarly situated." Conditional certification of an FLSA collective is therefore appropriate.

**C.      Preliminary Fairness Determination**

Plaintiff also seeks preliminary approval of the proposed settlement. Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g.*, *In re Tableware Antitrust Litigation*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). However, a

district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

       1.   <u>Procedural Fairness</u>

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan*, 310 F.R.D. at 613. A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

As noted above, in January 2018, the parties attended mediation with Mark Rudy, who specializes in resolving wage and hour class action matters. (Doc. No. 9-2 at ¶ 16.) Plaintiff contends that during mediation, the parties engaged in good-faith, non-collusive negotiations. (*Id.* at ¶ 18.) The parties exchanged additional information regarding defendant's realistic exposure to damages, the relative strengths and weaknesses of plaintiff's claims, the risks and delays of further litigation, the current state of the law as it related to plaintiff's claims, and the difficulty plaintiff may have in obtaining and maintaining class certification on each of his claims. (*Id.*) Moreover, plaintiff's counsel represents that they conducted a thorough investigation into the merits of plaintiff's claims, including: reviewing plaintiff's employment records; propounding interrogatories, requests for production of documents, and special interrogatories to PetSmart; exchanging thousands of pages of documents, including a full list of every PetsHotel Manager and PetsHotel Leader with contact information, employee handbooks and policies applicable to the class members, and time records and pay records for the class period; and conducting detailed phone interviews with a substantial number of the class members. (*Id.* at ¶¶ 19–25.) Based on these representations by counsel, it appears that the parties' negotiation constituted genuine, informed, arm's length bargaining.

/////

/////

2.   <u>Substantive Fairness</u>

     a.   *Adequacy of the Settlement Amount*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the total proposed settlement is for $1,350,000.  The portion of the settlement allocated to the PetsHotel Manager Class, the PetsHotel Leader Class, and the Waiting Time Penalties Subclass is $1,050,000.  (Doc. No. 9-2 at ¶ 35.)  Plaintiff estimates that the maximum possible damages exposure for these three classes is approximately $4,118,726.  (*Id.* at ¶ 33.)  The proposed allocation of $1,050,000 to settle the claims of these classes thus represents approximately 25 percent of plaintiff's maximum possible recovery.  This settlement amount is not per se unreasonable, and district courts in California have found similar percentage recoveries to be reasonable for this purpose.  *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*, No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15 percent found to be preliminarily fair); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of approximately 25 to 35 percent was reasonable).  Plaintiff moreover contends that a discount of the total possible recovery is appropriate here for a number of reasons.  The major point of contention throughout the pendency of this litigation has been that PetSmart believes the PetsHotel Managers were properly classified as exempt employees, and that they were reclassified as non-exempt upon changing the title to "PetsHotel Leaders" out of an abundance of caution, and because PetsHotel Leaders had different job duties.  (Doc. No. 9-2 at 8.)  Among other arguments, PetSmart also insists that its employees

16

had the opportunity to take compliant meal and rest breaks, that PetsHotel Managers only occasionally worked more than eight hours a day or forty hours a week. (*Id.*) Particularly in light of these anticipated defenses, the court will preliminarily approve the amount offered to settle the claims of the PetsHotel Manager Class, PetsHotel Leader Class, and Waiting Time Penalties Subclass.

The revised settlement agreement also creates a Manager and Leader Settlement Fund ("M&LSF") to designate the portion of the net settlement fund that shall be allocated to members of the PetsHotel Manager Class and PetsHotel Leader Class, the two classes that have settled FLSA claims. (Doc. No. 13 at ¶ 9.) The M&LSF will be subdivided into a Rule 23 settlement fund and a FLSA settlement fund, with 64 percent to be allocated to the Rule 23 settlement fund for the settlement of claims of state wage and hour violations, and 36 percent of the M&LSF to be allocated to the FLSA settlement fund for settlement of claims under the FLSA. (*Id.*) Plaintiff asserts that these allocations represent an approximate and proportionate amount of the settlement of the respective claims. (*Id.*) The court finds this aspect of the proposed settlement to be a fair and reasonable resolution of a bona bide dispute under the FLSA. *See Thompson*, 2017 WL 697895, at *8 ("[C]ourts that have approved settlements releasing both FLSA and Rule 23 claims generally do so only when the parties expressly allocate settlement payments to FLSA claims."); *see also Millan*, 310 F.R.D. at 602 (noting that "creation of separate settlement funds for the FLSA class and the Rule 23 class . . . would better protect absent class members"); *Khanna*, 2014 WL 1379861, at *2 (approving hybrid settlement that allocated two-thirds of net settlement amount to state claims and one-third of net settlement amount to FLSA claims); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918, at *3 (N.D. Cal. May 3, 2013) (same).

The claims of the PetsHotel Seating Class were negotiated separately. (Doc. No. 9-2 at ¶ 36.) Plaintiff contends that the theoretical value of the suitable seating claims is $18,658,900, calculated by multiplying the number of employees during any given pay period (24) by the number of PetsHotels (33) by the penalty ($200, less $100 for each of the class members for a first violation) by the number of PAGA pay periods (120). (*Id.* at ¶ 37.) The parties agreed to settle the suitable seating claims for $300,000, which represents 1.6 percent of the maximum

possible recovery. (*Id.* at ¶ 38.) Despite this seemingly low recovery, plaintiff argues that this amount is fair and reasonable because calculating violation rates is extremely difficult: PetSmart contends that seating was in fact available, and/or would be provided upon request, and that some of the work in question, such as cleaning cages, cannot be performed while seated. (*Id.* at ¶ 36.) Moreover, as part of the settlement, PetSmart has agreed to a formal Workplace Seating Policy that states:

> All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats. When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the performance of their duties.

(*Id.* at ¶ 38.) This policy will be posted at each PetsHotel location and includes contact information should an employee have any questions about the policy. (*Id.*) In light of the difficulty of calculating the violation rate, as well as the injunctive relief proposed by the parties, the court will also preliminarily approve the amount offered to settle the suitable seating claims.

b. *Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999). Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As a result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

Here, the proposed settlement provides that class counsel will seek an award of attorneys' fees not to exceed $450,000, which represents one-third of the total settlement amount. (Doc. No.

18

9-2 at 23–24.)  This fee amount is above the benchmark for this circuit.  *See Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same).  However, this percentage is also not unreasonable as an upper bound.  As such, the court approves the attorneys' fee request on a preliminary basis.  *See Vizcaino*, 290 F.3d at 1047 (observing that percentage awards of between twenty and thirty percent are common); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method.").

The court notes that the settlement agreement does include a "clear sailing" provision, in which defendant has agreed not to object to, oppose, or otherwise contest class counsel's award of attorneys' fees or costs.  (Doc. No. 9-2 at 56.)  Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval.  Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class."  *Id.* (citing *Staton*, 327 F.3d at 954).  In connection with the final fairness hearing, the court will cross check the requested amount with the lodestar amount based upon counsels' submission, and will determine whether the award of an above-benchmark percentage in fees is reasonable and does not betray the class's interests.  *See Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000) (noting that an explanation is necessary when the district court departs from the twenty-five percent benchmark).

c.  *Incentive Payment*

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for

19

reasonable incentive payments.").  Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiff has requested an incentive payment of $5,000.  (Doc. No. 9-1 at 9.)  This would represent less than 1 percent of the overall settlement.  The average payment a member of the PetsHotel Manager Class will receive is $7,500, although the actual amount recoverable by a particular class member will depend on the number of weeks that class member worked.  (Doc. No. 9-1 at 21.)  The average payment a member of the PetsHotel Leader Class will receive is $885.  (*Id.*)  Each of the members of the Waiting Time Penalties Subclass will receive approximately $625, in addition to the amounts they will receive due to their membership in one or both of the other classes.  (*Id.*)

Therefore, an incentive award of $5,000 is not substantially higher—and in fact may be lower—than the maximum amount that a class member who, like Milburn, is a member of each class above, could expect to receive in this litigation.  Courts in this circuit have previously approved incentive awards in this range, and the court finds that the award is "not outside the realm of what has been approved as reasonable by other courts."  *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500); *see also Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400).  Moreover, in this case plaintiff has submitted a declaration stating that he spent approximately 35–40 hours being interviewed by his attorneys, assisting with discovery, and participating in mediation.  (Doc. No. 9-3 at ¶¶ 11–12, 14.)  The requested incentive payment will be approved on a preliminary basis.

/////

/////

d. *Release of Claims*

Finally, the release appropriately tracks the claims at issue in this case. The proposed settlement defines "Released State Law Claims" as:

> [A]ny and all wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities under state or local law, whether in law or equity, and related or derivative claims . . . that are alleged or could have been alleged based on the facts alleged in the Amended Complaint, and that accrued from October 27, 2012, through the Preliminary Approval Date.

(Doc. No. 13-1 at 12.) The settlement provides that all participating class members shall be deemed to have forever released and dismissed with prejudice all released state law claims as defined above. (*Id.* at 31.)

The "Released Federal Law Claims," meanwhile, are defined as:

> [A]ny and all federal wage and hour law claims, obligations, demands, actions, rights, causes of action, and liabilities against PetSmart Releasees, of whatever kind and nature, character and description, that are alleged or that could have been alleged based on the facts alleged in the Amended Complaint by a member of the PetsHotel Manager Class or PetsHotel Leader Class who is also participating Class Member that accrued on any date up through and including the date on which the Court issues an order granting preliminary approval of the Settlement, for any type of relief . . . based on any and all claims arising under the Fair Labor Standards Act.

(*Id.* at 11.) Importantly, in a collective action bringing federal wage claims under the FLSA, participation is limited to only those parties that opt in to the suit. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). Here, the proposed settlement, as revised, properly ensures that only those class members who submit timely and valid opt-in forms will be deemed to have forever released and dismissed with prejudice their federal law claims, as defined above. (Doc. No. 13-1 at 31.)

**D.     Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement

under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Additionally, for proposed settlements under the FLSA, "the court must provide potential plaintiffs 'accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate.'" *Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Cal. 2007) (quoting *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 170 (1989)); *see generally* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Here, the proposed settlement provides that notice shall be mailed to all class members at their last known address via first class mail through the United States Postal Service ("USPS"). (Doc. No. 13-1 at 24–25.) PetSmart shall prepare the name and last known address for each class member for the Settlement Administrator. (*Id.* at 25.) Prior to mailing of the class notice, the Settlement Administrator shall undertake measures to verify the address of each class member, using an Accurint skip trace and the National Change of Address Database maintained by the USPS. (*Id.*) In the event that, subsequent to the first mailing of class notice and prior to the response deadline, the class notice is returned to the Settlement Administrator by USPS with a forwarding address for the recipient, the Settlement Administrator shall re-mail the class notice to that address. (*Id.* at 25–26.) If, subsequent to the first mailing of the class notice, and at least fourteen (14) days before the response deadline, class notice is returned to the Settlement

Administrator by the USPS because the address is no longer valid, the Settlement Administrator shall perform an Accurint skip trace in an effort to attempt to ascertain the current address of the class member in question. (*Id.* at 26.) If such an address is ascertained, the Settlement Administrator will re-send the class notice within seven (7) calendar days of receiving such information. (*Id.*) If no updated address is ascertained for that class member, the Settlement Administrator shall send the class notice again to the last known address. (*Id.*) The court finds that the manner of notice proposed by plaintiff here appears to be the "best notice that is practicable under the circumstances" and therefore meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B).

Moreover, the proposed class notice describes the nature of the action, the prospective classes involved, the claims, issues, and defenses raised in the action, the terms of the settlement, the proposed attorneys' fees and liability releases, and the time and place of the final fairness hearing. (Doc. No. 13-1 at 42–52.) It discusses the differences between the FLSA collective and the Rule 23 class, and includes a procedure for absent class members to opt in to the FLSA collective action. (*See id.* at 45, 49.) This is particularly critical in a hybrid FLSA/Rule 23 settlement such as this one, where courts:

> consistently require class notice forms to explain: (1) the hybrid nature of the action; and (2) the claims involved in the action; (3) the options that are available to California Class members in connection with the settlement, including how to participate or not participate in the Rule 23 class action and the FLSA collective action aspects of the settlement; and (4) the consequences of opting-in to the FLSA collective action, opting-out of the Rule 23 class action, or doing nothing.

*Thompson*, 2017 WL 697895, at *8 (quoting *Pierce*, 2013 WL 1878918 at *4) (internal quotation marks and brackets omitted). The proposed class notice furthermore sets out the means and deadlines for class members to object to the proposed settlement and to be excluded from the settlement, and notifies prospective class members of the binding effect of the settlement upon them. (Doc. No. 13-1 at 49–51.)

In addition, plaintiff has proposed the following implementation schedule:

/////

| Event | Date |
|---|---|
| PetSmart provides list of names, last known addresses, and numbers of PetsHotel Leader Workweeks and PetsHotel Manager Workweeks for each Class Member to the Settlement Administrator | No later than 15 calendar days after court enters preliminary approval |
| Settlement Administrator mails Notice Regarding Pendency of Class and Representative Action to Class Members who are members of the PetsHotel Seating Class, but are not members of the PetsHotel Manager Class or PetsHotel Leader Class | No later than 15 calendar days after receipt by Settlement Administrator of list of Class Members from defendant |
| Settlement Administrator mails Notice Packet, including the Notice Regarding Pendency of Class and Representative Action to Class Members and the Opt In Form to members of the PetsHotel Manager Class and members of the PetsHotel Leader Class | No later than 15 calendar days after receipt by Settlement Administrator of list of Class Members from defendant |
| Deadline to Opt Out | No later than 60 calendar days after mailing by Settlement Administrator of Notice Regarding Pendency of Class and Representative Action |
| Deadline to Opt In | No later than 60 calendar days after mailing by Settlement Administrator of the Notice Packet, including Notice Regarding Pendency of Class and Representative Action and the Opt In Form |
| Deadline to Object to Settlement[1] | No later than 60 calendar days after mailing by Settlement Administrator of Notice Regarding Pendency of Class and Representative Action |
| Plaintiff files Petition for Fees and Costs | No later than 14 calendar days before the Deadline to Opt Out |
| Qualified Settlement Fund set up by the Settlement Administrator | Effective Date |

---

[1] The deadline for objections set here applies solely to objections to the settlement. Objections from class members to the award of attorneys' fees or incentive payments are due to the court no later than fourteen (14) days after the filing of motions seeking approval of the same. *See Allen v. Bedolla*, 787 F.3d 1218, 1225-26 (9th Cir. 2015); *In re: Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 993-95 (9th Cir. 2010).

| | |
|---|---|
| Distribution of payments to Participating Class Members, Class Representative, and Class Counsel (subject to court approval) | No later than 15 calendar days after Effective Date |
| Mailed settlement checks expire and funds go to *Cy Pres* | 180 calendar days after Settlement Checks distributed to Participating Class Members |

(Doc. No. 13-1 at 23–24.)

The court finds that the notice and the manner of notice proposed by plaintiff meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate in these circumstances.

## CONCLUSION

For the reasons stated above, plaintiff's motion for preliminary approval of class action and collective action settlement (Doc. No. 9) is granted, and:

1. Preliminary certification of the class is approved under Rule 23;

2. Conditional certification of the collective action under the FLSA is approved;

3. Plaintiff's counsel Graham Hollis, Vilmarie Cordero, and Nathan Reese are appointed as class counsel;

4. The named plaintiff, William Milburn, is appointed as class representative;

5. The proposed notice and claim form conform with Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) and are approved;

6. Rust Consulting is approved as claims administrator;

7. The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

/////

/////

/////

/////

/////

/////

8.     The hearing for final approval of the proposed settlement is set for September 17, 2019 at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed at least twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and

9.     Plaintiff's proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated:   **April 17, 2019**                    _____

UNITED STATES DISTRICT JUDGE