1  GRAHAM**HOLLIS** APC
   Graham S.P. Hollis (SBN 120577)
2  ghollis@grahamhollis.com
   Vilmarie Cordero (SBN 268860)
3  vcordero@grahamhollis.com
   Nathan Reese (SBN 283150)
4  nreese@grahamhollis.com
   3555 Fifth Avenue, Suite 200
5  San Diego, California 92103
   Telephone: 619.692.0800
6  Facsimile: 619.692.0822
   Attorneys for Plaintiff WILLIAM MILBURN
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10  WILLIAM L. MILBURN, individually and on        Case No.:   1:18-CV-00535-DAD-SKO
    behalf of all other current and former similarly
11  situated and aggrieved employees of            **MEMORANDUM OF POINTS AND**
    DEFENDANTS in the State of California,         **AUTHORITIES IN SUPPORT OF**
12                                                 **PLAINTIFF'S UNOPPOSED MOTION FOR**
                                                   **FINAL APPROVAL OF CLASS AND**
13              Plaintiff,                          **COLLECTIVE ACTION SETTLEMENT AND**
                                                   **AWARD OF ATTORNEYS' FEES, COSTS,**
14        v.                                       **AND CLASS REPRESENTATIVE'S SERVICE**
                                                   **AWARD**
15  PETSMART, INC. and DOES 1 THROUGH
    50, inclusive,                                 Date:       September 17, 2019
16                                                 Time:       9:30 AM
                Defendants.                        Judge:      Dale A. Drozd
17                                                 Dept.:      5, 7th Floor

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...........................................................................................................1

II. PROCEDURAL AND FACTUAL BACKGROUND .................................................2

    A.    The Pleading in State and Federal Court ............................................................2

    B.    Discovery and Investigation……………………………………………………3

    C.    Negotiation and Preliminary Approval of Settlement……………………………………5

III. FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED ...........................8

    A.    Legal Standards for Settlement Approval……………………………………8

    B.    The Relevant Factors Weigh in Favor of Granting Final Approval………….…………10

    C.    The Proposed Cy Pres Beneficiary is Reasonable………………………………14

    D.    The Court Should Approve the Payment of PAGA Penalties to the LWDA……………14

    E.    The Court Should Approve the Settlement Administrator's Fees and Costs……………15

IV. THE NOTICE PROCEDURE WAS PROPERLY CARRIED OUT AND ITS RESULTS INDICATE STRONG SUPPORT FOR, AND NO OPPOSITION TO THE SETTLEMENT BY CLASS MEMBERS ...................................................................15

    A. The Settlement Class Members Received Adequate Notice of the Settlement……………...15

    B. The Settlement Class Members Responded Extremely Favorably to the Settlement………...16

    C. The Results of the Notice Procedure Strongly Favor Final Approval of the Settlement…….16

V. CONCLUSION………………………………………………………………………17

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)..............................................................................15

**Federal Cases**

*Chu v. Wells Fargo Invs. LLC*,
   Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 (N.D. Cal. Feb. 16, 2011).....................14

*Garcia v. Gordon Trucking, Inc.*,
   No. 1:10-CV-0324 AWI, SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012)...................................14

*Garner v. State Farm Auto Ins. Co.*,
   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. April 22, 2010)......................................9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ..............................................................8

*Khait v. Whirlpool Corp.*, No. 06-6381 (ALC),
   2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) .......................................9

*Khanna v. Intercon Sec. Sys., Inc.*,
   No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014)........................................5

*Lepinske v. Mercedes Homes, Inc.*, No. 6:07-cv-915-Orl-31 DAB,
   2008 WL 2694111 (M.D. Fla. Jul. 7, 2008) ..........................................9

*Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM,
   2012 WL 2930867 (E.D. Cal. July 18, 2012) ........................................9

*McElmurry v. U.S. Bank. Nat. Ass'n*,
   495 F.3d 1136 (9th Cir. 2007) ..............................................................9

*In re Michael Milken & Assocs. Sec. Litig.*,
   150 F.R.D. 57 (S.D.N.Y. 1993) ...........................................................15

*Millan v. Cascade Water Servs., Inc.*,
   No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016)...................................5

*Moore v. Fitness Int'l, LLC*,
   No. 3:12-cv-1551-LAB-NLS, 2013 WL 3189080 (S.D. Cal. June 21, 2013)…....................................5

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

iii

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
292 F. Supp. 3d 1018 (S.D. Cal. 2017).....................................................................12

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) .......................................................................................9

*Pierce v. Rosetta Stone, Ltd.*,
No. C 11-01283 ..............................................................................................................5

*Shlenksy v. Dorsey*,
574 F.2d 131 (3d Cir. 1978)........................................................................................16

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) .....................................................................................15

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .......................................................................................8

*Stoetzner v. U.S. Steel Corp.*,
897 F.2d 115 (3d Cir. 1990)........................................................................................16

*Thompson v. Costco Wholesale Corp.*,
No. 14-cv-2778-CAB-WVG, 2017 WL 697895 (S.D. Cal. Feb. 22, 2017) ...........5

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) .........................................................................................8

*Village, LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 204) .........................................................................................8

*Williams v. Costco Wholesale Corp.*,
2010 WL 2721452 (S.D. Cal. July 7, 2010) ...........................................................12

**Federal Statutes**

28 U.S.C. § 1441.............................................................................................................3

29 U.S.C. § 207(a) ..........................................................................................................3

**Federal Rules of Civil Procedure**

Federal Rules of Civil Procedure Rule 23(e) .......................................................1, 9

**California State Statutes**

Business and Professions Code §§ 17200 *et seq.* ...................................................3

Labor Code § 201.............................................................................................................3

Labor Code § 202.............................................................................................................3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Labor Code § 203 ............................................................................................................3, 14

Labor Code § 204(a) ..............................................................................................................3

Labor Code § 226 ....................................................................................................................2

Labor Code § 512 ....................................................................................................................2

Labor Code § 226.7 .................................................................................................................2

Labor Code § 510 ....................................................................................................................2

Labor Code § 1174 ..................................................................................................................3

Labor Code § 1197 ..................................................................................................................2

Labor Code § 1194 ..................................................................................................................2

Labor Code § 1198 ..................................................................................................................3

Labor Code § 2698 ..................................................................................................................3

Labor Code § 2802 ..................................................................................................................3

**Other Authorities**

Fair Labor Standards Act .......................................................................................................3

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

# I.    **INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff seeks final approval of the class and collective action settlement reached between Plaintiff William Milburn ("Plaintiff"), representative for the PetsHotel Seating Class, PetsHotel Manager Class, and PetsHotel Leader Class, and Waiting Time Penalties Subclass and Defendant PetSmart, Inc. ("Defendant") (collectively "the Parties"). The notice procedure in this case has been extremely well-received with a 99.9% participation rate. (Declaration of Sara Schwermer-Sween ("Schwermer-Sween Decl."), ¶8.) Furthermore, there have been no objections filed since dissemination of the notice and only 3 individuals out of 2,987 class members submitted a request for exclusion. (Declaration of Graham S.P. Hollis In Support of Plaintiff's Motion for Final Approval ("Hollis Decl."), ¶ 34; Schwermer-Sween Decl., ¶8.)   The notice and other procedures ordered by the Court at the preliminary approval stage have been properly carried out, the results of those procedures indicate that there is no opposition to the settlement from within or outside the Settlement Class, and that class members overwhelmingly wish to participate in the settlement. The Shwermer-Sween Decl. summarizes the settlement administrator's administration of the notice process, the overwhelmingly positive response of the settlement class to that process, and provides compelling evidence in support of the settlement's fairness. (Hollis Decl. at ¶ 36.)

On April 18, 2019, the Court granted preliminary approval of the class and collective action settlement reached by the Parties for wage and hour claims on behalf of four classes of California employees of PetSmart. (Dkt. No. 15.) In that order, the Court preliminarily approved all of the terms of the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement") between the Parties, ordered that notice be given to the class members by mailing them specific forms of the Class Notice and FLSA Consent To Joint ("Opt In") Form (collectively "Notice Packet"), and appointed Rust Consulting Inc ("Rust") as the Settlement Administrator to carry out the notice procedures. (*Id*.; Hollis Decl., ¶ 5.) The Court further approved, on a preliminary basis, the payment of an incentive award to Plaintiff/Class Representative William Milburn of $5,000, an award of attorney's fees of up to $450,000 (33 1/3%) of the Total Settlement Amount and litigation costs incurred by Class Counsel, the payment of administration expenses incurred by the Settlement Administrator, and the payment of PAGA penalties of $340,000, seventy-five (75%) of which, or $255,000 will be paid to the LWDA and twenty-five (25%) of

1

which, or $85,000 will be distributed to the participating Settlement Class. The Court's Preliminary Approval Order further set procedures and dates by which class members could opt-out of the settlement, opt in to the FLSA collective action, object to the settlement, challenge the amounts calculated for the recoveries under the settlement, and for the submission of additional motions by Plaintiff in support of final approval of the settlement. The Court's Preliminary Approval Order further set the final approval hearing at which the present Motion will be presented and considered. (Hollis Decl., ¶5.)

The Court's Preliminary Approval Order found that the proposed settlement was approved on a preliminary basis as fair and adequate. (Dkt. No. 15, p. 25:21-22.). The basis for Plaintiff's requests for Class Counsel's costs and attorney's fees is fully set forth in Class Counsel's Motion for Approval of Attorneys' Fees and Costs and Class Representative Award and supporting memoranda (Dkt. No. 16) filed on July 2, 2019. As to avoid duplication of the showings and arguments made in those papers, Plaintiff incorporates them by reference here.

In this Memorandum, Plaintiff demonstrates that everything necessary and proper for final approval of the settlement has been accomplished, that the class overwhelmingly consents and wishes to participate in the settlement on the terms preliminarily approved by the court and fully described to the class members in the notice packet, that both updated calculations of amounts due to class members and updated authorities support approval of the settlement, and that final approval and orders directing the payments specified in the Settlement Agreement should now be given.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A. The Pleadings in State and Federal Court

On October 27, 2016, Plaintiff filed the Complaint in this Action in the Superior Court for the County of Fresno, entitled *Milburn v. Petsmart, Inc.*, Civil Case No. 16CECG03484. Plaintiff alleged multiple causes of action under the California Labor Code for: (1) failure to pay overtime wages under Labor Code §§ 510, 1194, 1198, and IWC Wage Order 7-2001 § 3; (2) failure to provide regular and minimum wages under Labor Code §§ 1197, 1194, 1198, and IWC Wage Order 7-2001 § 4; (3) failure to provide meal periods under Labor Code §§ 226.7, 512, 1198, and IWC Wage Order 7-2001 § 11; (4) failure to provide rest periods under Labor Code §§ 226.7, 1198, and IWC Wage Order 7-2001 § 12; (5) failure to provide and maintain accurate itemized wage statements under Labor Code § 226; (6) failure to

pay wages due during employment under Labor Code §§ 204(a), 1198, and IWC Wage Order 7-2001 § 4; (7) failure to pay wages due upon separation of employment under Labor Code §§ 201, 202, 203; (8) failure to maintain accurate records under Labor Code § 1174; (9) violation of Business and Professions Code §§ 17200 *et seq.*; (10) civil penalties under the Private Attorneys General Act ("PAGA"), Labor Code § 2698, *et seq.*; and (11) failure to provide suitable seats under PAGA, Labor Code §§ 1198, 2698 *et seq.*, and IWC Wage Order 7-2001 § 14.

On March 20, 2018 Plaintiff filed a First Amended Complaint alleging the same class action claims and representative action claims but adding a claim for violation of Labor Code Section 2802 alleging that Plaintiff and other PetsHotel Managers and Leaders were required to use personal cell phones and were not reimbursed for that expense. In addition, Plaintiff added claims under the Fair Labor Standards Act alleging Plaintiff and other PetsHotel Managers and Leaders were not paid all their overtime compensation due under the FLSA in violation of 29 U.S.C. § 207(a) by failing to compensate for all time spent working under the direction and control of Defendant in excess of forty hours per week.

On April 18, 2018 Defendant filed a Notice of Removal removing the case to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1441.

**B. Discovery and Investigation**

Prior to filing the Complaint in this action, Class Counsel conducted a thorough investigation into the merits of Plaintiff's claims and the applicable law related thereto, as well as reviewed numerous documents and records provided by Plaintiff in support of his claims. (Hollis Decl., ¶17.) Class Counsel requested Plaintiff's employment file and spent significant time reviewing his employment records. (*Id.*) Class Counsel spent significant time conducting in-depth, fact-finding interviews with Plaintiff and other witnesses regarding their employment at PetSmart in order to assess the relative strength of the potential claims. (*Id.*, ¶15.) During the nearly three years that this case has been pending, Class Counsel propounded discovery, including Form Interrogatories, Requests for Production of Documents, and Special Interrogatories, to PetSmart. (*Id.*, ¶16.)

As part of the agreement to mediate this case, the Parties agreed to a full exchange of information including providing access to a full list of every PetsHotel Manager and PetsHotel Leader with contact information. (*Id.*, ¶17.) PetSmart also agreed to provide comprehensive documentation regarding the job

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

duties of PetsHotel Managers and PetsHotel Leaders, time records and pay records for the class period along with employee handbooks and policies and procedures applicable to the class members. Class Counsel obtained thousands of pages of documents, including time and payroll records, employee handbooks, and policies related to meal and rest periods and overtime. (*Id.*, ¶17.)

Class Counsel's firm conducted detailed phone interviews with a substantial number of class members, regarding the causes of action alleged in the Complaint and how these claims related to class members' employment during the class period. (*Id.*, ¶18.) During the course of this investigation Class Counsel discovered that the use of personal cell phones was widespread among class members, which Class Counsel later amended the complaint to include. (*Id.*)

Class Counsel conducted a thorough investigation and discovery into the merits and legal basis of Plaintiff's meal and rest break claims, overtime claims, reimbursement claims, and wage statement claims and performed significant legal research with respect to the applicable law and potential defenses raised by PetSmart to Plaintiff's claims. (*Id.*, ¶19.) Class Counsel's firm's investigation and discovery allowed Class Counsel to prepare a complete liability analysis of the potential exposure to PetSmart if Plaintiff succeeded on all claims at trial. Class counsel measured the potential exposure against the relative strength of the claims in order to better identify an appropriate range of settlement figures. (*Id.*) This analysis was based on information represented in PetSmart's and class members' records, as well as facts and information gleaned from class member interviews regarding the claims alleged during the class period, including the number of shifts worked per pay period, the average number of employees employed at any given time, class members' average rates of pay, the estimated violation rate for meal and rest break claims, and the amount of any unpaid overtime wages or unreimbursed expenses, among others. Class Counsel paid particular attention to the claims of the PetsHotel Managers to obtain valuable evidence concerning those class member's duties and responsibilities to determine whether Plaintiff would be able to prevail on his claim that he was misclassified as an exempt PetsHotel Manager and thus denied the benefits afforded to non-exempt employees to be paid for overtime and to be provided with meal and rest breaks. (*Id.*)

The documents and information exchanged and analyzed by the Parties through formal and informal discovery, as well as the Parties' discussions during mediation, are sufficient for the Parties to

make an informed decision about a fair resolution of this action at this time. (*Id.*, ¶20.)

### C. Negotiation and Preliminary Approval of the Settlement

In January 2018, the Parties attended a mediation with Mark Rudy, a well-respected neutral third-party mediator who specializes in resolving wage and hour class action matters. (Hollis Decl., ¶2, Ex. 2, Hollis Decl. In Support of Preliminary Approval, ¶16.) During the mediation session, the Parties engaged in good-faith, non-collusive negotiations, exchanged additional information regarding the realistic damages exposure to PetSmart, discussed the relative strengths and weaknesses of Plaintiff's claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiff's claims, and the difficulty Plaintiff may have in obtaining and maintaining class certification of each of his claims. (*Id.*, ¶18.) Mark Rudy's role in mediating this case was extremely helpful in managing the Parties' expectations and provided a useful and neutral analysis of the issues and risks to all Parties. At all times the Parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement is evidence of the Parties substantial efforts to reach a mutually agreeable compromise. (*Id.*) The Parties were able to reach a settlement at the mediation, subject to the preparation and execution of a comprehensive Settlement Agreement, the filing of an Amended Complaint to ensure that all the claims which were presented and resolved in the mediation were included in the operative complaint, as well as the entry of Final Approval and Judgment by the Court. (*Id.*)

On November 6, 2018, the Parties appeared telephonically for the hearing on Plaintiff' Motion for Preliminary Approval, at which time this Court requested that the Parties submit supplemental briefing addressing specific provisions of Settlement. Specifically, the Court asked the Parties address the treatment of FLSA claims in the Parties' initial Settlement Agreement. The Court also directed the Parties' attention to the treatment of settlement of FLSA claims in the following cases: *Thompson v. Costco Wholesale Corp.*, No. 14-cv-2778-CAB-WVG, 2017 WL 697895 (S.D. Cal. Feb. 22, 2017); *Millan v. Cascade Water Servs., Inc.*, No. 1:12-cv-01821-AWI-EPG, 2016 WL 3077710 (E.D. Cal. May 31, 2016); *Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214 KJM EFB, 2014 WL 1379861 (E.D. Cal. Apr. 8, 2014); *Pierce v. Rosetta Stone, Ltd.*, No. C 11-01283 SBA, 2013 WL 1878918 (N.D. Cal. May 3, 2013); and *Moore v. Fitness Int'l, LLC*, No. 3:12-cv-1551-LAB-NLS, 2013 WL 3189080 (S.D. Cal. June 21, 2013). (Hollis Decl., ¶11.)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

On November 28, 2018 and December 10, 2018 Plaintiff filed supplemental briefs in support of Plaintiff's Motion for Preliminary Approval, addressing the concerns raised by the Court at the November 6, 2018 hearing. (Hollis Dec. ¶ 12.) The Court issued its Preliminary Approval Order on April 18, 2019. (Dkt. No. 15.)

Since the Court granted preliminary approval of the settlement on April 18, 2019, the parties have been working cooperatively and diligently to ensure that the settlement claims procedures have been accurately implemented by the Settlement Administrator. (Hollis Decl., ¶13). On May 17, 2019, Rust mailed the Notice Packets to 2,987 class members. (Schwermer-Sween Decl., ¶3, Ex. A, Schwermer-Sween Decl. on Behalf of Settlement Administrator ¶9.; see also Dkt. No. 16-3, ¶9.) The Class Notice advised class members which of the one or more classes/subclasses they were qualified for, and that they could submit an exclusion, objection, and/or dispute. (*Id.*) The Class Notice also advised eligible class members that they could submit an Opt In Form to participate in the FLSA collective action. (*Id.*)

## SUMMARY OF THE SETTLEMENT TERMS

The following summarizes the material terms of the Settlement:

The Parties have settled the claims against PetSmart on behalf of the Settlement Classes defined as follows:

(1) PetsHotel Manager Class: any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original complaint was filed, October 27, 2012, through April 13, 2015.

(2) PetsHotel Leader Class: any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the date of preliminary approval.

(3) PetsHotel Seating Class: all members of the PetsHotel Manager Class and PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the date of preliminary approval as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate.

(4) Waiting Time Penalties Subclass: all members of the PetsHotel Manager Class and/or PetsHotel Leader Class whose employment with PetSmart ended at any time from and after October 27, 2013 through the date of preliminary approval.

PetSmart is to pay $1,350,000 (the "Maximum Settlement Amount"). The Maximum Settlement Amount is the amount that Defendant shall be required to pay under the terms of the Settlement

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Agreement, and shall be deemed in satisfaction of all claims arising out of, this action, including claims for: (1) all wages, penalties, interest, and/or other amounts to be paid to settlement class members; (2) the payment to the Labor and Workforce Development Agency ("LDWA"); (3) attorney's fees and costs to Class Counsel; (4) the service payments to the Class Representatives; and (5) all costs of administration, including, settlement administration fees. Once these deductions are made, the balance of the Maximum Settlement Amount will be available for distribution to settlement class members ("Net Settlement Amount".) (Hollis Decl., ¶6; see also Dkt. No. 14-1, Settlement Agreement) The Maximum Settlement Amount ($1,350,000) shall not include the employer's share of any applicable payroll taxes. Class members will not need to submit a claim form to participate in the settlement of class and PAGA representative claims and receive a portion of the Net Settlement Amount. (*Id.*) The amount each Class Member will receive is based on the class or classes in which they are members. In addition, members of the PetsHotel Manager Class and PetsHotel Leader Class will be eligible to receive an additional payment under the FLSA Settlement if they submit an Opt In Form. (*Id.*)

To the extent any member of the PetsHotel Manager Class and PetsHotel Leader Class does not submit an Opt In Form, the amount of the FLSA Settlement Fund attributable to that Class Member will be redistributed to the class members receiving payments under the Rule 23 Settlement Fund (members of the PetsHotel Manager Class and PetsHotel Leader Class) in proportion to their Individual Settlement Amounts. (*Id.*)

"Class Counsel" shall mean Graham S.P. Hollis, Vilmarie Cordero, and Nathan Reese of GrahamHollis APC. (*Id.*)

Class Counsel shall apply for an award of fees up to 33 1/3% of the Maximum Settlement Amount (or $450,000), and costs incurred by Class Counsel. Said fees shall be in addition to the payment of all costs actually incurred by Class Counsel in connection with this matter. (*Id.*)

The Class Representative for all Settlement Classes is the named Plaintiff William Milburn. Plaintiff will request, and PetSmart will not object to, a service award to Plaintiff of $5,000. This Amount will come from the Maximum Settlement Amount and will be in addition his Individual Settlement Amount. (*Id.*)

Pursuant to the terms of the Settlement Agreement, any funds from uncashed checks will be

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

7

1    redistributed to the Salvation Army's California programs for unemployed and underemployed workers.

2    (*Id*.)

3      The proposed Settlement satisfies all criteria for final approval under federal law because it is fair,

4    reasonable, adequate, and free from collusion.

5    **III.**      <u>**FINAL SETTLEMENT APPROVAL SHOULD BE GRANTED**</u>

6      **A. Legal Standards for Settlement Approval**

7      A district court determines whether to approve a class action settlement through a two-step process.

8    First, a court will conduct a "preliminary, pre-notification hearing to determine whether the proposed

9    settlement is within the range of possible approval." In re *AT&T Mobility Wireless Data Servs.*, Sales

10   Litig., 270 F.R.D. 330, 346 (Ill. 2010). On April 18, 2019, this Court granted preliminary approval.

11      Next, this Court may approve the class action settlement after hearing and upon a finding that the

12   settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(1)(C); *Hanlon v. Chrysler Corp.*,

13   150 F.3d 1011, 1026 (9th Cir. 1998); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Therefore,

14   the question is "not whether the final product could be prettier, smarter, or snazzier, but whether it is fair,

15   adequate, and free from collusion." *Hanlon* at 1027. It is "the settlement taken as a whole, rather than the

16   individual component parts, that must be examined for overall fairness." *Id*. at 1026. To make this

17   determination, the court must consider a number of factors, including: (1) the strength of plaintiff's case;

18   (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining a

19   class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

20   completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of

21   a governmental participant; and (8) the reaction of the class members to the proposed settlement. Churchill

22   *Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 204). This list is not exhaustive, and the importance

23   of its factors will vary depending on the circumstances of each case. *Torrisi v. Tucson Elec. Power Co.*,

24   8 F.3d 1370, 1376 (9th Cir. 1993). A settlement merits final approval, when "the interests of the class as

25   a whole are better served by the settlement than by further litigation." *Manual for Complex Litigation*

26   (Fourth) ("MCL 4th") § 21.61, at 480 (4th ed. 2010).

27      Although district courts possess "broad discretion" in issuing a final determination that a proposed

28   class action settlement is fair, "the court's intrusion upon what is otherwise a private consensual agreement

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  A district court should limit its evaluation "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 625; *Hanlon*, 150 F.3d at 1026.  "[I]n evaluating whether the settlement is fair and adequate, the Court's function is not to second guess the settlement's terms."  *Garner v. State Farm Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *8 (N.D. Cal. April 22, 2010).

The Court is not bound to exercise the same oversight of a settlement of a collective action as it must exercise with a class action under Federal Rule of Civil Procedure 23(e). Whereas the Court's role in supervising the settlement of a class action "protects unnamed class members 'from unjust or unfair settlements affecting their rights,' " *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997), members of an FLSA collective action have opted-in affirmatively. A court's involvement in the management of their action "has less to do with the due process rights" of those to be bound by a settlement, "and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.' " *McElmurry v. U.S. Bank. Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007).

A court may not approve an FLSA settlement without determining whether it is "a fair and reasonable resolution of a bona fide dispute." *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055-LJO-BAM, 2012 WL 2930867, at *2 (E.D. Cal. July 18, 2012) (quoting *Yue Zhou v. Wang's Rest.*, No. C 05-0279, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007)); *see also Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)("courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes"). If the settlement reflects a reasonable compromise over FLSA issues, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lepinske v. Mercedes Homes, Inc.*, No. 6:07-cv-915-Orl-31 DAB, 2008 WL 2694111, at *1 (M.D. Fla. Jul. 7, 2008) (quoting *Lynn's Food Stores, Inc. v. United*

*States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

As detailed below, all of the above factors support final approval of this class and collective action settlement in this case.

**B.  The Relevant Factors Weigh in Favor of Granting Final Approval**

**1.  The Strength of Plaintiff's Case, the Risk, Expense, Complexity, and Likely Duration of Further Litigation, and the Risk of Maintaining Class Action Status Throughout the Trial.**

The proposed Settlement is both fair and reasonable in light of Defendant's available legal and factual defenses to Plaintiff's claims. As set forth in Class Counsel's Declaration filed herewith, Class Counsel has substantial and successful experience litigating wage and hour class actions. (Hollis Decl. at ¶2, Ex. A; see also Ex. B to Hollis Decl. in Support of Preliminary Approval.) Plaintiff's allegations of misclassification, forming the basis of several claims of the PetsHotel Manager Class, presents challenges for class certification purposes, because of potential individualized issues amongst members of that class. In addition, Plaintiff's claims of off-the-clock work further presents challenges, because there are no time records to establish the existence and extent of the violations. (Hollis Decl., ¶23.) This case also presented novel and complex issues as well as numerous risks in further litigation. For example, Plaintiff's claims for failure to provide suitable seating is not a commonly pursued claim under PAGA. Defendant further claims that the nature of work performed by employees could not be performed while seated. (Hollis Decl., ¶23.) Because the case law related to suitable seating is limited, it presents potential novel and complex legal issues. In addition, PetSmart vigorously defended against Plaintiff's meal and rest break allegations and argued that all wages had been paid in accordance with California law. (*Id.*)

Thus, Plaintiff faced numerous risks in continued litigation including: (1) the risk that the proposed class would not be certified; (2) the risk that class members would be found to have been paid all wages due; (3) the risk that PetSmart would be found not to have willfully failed to pay all wages due upon termination of employment; (4) the risk that PetSmart would be found not to have intentionally failed to furnish accurate itemized wage statements; (5) the risk that Plaintiff's damages calculations would be substantially undercut at trial; (6) the risk that class members would be found to have not been able to perform their duties while seated; and (7) the risk that Defendant may appeal a ruling in Plaintiff's favor. Given these risks and the complexity of proving these claims, the actual recovery through settlement

confers substantial benefits on the settlement class that outweigh the potential recovery through full adjudication. (Hollis Decl., ¶23.)

Furthermore, the risk of maintaining class certification throughout trial also weighs in favor of granting final approval.  These risks, in turn, enhance Plaintiff's showing that the settlement terms are fair, reasonable and adequate in light of the potential outcome of continued litigation.

### 2.  The Amount Offered in Settlement

The Maximum Settlement Amount ($1,350,000) includes all payments to settlement class members, service awards to the Class Representatives, Class Counsel's attorney's fees and costs, settlement administration costs, and payment to the LWDA, but does not include the employer's share of payroll taxes. (Hollis Decl. ¶ 6(a); Settlement Agreement §1.48). After these payments from the Maximum Settlement Amount, the net amount available for distribution to class members is approximately $600,000. The $1,350,000 total settlement amount is a significant amount when taking into account the uncertainties involved with continued litigation. (Hollis Decl., ¶32.)

The Individual Settlement Amounts to participating class members will vary based on their membership in the different classes and the number of workweeks they worked during the relevant class periods. The Settlement Administrator now confirms that the participation rate is 99.9%. (Shwermer-Sween Decl., ¶8.) The participation rate for class members participating in the FLSA collective action is 60.7%. (*Id.*, ¶9) After the unclaimed FLSA Settlement Fund funds are redistributed to each participating to Class Member, the average Individual Settlement Amount to a member of the PetsHotel Manager Class will be approximately $9,203.43, and the the average Individual Settlement Amount to a member of the PetsHotel Leader Class will be approximately $1,741.99. (*Id.*, ¶10) The average payment a Class Member submitting an Opt In Form and participating in the FLSA collective action is approximately $8,189.57. (*Id.*, ¶11) The largest individual settlement payment is estimated to be $20,034.04. (*Id.*, ¶12)

As such, the amount offered in settlement in this case is exceptional and weighs in favor of final approval.

### 3.  The Extent of Discovery Completed and the State of the Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table."

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

*Williams v. Costco Wholesale Corp.*, 2010 WL 2721452, at *4 (S.D. Cal. July 7, 2010) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). As discussed above as well as in detail in Plaintiff's Motion for Preliminary Approval ("MPA"), during the nearly three years that this case has been pending, Plaintiff's counsel conducted a thorough investigation and discovery into the merits and legal basis of Plaintiff's claims and performed significant legal research with respect to the applicable law and potential defenses raised by PetSmart to Plaintiff's claims. The Parties agreed to a full exchange of information including providing access to a full list of every PetsHotel Manager and PetsHotel Leader with contact information. Plaintiff's counsel obtained thousands of pages of documents, including time and payroll records, employee handbooks, policies related to meal and rest periods and overtime. Plaintiff's counsel further developed a detailed analysis of PetSmart's liability and potential exposure if Plaintiff succeeded on all claims at trial. This analysis was based on information represented in PetSmart's and class members' records, as well as facts and information gleaned from class member interviews regarding the claims alleged during the class period, including the number of shifts worked per pay period, the average number of employees employed at any given time, class members' average rates of pay, the estimated violation rate for meal and rest break claims, and the amount of any unpaid overtime wages or unreimbursed expenses, among others. (Hollis Decl. ¶2, Ex. A, Hollis Decl. in Support of MPA, ¶¶23-24.)

The information exchanged and investigation undertaken allowed Class Counsel to assess the strengths and weaknesses of the claims and the benefits of the settlement under the circumstances of this case. (Hollis Decl., ¶¶19-20.)

### 4. The Experience and Views of Class Counsel

Class Counsel has significant experience in employment litigation, having litigated similar class actions against other employers, including numerous wage and hour cases. (Hollis Decl. ¶2, Ex. A, Hollis Decl. in Support of MPA, ¶¶7-9.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1039 (S.D. Cal. 2017). Class Counsel considers the settlement to be fair, reasonable, and adequate in light of their experience, the information obtained through investigation, in light of the risks and costs of further litigation. (Hollis Decl., ¶¶7, 21, 30.) Accordingly, Class Counsel's belief that the present settlement is

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

both fair and adequate weighs in favor of granting final approval.

### 5. The Reaction of the Class Members to the Proposed Settlement

The Court may look to the reaction of the class members to help it determine if the settlement is fair, adequate, and reasonable. In this case, the response has been very positive. After dissemination of the Class Notice to the 2,987 class members, the overall participation rate is 99.9%, with only 3 requests for exclusion and no objections. (Hollis Decl., ¶32; Schwermer-Sween Decl., ¶¶8-9). The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement. *Williams*, 2010 WL 2721452, at *3 (S.D. Cal. July 7, 2010).

### 6. Arm's Length Negotiations

The Parties engaged in substantial arm's length, informed negotiations to reach the Settlement. The Settlement was reached after a full-day mediation with well-respected mediator Mark Rudy. (Hollis Decl., ¶2, Ex. A, Hollis Decl. In Support of Preliminary Approval, ¶18.) Class Counsel has substantial experience in similar litigation. (*Id*. ¶7.) Prior to mediation, the Parties conducted significant investigation, conducted in-depth fact-finding interviews with class members, and exchanged thousands of pages of documents, including time and payroll records, employee handbooks, and other employment policies. (Hollis Decl., ¶15-17). Therefore, the settlement negotiations were undertaken only after the Parties had a decent sense of the strengths and weaknesses of their claims. Mark Rudy's role in mediating this case was extremely helpful in managing the Parties' expectations and provided a useful and neutral analysis of the issues and risks to all Parties. (Hollis Decl., ¶2, Ex. A, Hollis Decl. In Support of Preliminary Approval, ¶18.) At all times the Parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement is evidence of the Parties substantial efforts to reach a mutually agreeable compromise. (*Id*.)

### 7. Intra-Class Equity

As Plaintiff discussed in detail in Plaintiff's MPA, the settlement treats class members equitably. The calculation of payments for members of the PetsHotel Seating Class, PetsHotel Manager Class, and PetsHotel Leader Class are based each class members' workweeks worked in the period applicable to each class. Because class members who worked more often were more likely to suffer more unpaid time and other violations, this method proved to be the most equitable method of distribution. (Hollis Decl., ¶29.)

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

The payment amounts to members of the Waiting Time Penalties Subclass were calculated on a per capita basis, because waiting time penalties under California Labor Code § 203 are capped at a maximum penalty of 30 days of wages. Cal. Labor Code § 203. Thus, a per capita distribution provides for the most equitable method of calculating individual payments to members of the Waiting Time Penalties Subclass.

## C.   The Proposed Cy Pres Beneficiary is Reasonable

In *Dennis v. Kellogg Co.*, the Ninth Circuit reiterated the principles governing selection and review of cy pres beneficiaries in class action settlements, and provided extensive guidance concerning the application of those principles. The Parties jointly designated the Salvation Army's California programs for unemployed and underemployed workers ("Salvation Army") as the cy pres beneficiary. (Settlement Agreement Section 2.7.2.). The Salvation Army's program serves California unemployed and underemployed workers in gaining the employment skills and experience necessary to obtain employment and supports them during periods of unemployment. (*Id*.) This easily satisfies that requirement that there be a "driving nexus between the plaintiff class and the cy pres beneficiaries." as required by *Dennis*. See *Dennis*, 697 F.3d at 865. The Court should therefore approve the Parties' cy pres designation.

## D.   The Court Should Approve the Payment of PAGA Penalties to the LWDA

The Court also should award the requested payment to the LWDA as its share of the PAGA penalties. The parties request a payment of $340,000 of the Settlement Amount to the LWDA. Seventy-five (75%) of that total, or $255,000 will be paid to the LWDA and the remaining twenty-five percent (25%), or $85,000 shall be distributed to participating members of the PetsHotel Leader Class and PetsHotel Seating Class. (Settlement Agreement, § 1.33, 1.46; Hollis Decl., ¶55) Of the $85,000, $75,000 shall be redistributed to members of the PetsHotel Seating Class, and $10,000 shall be redistributed to members of the PetsHotel Leader Class. (*Id*.) Federal courts repeatedly have approved similar LWDA payments, and this Court should follow suit. *Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI, SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 payment to the OWDA from $3.9 million settlement); *Chu v. Wells Fargo Invs. LLC*, Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving $7,500 payment to LWDA from $6.9 million common fund settlement); see also *Nordstrom Comm'n Cases*, 186 Cal.App.4th 576, 589 (2010) (holding trial court properly approved settlement that allocated nothing to PAGA claims).

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**E.  The Court Should Approve the Settlement Administrator's Fees and Costs**

Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, the Parties hired Rust as the Settlement Administrator. (Hollis Decl. ¶5, 3.) Rust provided the Parties with an estimate for the cost of administration of the settlement, with a capped fee not to exceed $25,000. (*Id*., ¶56.)  All amounts were necessarily incurred in sending the Notice to the Settlement class members, preparing materials, answering questions from settlement class members, performing settlement calculations, process Class Member Opt In Form, and executing other settlement administration tasks. The requested fees and costs are reasonable given the complexity of the settlement calculations in this case and the size of the Settlement Class. (*Id*., ¶54.)

**IV.   THE NOTICE PROCEDURE WAS PROPERLY CARRIED OUT AND ITS RESULTS INDICATE STRONG SUPPORT FOR, AND NO OPPOSITION TO THE SETTLEMENT BY CLASS MEMBERS**

**A.  The Settlement Class Members Received Adequate Notice of the Settlement**

the class members received sufficient notice of the settlement.  Rule 23(e)(1) requires class members be provided notice of a settlement in "a reasonable manner."  Fed. R. Civ. P. 23(e)(1).  Class members need not receive "actual notice." *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Instead, notice may be provided in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

In this case, the Settlement Administrator approved by the Court has extensive experience in administering class action settlements. (Shwermer-Sween Decl., ¶ 2). The content of the notice, which also was approved by the Court satisfies due process under federal law. See *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally"). The notice to class members clearly sets forth the estimated settlement shares and the claims to be released. Moreover, the notice materials informed class members of their rights, how to enforce their rights, and clearly stated (1) the deadline to object to the Settlement and to appear at the Final Approval Hearing; (2) their right to submit a Request for Exclusion and not to participate in Settlement and the deadline to timely request exclusion; (3) the location, date and time of the Final Approval Hearing;

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

15

(4) the class members' membership in each class that applied to them; and (5) that eligible class members would have the option to submit an Opt In Form to participate in the FLSA collective action and the deadline to timely submit an Opt In Form. The Notice of Class Action Settlement and FLSA Opt-in Form ("Notice Packet") further discussed the method of calculating payments and provided the estimated settlement payment to each class member and how they could dispute the employment information contained in the Notice Packet. These methods satisfy due process and class members were therefore provided with all of the information they needed to make an informed choice regarding whether to be part of the Settlement.

Rust fully and faithfully carried out the Court's directions by mailing the Notice Packet to the 2,987 class members. (Schwermer-Sween Decl., ¶3, Ex. A, ¶9.) Prior to mailing the Notice and Opt In Form, Rust performed a National Change of Address Database search on class members. (*Id.*, ¶8.) Rust performed 256 address traces on Class Notices returned as undeliverable for the first time by the July 16, 2019 deadline. (Schwermer-Sween Decl., ¶4.) The address trace utilized the Class Member's name, previous address and Social Security Number for locating a current address. (*Id.*) Of the 256 traces performed, 224 more current addresses were obtained and Class Notices were promptly re-mailed to those class members via first class mail. As of this date, 87 Class Notices remain undeliverable. (*Id.*)

**B.  The Settlement Class Members Responded Extremely Favorably to the Settlement**

The overwhelmingly positive response of class members to the Settlement strongly supports final approval. Courts should consider "the reaction of the class members to the proposed settlement." *Officers for Justice*, 668 F.2d at 625. The response of class members "strongly favors" settlement even when 10 percent of such members object. *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); see also *Shlenksy v. Dorsey*, 574 F.2d 131, 148 (3d Cir. 1978) (upholding settlement because vast majority of class members did not object to it.) Here, only three class members elected not to participate in the Settlement, and no class member has objected to the Settlement since the mailing of the Notice Packets. (Hollis Decl. ¶ 35; Schwermer-Sween Decl. ¶¶8-9). Given the class size of nearly 3,000 individuals, such an overwhelmingly positive response merits final approval of the Settlement.

**C.  The Results of the Notice Procedure Strongly Favor Final Approval of the Settlement**

The results of the notice procedures are sufficient to support final approval. Of the 2,987 Notices

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

mailed, 87 were returned undeliverable as of the date of the filing of this Motion. 51 Opt In Forms were received by Rust, which amounts to 60.7% of class members eligible to participate in the FLSA collective action.  Given the size of the class, this is a significant participation rate that strongly supports the fairness, reasonableness, and adequacy of the settlement. As such, the results of the notice procedures strongly favor final approval of the Settlement.

**V.**     **CONCLUSION**

The Court should grant final approval of the Settlement Agreement and order the parties and the Settlement Administrator carry out its provisions for payments and related documentation, further reporting, and additional actions, as specified in the Settlement Agreement. A proposed Judgment and Final Order incorporating those provisions is submitted with this Motion.


Dated: August 20, 2019                                   GRAHAM**HOLLIS** APC


                                      By:   _____/s/ *Graham S.P. Hollis*_____
                                                Graham S.P. Hollis
                                                Vilmarie Cordero
                                                Nathan Reese
                                      Attorneys for Plaintiff William Milburn

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION