UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. MILBURN, individually and on behalf of all other current and former similarly situated and aggrieved employees of defendants in the State of California, | No. 1:18-cv-00535-DAD-SKO |
| Plaintiff, | ORDER GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES |
| v. | |
| PETSMART, INC.; and DOES 1 through 50, inclusive, | (Doc. Nos. 16, 17) |
| Defendants. | |

This matter came before the court on October 1, 2019, for hearing on plaintiff's motion for final approval of a class action settlement and motion for attorneys' fees. (Doc. Nos. 16, 17.) Attorney Nathan Reese appeared telephonically for plaintiff and the class, and attorney Carrie Gonell appeared telephonically for defendants. For the reasons that follow, the court will grant final approval of the class action settlement and will award attorneys' fees and costs as requested.

**BACKGROUND**

The court previously granted preliminary approval of a class action settlement in this action on April 18, 2019. (Doc. No. 15.) Pertinent factual details may be found in that order. Following the granting of preliminary approval, on May 17, 2019, Rust Consulting, the settlement administrator, mailed the notice packets to 2,987 class members. (Doc. 17-1 at 6.) Of

those mailed notices, eighty-seven were returned undeliverable. (*Id.* at 16–17.) Thus far, no member has filed an objection to the settlement, three members of the class have requested exclusion, and fifty-one FLSA opt-in forms have been received. (*Id.* at 13, 17.) Plaintiff declares that this represents 60.7 percent of the class members eligible to participate in the FLSA collective action and 99.9 percent overall participation. No class members appeared at the final approval hearing.

## FINAL CERTIFICATION OF CLASS ACTION

The court conducted an examination of the class action factors in the order granting preliminary approval of the settlement and found certification warranted. (*See* Doc. No. 15 at 11–16.) Since no additional issues concerning whether certification is warranted have been raised, the court will  not repeat its prior analysis here, but instead reaffirms it and finds final certification appropriate. The following class is certified:  all persons who are members of the PetsHotel Manager Class, PetsHotel Leader Class, PetsHotel Seating Class, and Waiting Time Penalties Subclass. (*Id.* at 3–4.) Each of those classes are defined as follows:

> (1) PetsHotel Manager Class:  any individual employed by PetSmart in an exempt PetsHotel Manager position in California during the period four years back from the date the original complaint was filed, October 27, 2012, through April 13, 2015.

> (2) PetsHotel Leader Class:  any individual employed by PetSmart in a non-exempt PetsHotel Leader position in California at any time from and after April 13, 2015 through the date of preliminary approval.

> (3) PetsHotel Seating Class:  all members of the PetsHotel Manager Class and PetsHotel Leader Class, as well as any individual employed in a PetsHotel in California from October 27, 2015 through the date of preliminary approval as an Assistant Manager and/or Assistant Leader, Store Lead and/or Seniors, Overnight PetCare Specialist, or Guest Services Associate.

> (4) Waiting Time Penalties Subclass:  all members of the PetsHotel Manager Class and/or PetsHotel Leader Class whose employment with PetSmart ended at any time from and after October 27, 2013 through the date of preliminary approval.

(*Id.*) In addition, and for the reasons stated in the order granting preliminary approval, plaintiff William L. Milburn is confirmed as class representative, attorneys Graham Hollis, Vilmarie Cordero, and Nathan Reese are confirmed as class counsel, and Rust Consulting is confirmed as

the settlement administrator.

## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). This requires that: (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object. Fed. R. Civ. P. 23(e)(1)–(5). The settlement agreement was previously filed on the court docket (Doc. No. 9-2, Ex. 1), and class members have been given an opportunity to object. The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

**A.     Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

Here, the court reviewed the class notice that was proposed when the parties sought preliminary approval of the settlement and found it to be sufficient. (Doc. No. 15 at 21–25.)

1    Notice was sent by the settlement administrator to 2,987 class members on May 17, 2019 via

2    first-class mail. (Doc. No. 16-3 at ¶ 9.) Of those notices, Rust performed 256 address traces on

3    notices returned as undeliverable, obtained 224 more current addresses, and re-mailed to those

4    class members. (Doc. 17-3 at ¶ 4.) Fifty-five class notices were returned a second time. (*Id.*)

5    Thus, eighty-seven class notices remain undeliverable. (*Id.*) It therefore appears that

6    approximately 97 percent of the class members received notice of this settlement. Rust also

7    received fifty-one FLSA opt-in forms. (*Id.* at ¶ 6.) Although one opt-in form was untimely, the

8    individual provided a letter informing Rust that it was timely but never received, and counsel for

9    the parties directed Rust to consider the opt-in form timely. (*Id.* at ¶ 6.) Since there are eighty-

10   four individuals who are eligible to submit a claim under the FLSA settlement fund, this

11   represents 60.7 percent participation in the FLSA settlement.

12       Of the class members receiving notice of the settlement, the settlement administrator

13   reports that no written objections were filed and only three requests for exclusion were received.

14   (*Id.* at ¶¶ 8–9.) One class member disputed working in a covered job title. (*Id.* at ¶ 7.) Defense

15   counsel verified that the class member worked in a covered position and provided instructions on

16   how to opt out of the settlement if the class member chose to do so. (*Id.*) The class member has

17   not submitted a request for exclusion. In total, there are 2,984 class members in this settlement,

18   representing a 99.9 percent participation rate. (*Id.* at ¶ 8.) No class members or their

19   representatives appeared at the final fairness hearing to object to the settlement.

20       Given the above, the court concludes adequate notice was provided to the vast majority of

21   the class here. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (noting the court need not

22   ensure all class members receive actual notice, only that "best practicable notice" is given);

23   *Winans v. Emeritus Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11,

24   2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it

25   does not require that each individual actually receive notice."). The court accepts the reports of

26   the settlement administrator and finds sufficient notice has been provided so as to satisfy Federal

27   Rule of Civil Procedure 23(e)(1).

28   /////

**B.      Final Fairness Hearing**

On October 1, 2019, the court held a final fairness hearing, at which class counsel and defense counsel appeared telephonically. As noted, no class members, objectors, or counsel representing class members or objectors appeared at the hearing. Below, the court will determine whether the settlement is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members" because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotation marks and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement,

or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotation marks omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to a certain amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

### 1. Strength of Plaintiff's Case

Plaintiff explains in his brief in support of the motion for final approval that the class faced challenges at the class certification stage, such as the potential individualized issues among members of the PetsHotel Manager Class. (Doc. No. 17-1 at 10.) The parties also dispute whether defendant failed to provide suitable seating, a claim that is not usually pursued under the Private Attorneys General Act ("PAGA"). (*Id.*) Plaintiff notes that there is limited case law related to suitable seating, making this legal issue a novel and complex one. (*Id.*) Plaintiff's

counsel asserts that the main point of contention is defendant's belief that the PetsHotel Managers were properly classified as exempt and, even if they were misclassified, they nevertheless were both offered and took meal and rest breaks. (Doc. No. 17-2 at ¶ 27.) Defendant also asserts that PetsHotel managers only occasionally worked over eight hours in a work day or forty hours in a work week, and class members were not required to use personal cell phones but those who did chose to do so for personal convenience. (*Id.*) Defendants believe they cannot be held liable for any Labor Code or Wage Order violations. (*Id.*) Thus, plaintiff faced several risks in continued litigation:

> (1) the risk that the proposed class would not be certified; (2) the risk that class members would be found to have been paid all wages due; (3) the risk that PetSmart would be found not to have willfully failed to pay all wages due upon termination of employment; (4) the risk that PetSmart would be found not to have intentionally failed to furnish accurate itemized wage statements; (5) the risk that Plaintiff's damages calculations would be substantially undercut at trial; (6) the risk that class members would be found to have not been able to perform their duties while seated; and (7) the risk that Defendant may appeal a ruling in Plaintiff's favor.

(Doc. No. 17-1 at 10–11.) Plaintiff's counsel believes that "the likelihood of obtaining complete recovery of the estimated damages was far from certain, particularly in light of the relative strength of PetSmart's defense that it did not misclassify the PetsHotel Class Members and the existence of potential variations of working conditions and responsibilities among" the class members. (Doc. No. 17-2, Ex. A at ¶ 33.) Plaintiff's counsel estimates that the value of the PetsHotel Manager Class claims should first be discounted by 40 percent to account for the risk of being able to maintain class certification, and that number should in turn be discounted by an additional 40 percent to account for the risk of prevailing at trial. (*Id.* at ¶ 34.) Similarly, plaintiff's counsel suggests that the value of the PetsHotel Leader class claims should be discounted by 50 percent for the risk of maintaining class certification through trial, and that number should in turn be discounted by an additional 50 percent for the risk of prevailing at trial. (*Id.*)

/////

/////

1     **2.**  <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation, and Risk</u>

2       <u>of Maintaining Class Action Status Through Trial</u>

3    As noted above, plaintiff has indicated he believes there was substantial risk the class

4 would not be awarded significant damages because of the possibility that defendant might

5 successfully claim it was not liable for Labor Code or Wage Order violations that class members

6 experienced, if any. Moreover, as explained above, there was a significant risk that the class

7 could not maintain class certification through trial. Moreover, this case has not yet proceeded to

8 the class certification stage, and therefore substantial expense would be incurred in litigating a

9 class certification motion, propounding and responding to merits-phase discovery, disputing any

10 dispositive motions, and ultimately trying the case. It is not only possible but likely that further

11 litigating this case to a final resolution would have required significant investments of both time

12 and expenses, absent a settlement.

13     **3.**  <u>The Amount Offered in Settlement</u>

14    The amount offered in settlement in this case is $1,350,000, which includes all payments

15 to settlement class members, service awards to the class representatives, class counsel's

16 attorneys' fees and costs, settlement administration costs, and payment to California's Labor and

17 Workforce Development Agency ("LWDA") under PAGA, but does not include the employer's

18 share of payroll taxes. (Doc. No. 17-1 at 11.) After these disbursements, the net amount

19 available for distribution to class members is approximately $600,000. (*Id.*) After the unclaimed

20 FLSA settlement funds are redistributed to each participating class member, the average

21 settlement amount to a member of the PetsHotel Manager Class will be approximately $9,203.43,

22 and the average settlement amount to members of the PetsHotel Leader Class will be

23 approximately $1,741.99. (*Id.*) The average payment to a class member submitting a FLSA opt-

24 in form is approximately $8,189.57. (*Id.*) The largest individual settlement payment is estimated

25 to be $20,034.04. (*Id.*)

26    Plaintiff's counsel estimates that, optimistically, the maximum recovery amount would be

27 approximately $4,118,726.00. (Doc. No. 17-2, Ex. A at ¶ 33.) Plaintiff's counsel also predicts

28 that the likelihood of obtaining complete recovery is far from certain considering the strength of

defendant's defenses. (*Id.*) As noted above, plaintiff's counsel found it appropriate to significantly discount both the PetsHotel Manager Class claims and the PetsHotel Leader class claims for purposes of settlement. Overall, the court concludes the amount offered in settlement is not unreasonable in this case.

### 4. Extent of Discovery Completed

The court must consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). Over the course of three years, counsel has investigated the merits and legal basis of plaintiff's claims through interviews, form interrogatories, document production requests, and special interrogatories. (Doc. No. 17-2, Ex. A at ¶ 20–21.) Once the parties agreed to pursue mediation, they exchanged information including defendant providing access to a full list of every PetsHotel Manager and PetsHotel Leader with contact information; providing comprehensive documentation regarding the job duties of PetsHotel Managers and PetsHotel Leaders; time records and pay records for the class period along with employee handbooks; and policies and procedures applicable to the class members. (*Id.* at ¶ 22.) Plaintiff's counsel obtained thousands of pages of documents—including time and payroll records, employee handbooks, policies related to meal and rest periods and overtime—and conducted phone interviews with class members. (*Id.* at ¶ 23–24.) Through discovery, plaintiff's counsel prepared a complete liability analysis of potential exposure to defendant if plaintiff succeeded on all claims at trial, which was measured against the relative strength of the claims in order to better identify an appropriate range of settlement figures. (*Id.* at ¶ 24.) All of this litigation conduct supports the conclusion that this settlement is "not the product of fraud or overreaching by, or collusion among, the negotiating parties." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992) (quoting *Ficalora*

/////

9

1  *v. Lockheed Cal. Co.*, 751 F.2d 995, 997 (9th Cir. 1985)); *see also West Publ'g Corp.*, 563 F.3d at

2  965.

3          5.      Experience and Views of Counsel

4        Plaintiff's counsel has submitted a declaration outlining his experience and in which he

5  states the following.  Plaintiff's counsel has been a member of the State Bar of California since

6  1985. (Doc. No. 17-2, Ex. A at ¶ 6.)  He has extensive experience in employment litigation,

7  having represented employees in employment litigation since 1995.  (*Id.*)  Plaintiff's counsel has

8  participated in class action litigation for over twenty years.  (*Id.*)  His firm has been appointed as

9  class counsel and received adequate and fair settlements in over seventy class action lawsuits in

10  district courts and state courts of California involving claims similar to those presented here.  (*Id.*

11  at ¶ 7.)  The firm of which plaintiff's counsel is a member currently serves as plaintiff's counsel

12  for approximately thirty wage and hour class and representative employment law cases.  (*Id.*)

13  Plaintiff's counsel believes the current settlement agreement is fair, reasonable, adequate, and in

14  the best interest of the class.  (*Id.* at ¶ 71.)  The court finds that the view of plaintiff's counsel

15  weighs in favor of granting final approval.

16          6.      Presence of a Governmental Participant

17        The settlement agreement contemplates payment of $340,000 of the settlement amount to

18  the LWDA under PAGA.  (Doc. No. 17-1 at 14.)  This too weighs in favor of approval of the

19  settlement.  *See Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012);

20  *Zamora v. Ryder Integrated Logistics, Inc.*, No. 13-cv-2679-CAB (BGS), 2014 WL 9872803, at

21  *10 (S.D. Cal. Dec. 23, 2014) (factoring civil PAGA penalties in favor of settlement approval).

22          7.      Reaction of the Class to Proposed Settlement

23        The absence of objections to a proposed class action settlement supports the conclusion

24  that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221

25  F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further

26  support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way,*

27  *Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).  As noted above,

28  no class members have objected to the settlement, and only three class members have opted out.

The lack of objections or of numerous class members opting out of the settlement suggests general approval of the settlement as a reasonable one by the class.

### 8. Subtle Signs of Collusion

The court now turns to a review of whether any of the "more subtle signs" of collusion noted by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-third of the settlement fund—is at the upper end of amounts typically awarded by courts within the Ninth Circuit. *See Morales v. Stevco, Inc.*, No. 1:09-cv-00704, 2011 WL 5511767 AWI JLT, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)); *In re Bluetooth*, 654 F.3d at 947 (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same). That said, the proposed attorneys' fees award is not disproportionate to the monetary distribution that the class and the *cy pres* beneficiary will receive in this case. In addition, there is no reversionary clause in the settlement agreement, and any residue will be distributed *cy pres* to the designated beneficiary, the Salvation Army's California programs for unemployed and underemployed workers. (Doc. No. 9-2 at 12.)

The settlement agreement does include a "clear sailing" provision, in which defendant has agreed not to object to, oppose, or otherwise contest class counsel's award of attorneys' fees or costs. (*Id.* at 56.) Although the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at 948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final approval. Rather, "when confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." *Id.* (citing *Staton*, 327 F.3d at 954). While these fees will be paid out of the common fund and are not being paid by defendant itself, the court notes that defendant's acquiescence to class counsel's fee request as weighing slightly against approval of the settlement.

In sum, the more subtle signs of collusion that the Ninth Circuit has warned of are not sufficiently present here to warrant rejection of the proposed settlement. While the attorneys' fees sought are somewhat above the Ninth Circuit's recognized benchmark, the payment of 33.33 percent of the settlement in attorney's fees is not out of the ordinary in such cases. Moreover, because the attorneys' fee award will be paid from the common fund and not separately by defendant, the circumstances of the case do not suggest defendant is attempting to overpay class counsel in order to settle the case early and to the disservice of the class. On balance, the court is satisfied that the settlement is not the product of collusion, and therefore concludes that the settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

## ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS

### A.    Attorneys' Fees

This court has an "independent obligation to ensure that the award [of attorneys' fees], like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. This is because, when fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994). As such, the district court assumes a fiduciary role for the class members in evaluating a request for an award of attorneys' fees from the common fund. *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. cv 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y*

12

*of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). The Ninth Circuit has generally set a 25 percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes "extremely risky" litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD-Rental*, 779 F.3d at 954–55. Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD-Rental*, 779 F.3d at 955.

Here, class counsel has requested an attorneys' fee award in the amount of $450,000, or 33.33 percent of the common fund. (Doc. No. 17-2 at ¶¶ 60, 62.) As noted above, this is higher than the benchmark percentage for this circuit. However, class counsel has demonstrated that plaintiff faced significant risks pursuing litigation, including the following: maintaining certification and establishing that PetSmart misclassified the PetsHotel Managers; proving off the clock work; the lack of records proving whether meal and rest breaks were in fact taken; the fact that the class members interviewed indicated that they were mostly provided with compliant meal and rest breaks but there were frequently times when the press of business prevented them from taking a full meal and rest break or taking them on time; and succeeding on the suitable seating claim while defendant maintains that seating could not be reconciled with the nature of the job. (Doc. 16-2 at ¶ 10.) Moreover, plaintiff's counsel did undertake representation in this case solely on a contingency fee basis, with no guarantee that any fees would be earned or costs recouped.

13

(Doc. No. 16-2 at ¶ 19.)  Additionally, the absence of any objections where the class notice indicated class counsel would seek a 33.3 percent award, weighs in favor of finding the fee award to be appropriate here.  (Doc. No. 17-1 at 10.)

The court will also conduct a lodestar cross-check to confirm whether a 33.3 percent award of attorneys' fees is appropriate.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. cv 06-04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)).  Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is typically applied.  "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation."  *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 Newberg on Class Actions § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting Newberg).

This court has previously accepted as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545 and $695 for senior counsel and partners.  *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017).  Since this hourly rate will be used solely for the purpose of cross-checking the percentage of the common fund awarded as attorneys' fees, the court will not define precisely the appropriate rates for this district.  The court recognizes some judges in the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates.  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-

14

cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners). *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (noting that courts in the Eastern District have found $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience reasonable); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016) (awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners). Additionally, counsels' declarations are sufficient to establish the number of attorney hours worked on this matter. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records.'") (quoting *Covillo v. Specialtys Café*, No. C-11-00594 DMR, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014)).

Here, class counsel represents that after exercising discretion in reducing some billed hours, the following summarizes the hours spent by the respective time keeper using his firm's 2019 rates:

/////

/////

/////

/////

| Timekeeper | Years | Hours | Billable Rate | Lodestar |
|---|---|---|---|---|
| Graham Hollis, Shareholder | 33+ | 386.2 | $700 | $270,340 |
| Vilmarie Cordero, Shareholder | 13 | 2.2 | $650 | $1,430 |
| Nicole Roysdon, Associate | 10 | 4.5 | $510 | $2,295 |
| Marta Manus, Associate | 11 | 72.4 | $510 | $36,924 |
| Geoff La Val, Associate | 7 | 182.7 | $505 | $92,263.50 |
| Nathan Reese, Associate | 7 | 66.8 | $490 | $32,732 |
| Senior Paralegals | 6+ | 179.9 | $210 | $37,779 |
| Paralegals | 4 | 1.6 | $190 | $304 |
| **TOTAL** | | | | **$474,068** |

(Doc. No. 16-2 at ¶ 16.)  Class counsel also declares that he has consulted with attorneys with reputations, experience, and law practices similar to that of his firm.  (*Id.* at ¶ 17.)  Accordingly, class counsel represents that these rates are reasonable for attorneys of their experience, reputation, and expertise and are consistent with the prevailing market rates for attorneys and paralegals of comparable levels of experience and reputation from San Diego area law firms that practice complex and class action litigation.  (*Id.*)  The court notes, however, that the relevant community for determining the prevailing market rates is the forum in which the district court sits, not where the attorneys themselves are situated.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013).  Thus, the court will consider the hourly rates for attorneys and

/////

/////

/////

/////

/////

/////

/////

paralegals in the Eastern District of California.[1]

As noted above, class counsel has declared that attorney Hollis and his associates have extensive experience in litigating wage and hour class action cases. (Doc. No. 17-2, Ex. A at ¶ 9.) Attorney Hollis himself has over thirty-three years of experience, and his hourly rate is $700. (Doc. No. 16-2 at ¶ 16.) The court will use the upper range of hourly rates previously found to be reasonable in this district and apply the $695 per hour rate in calculating attorney Hollis's lodestar. Attorney Hollis billed 386.2 hours for this case. (*Id.*)

Attorneys Roysdon and Manus bill at rates of $510 per hour, and attorney La Val bills at the rate of $505 per hour. (*Id.* at ¶ 16.) Each of these attorneys is an associate with between seven and eleven years of experience. Because class counsel's declarations do not highlight any particularly complex work that these associates performed, the court will reduce this rate to $495 per hour for purposes of the lodestar cross check to more appropriately reflect the market rates in the district. Combined, attorneys Roysdon, Manus, and La Val performed 259.6 hours of work on this case. (*Id.*) Lastly, this court has previously held that the prevailing rate for paralegals in the Eastern District of California is between $95 and $115 per hour. *Dakota Med., Inc. v. RehabCare Grp., Inc.*, No. 1:14-cv-02081-DAD-BAM, 2017 WL 4180497, at *9 n.1 (E.D. Cal. Sept. 21, 2017). The court will apply a rate of $115 per hour here. Together, paralegals billed 181.5 hours on this case. (Doc. No. 16-2 at ¶ 16.)

---

[1] The court recognizes that some judges in the Eastern District of California have distinguished between the Fresno and Sacramento communities in determining hourly rates. The general rule for awarding attorneys' fee rates, however, is that "the rates of attorneys practicing in the ***forum district***" are used. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (emphasis added). The ultimate task of the court is to discern the "prevailing market rates in the relevant community." *See Gonzalez*, 729 F.3d at 1205 (quoting *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)). District-wide rates should guide the court's award of attorneys' fees in cases originating in Fresno, particularly in specialized fields of litigation. *See, e.g.*, *id.* at 1206 (noting the appropriate rate was "the market rate prevailing in the Central District of California"); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (using the Northern District of California as the relevant legal community); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (same); *Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (using the Western District of Washington as the relevant local community), *overruled on other grounds as recognized in Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1556 (9th Cir. 1992). The court also notes that this is not a district court with separate divisions, as many are, but rather is a single district sitting in designated locations for venue purposes. *See* E.D. Cal. L.R. 120.

Given the foregoing, the court determines that the lodestar amount for cross-check purposes is $451,945.50. This equates to a lodestar multiplier of approximately 0.99. As a negative multiplier, this supports the $450,000 award of attorneys' fees in this case. Therefore, considering the lodestar cross-check and the fact that this case was conducted purely on a contingency fee basis, the court approves an award of $450,000 in attorneys' fees, equal to 33.3 percent of the common fund.

**B.     Expenses of Class Counsel**

Additionally, class counsel seeks to recover the costs expended on this litigation. Expense awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). This can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id*.

Class counsel declares that his firm incurred approximately $15,273.39 in costs related to this case. (Doc. No. 16-2 at ¶ 19.) Counsel has submitted a list of itemized costs totaling $15,273.39 for expenses such as filing fees, copying, delivery, postage, computerized legal research charges, telephone charges, travel to mediations and court appearances, and the cost of the mediator. (*Id*.) Class counsel also declares that he expected his firm to incur $640 in additional costs for preparing for the final approval motion, which is included in the aforementioned total. (*Id*. at ¶ 21.) The court finds these expenses appropriate and will award counsel $15,273.39 in costs.

**C.     Incentive Award**

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for

reasonable incentive payments.").  Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Here, plaintiff has requested an incentive payment of $5,000.  (Doc. No. 9-1 at 9.)  This would represent less than 1 percent of the overall settlement.  The average payment a member of the PetsHotel Manager Class will receive is $7,500, although the actual amount recoverable by a particular class member will depend on the number of weeks that class member worked.  (Doc. No. 9-1 at 21.)  The average payment a member of the PetsHotel Leader Class will receive is $885.  (*Id.*)  Each of the members of the Waiting Time Penalties Subclass will receive approximately $625, in addition to the amounts they will receive due to their membership in one or both of the other classes.  (*Id.*)  Thus, an incentive award of $5,000 is reasonably close to the maximum amount that a class member such as Milburn could expect to receive in this litigation.  Indeed, some class members will receive an award greater than $5,000.  Courts in this circuit have previously approved incentive awards in this range, and the court finds that the award is "not outside the realm of what has been approved as reasonable by other courts." *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500); *see also Davis v. Brown Shoe Co., Inc.*, No. 1:13-cv-01211-LJO-BAM, 2015 WL 6697929, at *12 (E.D. Cal. Nov. 3, 2015) (approving $7,000 incentive award where average class recovery was approximately $400).

Moreover, plaintiff has submitted a declaration stating that he spent approximately 35–40 hours being interviewed by his attorneys, assisting with discovery, and participating in mediation.  (Doc. No. 9-3 at ¶¶ 11–12, 14.)  Plaintiff's counsel also contends that similar fees are routinely awarded in wage and hour class actions like this case, particularly when, as here, plaintiff initiated action by seeking legal assistance from class counsel, assisted with the preparation of the LWDA letter and complaint, regularly communicated with class counsel via telephone and email,

provided relevant documents and responded to numerous discovery requests, identified potential witnesses, attended a mediation, and worked closely with class counsel throughout this litigation to protect the best interests of the class. (Doc. No. 17-2, Ex. A at ¶ 64.) Plaintiff's counsel also notes that plaintiff will execute a general release of claims, which is an expansive release that was not required of other class members, who will execute a limited release of claims. (*Id.*)

The court finds this incentive payment is fair and does not destroy the adequacy of class representation in this case.

## APPROVAL OF FLSA SETTLEMENT

The complaint in this action also contains claims brought under the FLSA. Settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1, n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether an FLSA settlement should be approved. *See Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-cv-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek,

1   because it would shield employers from the full cost of complying with the statute. *Id.*

2          Once it is established that there is a bona fide dispute, courts often apply the Rule 23

3   factors for assessing proposed class action settlements when evaluating the fairness of an FLSA

4   settlement, while recognizing that some of those factors do not apply because of the inherent

5   differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No.

6   CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). Having found this

7   settlement to be fair and reasonable under Rule 23, the court therefore looks only to whether there

8   is a bona fide dispute about the existence and extent of defendant's FLSA liability. Plaintiff

9   alleges that defendants violated the FLSA by willfully failing to pay exempt or non-exempt

10  PetsHotel Managers or PetsHotel Leaders for work performed in excess of forty hours, and by

11  failing to keep accurate records. (Doc. No. 1-2 at ¶ 53–54.) Plaintiff's counsel declares that

12  while plaintiff believes his claims are meritorious, he acknowledges that plaintiff faces a

13  significant battle in maintaining certification and establishing that PetSmart misclassified the

14  PetsHotel Managers, and that he risks recovering nothing. (Doc. Nos. 16-2 at ¶ 28; 17-2 at ¶ 51.)

15  Plaintiff also acknowledges the difficulty of proving off-the-clock work, and plaintiff recognizes

16  that even if he was misclassified, there were times when he did take compliant meal and rest

17  periods. (Doc. Nos. 16-2 at ¶ 28; 17-2, Ex. A at ¶ 28.) Therefore, the court concludes there was a

18  bona fide dispute as to FLSA liability here.

## CONCLUSION

20         For the reasons stated above,

21      1.      Plaintiff's motion for final approval of the class action and collective action

22              settlement (Doc. No. 17) is granted, the settlement class is certified, and the court

23              approves the settlement as fair, reasonable, and adequate;

24      2.      William L. Milburn is confirmed as class representative, attorneys Graham Hollis,

25              Vilmarie Cordero, and Nathan Reese are confirmed as class counsel, and Rust

26              Consulting is confirmed as the settlement administrator;

27      3.      Plaintiff's motion for attorneys' fees, costs to class counsel, and incentive payment

28              to the class representative (Doc. No. 16) is granted, and the court awards the

following sums:

    a.   Class counsel shall receive $450,000 in attorneys' fees, and $15,273.39 in costs; and

    b.   Named plaintiff William L. Milburn shall receive $5,000 as an incentive payment;

4.    The parties are directed to effectuate all terms of the settlement agreement (Doc. No. 9-2, Ex. A) and any deadlines or procedures for distribution therein, including distribution of any residue to the designated *cy pres* beneficiary Salvation Army's California programs for unemployed and underemployed workers;

5.    This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction to consider any further applications arising out of or in connection with the settlement; and

6.    The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   __October 28, 2019__          _____

                                     UNITED STATES DISTRICT JUDGE